2019-1337

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

OFFICE DESIGN GROUP,
Plaintiff-Appellant,

v.

UNITED STATES, CUNA SUPPLY, LLC,
Defendants-Appellees,

and

GOVSOLUTIONS, INC.,
Defendant.

---

Appeal from the United States Court of Federal Claims, Case No. 18-1147C,
Senior Judge Robert H. Hodges

---

CORRECTED BRIEF FOR DEFENDANT-APPELLEE UNITED STATES

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

DOUGLAS K. MICKLE
Assistant Director

TANYA B. KOENIG
Trial Attorney
Department of Justice
1100 L Street, NW
Washington, DC  20530
Tel: (202) 305-7587
Email: tanya.b.koenig@usdoj.gov

May 10, 2019                          Attorneys for Defendant-Appellee

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES .................................................. vi

INTRODUCTION ............................................................................... 1

STATEMENT OF THE ISSUE ............................................................ 3

STATEMENT OF THE CASE .............................................................. 3

    I.    Statement Of Facts ............................................................ 3

        A.    The Solicitation ....................................................... 3

        B.    The Evaluation Of ODG's Service Narrative ............. 7

    II.    Course Of Proceedings Below ........................................... 9

        A.    The GAO Protest ...................................................... 9

        B.    Trial Court Proceedings ......................................... 10

SUMMARY OF THE ARGUMENT .................................................... 13

ARGUMENT .................................................................................. 14

    I.    Standards Of Review ....................................................... 14

        A.    Standards Of Appellate Review ................................ 14

        B.    Standards For Procurement Challenges .................... 14

    II.    The Trial Court Correctly Found That The VA Did Not Conduct An Arbitrary And Capricious Technical Evaluation ........................... 16

        A.    The Trial Court Correctly Determined That The VA Appropriately Relied On Attachment 15 In Its Evaluation ..... 18

i

B.    The Trial Court Correctly Found That ODG Was Not Prejudiced By The VA's Evaluation ....................................... 19

C.    The Trial Court Correctly Found, As Did GAO, That ODG's Examples Of Disparate Treatment Are Not Supported By The Administrative Record............................. 21

    1.    Key Element A: Staffing Plan And Key Personnel ........ 23

    2.    Key Element B: Inventory Process................................ 26

    3.    Key Element C: Protection of Real Property During Work ................................................................................. 28

    4.    Key Element D: Walkthroughs and Punchlists ............. 29

    5.    Key Element F: Interior Designer Experience And Design & Installation Drawings .................................... 30

    6.    Key Element G: AutoCAD or PDF Capability for As-Builts ......................................................................... 31

    7.    Key Element H: Knowledge Of Codes And Standards .. 32

CONCLUSION ................................................................................. 34

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                    <u>**PAGE(S)**</u>

*Bannum, Inc. v. United States*,
  404 F.3d 1346 (Fed. Cir. 2005) .............................................................14, 16, 19

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
  922 F.2d 792 (Fed. Cir. 1990) .........................................................................3, 30

*Burroughs Corp. v. United States*,
  617 F.2d 590 (Ct. Cl. 1980) ................................................................................16

*Centech v. United States*,
  554 F.3d 1029 (Fed. Cir. 2009) .........................................................................14

*Ceres Envtl. Servs., Inc. v. United States*,
  97 Fed. Cl. 277 (2011) ........................................................................................11

*Cleveland Assets, LLC v. United States*,
  883 F.3d 1378 (Fed. Cir. 2018) .........................................................................15

*CliniComp Int'l, Inc. v. United States*,
  904 F.3d 1358 (Fed. Cir. 2018) ....................................................................19, 34

*CW Government Travel, Inc. v. United States*,
  110 Fed. Cl. 462 (2013) ......................................................................................22

*Diaz v. United States*,
  853 F.3d 1353 (Fed. Cir. 2017) .........................................................................19

*E.W. Bliss Co. v. United States*,
  77 F.3d 445 (Fed. Cir. 1996) .......................................................................15, 23

*Enhanced Veterans Solutions, Inc. v. United States*,
  131 Fed. Cl. 565 (2017) .................................................................................passim

*Glenn Defense Marine (ASIA), PTE Ltd. v. United States*,
  720 F.3d 901 (Fed. Cir. 2013) ...........................................................................15

*IBM Corp. v. United States*,
    101 Fed. Cl. 746 (2011) ....................................................................13

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
    238 F.3d 1324 (Fed. Cir. 2001) ...................................................14, 15

*Labatt Food Serv., Inc. v. United States*,
    577 F.3d 1375 (Fed. Cir. 2009) ........................................................21

*Octo Consulting Grp., Inc. v. United States*,
    124 Fed. Cl. 462 (2015) ..............................................................13, 20

*PGBA, LLC v. United States*,
    60 Fed. Cl. 196 (2004) .......................................................................22

*R & W Flammann GmbH v. United States*,
    339 F.3d 1320 (Fed. Cir. 2003) ........................................................15

*Savantage Fin. Servs., Inc. v. United States*,
    595 F.3d 1282 (Fed. Cir. 2010) ........................................................15

*Sci. Applications Int'l Corp. v. United States*,
    108 Fed. Cl. 235 (2012) .....................................................................22

*Tinton Falls Lodging Realty, LLC v. United States*,
    800 F.3d 1353 (Fed. Cir. 2015) ........................................................19

*USFalcon, Inc. v. United States*,
    92 Fed. Cl. 436 (2010) .......................................................................23

## **STATUTES**

5 U.S.C. § 706..........................................................................................14

5 U.S.C. § 706(2)(A)................................................................................14

28 U.S.C. § 1491(b)(4)..............................................................................14

41 U.S.C. § 3701(a) ...........................................................................20, 22

## **<u>REGULATIONS</u>**

48 C.F.R. § 15.305(a)...............................................................................22

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, defendant-appellee's counsel states that she is unaware of this action previously appearing before this Court under the same or similar title and is unaware of any case pending in this or any other court that may directly affect or be affected by this Court's decision in this appeal.

CORRECTED BRIEF FOR DEFENDANT-APPELLEE
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

_____

2019-1337

_____

OFFICE DESIGN GROUP,
Plaintiff-Appellant,

v.

UNITED STATES, CUNA SUPPLY, LLC,
Defendants-Appellees,

and

GOVSOLUTIONS, INC.,
Defendant.

_____

## **CORRECTED BRIEF FOR DEFENDANT-APPELLEE UNITED STATES**

## **INTRODUCTION**

Plaintiff-Appellant, Office Design Group (ODG), appeals from the United States Court of Federal Claims' judgment denying ODG's protest and granting the United States judgment on the administrative record.  This Court should affirm.

ODG brings this post-award bid protest appeal under a set of multi-award indefinite-delivery, indefinite-quantity (IDIQ) solicitations in which it complains of an unfair evaluation process by the procurement agency, the Department of

Veterans' Affairs (VA).  ODG disagrees with the VA's rating on certain technical elements of ODG's proposal and perceives that the VA judged those same technical elements more leniently when evaluating some of the nine awardees. The trial court made factual findings on these issues rejecting ODG's contentions. The trial court also made factual findings that ODG failed to establish prejudice.

Specifically, the trial court correctly determined that the VA reasonably exercised the discretion traditionally afforded to agencies on technical-evaluation issues it when it concluded that ODG's technical proposal contained deficiencies that warranted an "unacceptable" rating.  ODG provides seven examples of alleged disparate treatment, none of which are supported by administrative record and each of which were rejected by the trial court.  Before this Court ODG reiterates the same arguments it made to the trial court, and to GAO before that, but does not allege how it believes the trial court erred.  Because ODG's arguments have no more merit now than they did before the trial court and GAO, the trial court's decision should be affirmed.

## STATEMENT OF THE ISSUE

Whether the trial court correctly determined that the VA reasonably and equally evaluated the proposal submitted by ODG.[1]

## STATEMENT OF THE CASE

ODG's Statement of the Case and Statement of Facts, Applnt. Br. 2-6,[2] contain allegations and characterizations with which we disagree.  ODG's statement also omits relevant information.  Accordingly, we are providing a statement regarding the facts and course of proceedings below.

## I.    Statement Of Facts

### A.    The Solicitation

This bid protest appeal concerns five requests for proposals: VA119-17-R-0260, VA119-17-R-0261, VA119-17-R-0262, VA119-17-R-0263, and VA119-17-R-0264, which each seek the same products and services for five of the VA's service regions.  Appx2.[3]  The request for proposals (RFP or solicitation) at issue

---

[1]  ODG does not appeal two issues presented to and addressed by the trial court, including its claim regarding the failure to maintain anonymity in the evaluation and its claim regarding contractor collusion.  Because those issues have not been appealed, ODG has waived these issues and we do not address them.  *See Beckton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990) ("an issue not raised by an appellant in its opening brief . . . is waived.").

[2]  "Applnt Br. at __" refers to ODG's corrected brief filed on February 26, 2019.

[3]  Appx__ refers to the joint appendix which will be filed in this appeal.

3

in this bid protest sought proposals to provide healthcare furniture, design, project management, furniture removal, professional installation, and maintenance and warranty services.  Appx2; Appx104.

The requirement was designated as a 100 percent set-aside for service-disabled, veteran-owned small businesses (SDVOSB), any capable SDVOSB was free to submit offers for more than one region, and the RFP contemplated awarding three to five IDIQ contracts in each region, with each contract having a five-year base period and one five-year option period.  Appx2; Appx124-125.  The estimated ceiling price for each regional RFP is $499 million.  Appx16.  Awards were to be made "to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government" on a best-value basis.  Appx130.  The VA reserved its right to make awards based upon offerors' initial submissions without discussions, and it specifically warned offerors that "[p]roposals that merely restate the solicitation requirements or state that the requirements will be met with no supporting rationale will be considered ineligible for award," and that "[e]ach proposal will be evaluated in strict accordance with its written content."  *Id.*

The RFP instructed offerors to submit their proposals in four volumes: (1) Technical Capability, (2) Past Performance, (3) Price, and (4) Solicitation, Offer and Award Documents, and SAM and VIP Registration.  Appx126-130.  The RFP specified that the evaluation would focus upon the first three volumes, with

the order of importance proceeding downward from technical capability to past performance to price, with the qualification that technical capability and past performance combined "are significantly more important" than price.  Appx130.

ODG's allegations focus upon the third sub-factor of the Technical Capability evaluation factor, or "technical subfactor 3."  Under this requirement, the RFP specified that an offeror's proposal's technical volume needed to include, among other things, a "narrative addressing each of the items listed under SV1, SV2, SV3, and SV4 as defined in the [Statement of Work (SOW)]."[4]  Appx128. The SOW indicates that SV1, SV2, SV3, and SV4 are codes for the specific services and products sought through the RFP.

Technical subfactor 3 specified that the VA would evaluate each offeror's service narrative for how well it demonstrates the offeror's "ab[ility] to meet all services as defined in the Statement of Work," and it also provided a list of eight "key elements" that needed to be addressed in the narrative:

> a. Provide a staffing plan to include qualifications and experience working in a healthcare environment for key personnel (Project Manager/lead installer and Interior Designer(s).

---

[4] SV1 is "Furniture, Design, and Installation Support Services," Appx149-152; SV2 is "Installation and Reconfiguration Services," Appx152-155; SV3 is "Industrial Design Services," Appx155-158; and SV4 is "Project Management Turn Key Services with Furniture," Appx158-164.  The SOW's description of each of these SVs is further broken-down into sub-parts.  Appx149-164.

b.  Describe the process of inventory, cataloging, protecting existing VA furniture and providing temporary storage for existing furniture.  Include any materials that will be used to protect the furniture from any damage while in contractor's possession.

c.  Describe the process of protecting VA property (building) during installation.  Include any materials that will be used to protect the building, architectural elements, and finishes or previously installed furniture.

d.  Describe process for making corrections during final walkthrough and documenting punchlist items with COR.

e.  Describe the process used for warranty repairs.

f.  Describe Interior Designer's experience and qualifications working on healthcare facilities and what hardware and software that will be used to produce digital and hard copy drawings of design work and prepared installation drawings.

g.  Describe technical capabilities of staff producing AutoCAD/and or PDF drawings of the as-built furniture installation.

h.  Describe the experience of the installation staff and Interior Design staff regarding work in a federal facility and healthcare facility.  Address their knowledge regarding life safety codes, infection control standards and patient privacy standards.

Appx 131.  Also relevant to the evaluation of technical subfactor 3 is Attachment 15 to the RFP (Service Technical Evaluation Questions), which is an evaluation questionnaire reflecting the SOW requirements for each of the SVs (and their subparts) as well as technical subfactor 3's eight "key elements" for the service

6

narrative. Appx166-167. Amendment 0001 to the RFP advised offerors that Attachments 15 was "informational only" for the offerors, but that it was also a "checklist[] that will be used to evaluate the technical proposals." Appx141.

The evaluation criteria for the entire Technical Capability factor (which includes technical subfactor 3) concluded with the statement: "An 'Unacceptable Rating' for any Technical section will result in an overall 'Unacceptable' rating for the Technical Factor." Appx131.

### B.    The Evaluation Of ODG's Service Narrative

ODG submitted a proposal for all five regions, but was not one of the six awardees. Appx3. On December 26, 2017, ODG filed its first protest at the Government Accountability Office (GAO). *Id.* On January 25, 2018, that protest was dismissed as academic when the VA announced its intent to take corrective action by re-evaluating all proposals under the technical capability factor. *Id.*

At the conclusion of the VA's corrective action, the original awards were reinstated and three additional offerors received awards (raising the total number of awardees to 9), including defendant-intervenor, Cuna Supply, LLC. Appx23. ODG did not receive an award post-corrective action because it received an "unacceptable" rating for technical subfactor 3, which resulted in an overall "unacceptable" rating for the Technical Capability factor, rendering ODG's proposal ineligible for award. Appx119-120.

ODG included a seven-page service narrative in the technical volume of its proposal.  Appx94-100.  ODG's service narrative contained seven subparts: (1) "How we can assist Veterans Affairs (VA)"; (2) "Evidence Based Design"; (3) "Our Services"; (4) "Project Management Approach"; (5) "Our Services and Deliverables"; (6) "Quality Control Program and Risk Management"; and (7) "Rate Schedule."  *Id*.  This organization does not clearly correspond with the SOW's statement of each SV requirement (and their subparts), the eight "key elements" of technical subfactor 3, or the 33 questions listed on Attachment 15.  *Compare* Appx94-100 *with* Appx149-164, Appx131, *and* Appx166-167.  The VA found ODG's service narrative to be lacking in several material respects.

According to ODG's scored Attachment 15, the evaluators were unable to locate answers for 27 of the 33 questions, resulting in a score of 12 (where 2 points are assigned for each question that can be answered in the affirmative).  Appx116-118 (scored Attachment 15); Appx121 (TEP consensus report for ODG, indicating a score of 12).  In its consensus report, the technical evaluation panel acknowledged that ODG had provided a service narrative, but it also explained that ODG had failed to include in its service narrative significant amounts of information required under technical subfactor 3:

8

| Description of Evaluation Criteria | Reference/Section |
|---|---|
| **(3): Did the contractor provide a narrative addressing each of the items requested in <u>Attachment 15</u>. Service requirements as defined in the SOW.** | ==YES==/NO |

Total Score: **12**

**Remarks:**

No staffing plan; Very generic on staffing, experience; No inventory, cataloging or protection of VA property information; No info on protection from damage and against loss; No info on how they will execute warranty; No info on AUTOCAD or PDF.

No info on experience of federal work or healthcare except one sentence about principal; No info on staffing having knowledge of life safety, infection control and HIPPA.

Vendor receives **UNACCEPTABLE** based on the point scale below.

Appx121.  Thus, ODG's proposal was found to be "unacceptable."  Appx119-120.

## II.    Course Of Proceedings Below

### A.    The GAO Protest

On April 10, 2018, ODG filed its second GAO protest.  Appx4.  In each of its protests, as well as before the trial court, ODG contended that the VA's evaluation of its proposal resulted from disparate treatment.  *Id*.

On July 16, 2018, the GAO denied the protest.  Appx192-200.  With respect to ODG's contention that the VA disparately evaluated its proposal, the GAO found it "difficult to imagine how [ODG's] obligation to submit a detailed SOW

9

service narrative in response to the questions set forth in attachment 15 could have

been more clear," that ODG's "general failure . . . to address many of the technical

evaluation criteria set forth in the solicitation" prevented the GAO from disturbing

the VA's reasonable conclusion that ODG should receive an "unacceptable" rating

under the RFP's Technical Capability evaluation factor, and that there was "no

basis to question" the VA's disagreement with ODG's assertion that other offerors

were credited for substantially similar failures in their proposals.  Appx197-199.

### B.     Trial Court Proceedings

ODG filed a complaint with the Court of Federal Claims on August 7, 2018.

On October 26, 2018, the trial court issued a decision denying ODG's motion for

judgment on the administrative record and granting the Government's motion for

judgment on the administrative record.

The trial court found that ODG's "service narrative did not include all the

information required to meet subfactor three."  Appx5.  The court rejected ODG's

contention that the VA erred in relying on Attachment 15 to evaluate proposals

because the court found that the amended solicitation "stated that Attachment 15

'will be used to evaluate the technical proposals.'"  Appx5 (Quoting Appx141).  In

addition, the trial court determined that "the VA made a rational determination and

provided a coherent explanation" when it scored ODG's proposal 12 out of 36

points.  The trial court also noted that it was not appropriate for it to second-guess

the agency's procurement decisions.  Appx6 (citing *Ceres Envtl. Servs., Inc. v. United States*, 97 Fed. Cl. 277, 308 (2011)).

The trial court similarly rejected ODG's claims of disparate treatment. Appx6-9.  The trial court found that any inconsistencies in the VA's evaluations were "not sufficient to demonstrate that the VA's decision involved a clear and prejudicial violation of regulation or procedure and was therefore arbitrary and capricious."  Appx6.  According to the trial court, ODG's proposal was not comparable to the awardees' proposals and, therefore, the VA did not act arbitrarily or capriciously in disparately evaluating them.  Appx7.  The trial court provided six examples of the reasonableness of the VA's evaluation, rejecting ODG's examples of alleged disparate treatment:

a)  on "the staffing plan and key personnel," the awardees' proposals were "more responsive and descriptive" than ODG's proposal, which "sa[id] little of the staff's qualifications in healthcare";

b)  on "the process used for protecting and cataloging VA furniture," ODG "concede[d] that it did not respond to this requirement," and the VA "was not unreasonable in exercising its discretion to award credit to the awardees' responses;

c)  on "the protection of VA's real property," ODG cannot show a prejudicial error because even if the awardee did not "provide[] a

11

description of materials used and how they would protect the VA's
property in line item one," ODG also "neglect[ed] to include an
indication of the materials it planned to use";

d) on "the interior designer's experience working on healthcare facilities
and the hardware and software used to producing drawings," the VA's
point credits were not unreasonable because ODG "neglected to describe
the hardware and software that its designer planned to use";

e) on "the technical capabilities of staff," ODG's "proposal does not address
the technical capabilities of its staff to use AutoCAD or PDF to produce
drawings, as required" by the RFP; and

f) on "the experience of installation and design staff working on federal and
healthcare facilities," ODG's "proposal d[id] not address whether its staff
had knowledge of and experience with safety codes, infection control
standards, and patient privacy standards."

Appx7-8.  The trial court found that the VA's evaluation was not arbitrary and
capricious, and explained that "the agency is not required to search for information
to render plaintiff's proposal responsive to the solicitation if it is not included in
the correct part of the proposal."  Appx8-9 (citing *IBM Corp. v. United States*, 101
Fed. Cl. 746, 758-59 (2011)).

In addition, the trial court found that ODG failed to establish prejudice,

12

finding that ODG "d[id] not establish that, but for the VA's alleged error, it had a substantial chance of winning the contract." Appx8 (citing *Octo Consulting Grp., Inc. v. United States*, 124 Fed. Cl. 462, 467-68 (2015)).

The trial court also considered and rejected ODG's remaining claims. Appx9.

## SUMMARY OF THE ARGUMENT

Although this Court reviews the trial court's decision *de novo*, the administrative record demonstrates that the trial court did not err in denying ODG's motion for judgment on the administrative record and granting the Government's motion for judgment on the administrative record. The Court of Federal Claims and GAO have already rejected ODG's allegation that the VA engaged in disparate treatment, but ODG seeks a third bite at the apple. ODG's allegations have no more merit now than they did before the trial court and GAO. Moreover, ODG fails to even identify any error that the trial court committed.

Specifically, the trial court appropriately rejected each of ODG's examples of alleged disparate treatment. Appx7-8. Rather, the trial court made factual findings that ODG's technical proposal was deficient in many key respects, and that the VA's evaluation of ODG's proposal was reasonable. Appx6-9. Because the court determined as a factual matter that ODG's proposal was not comparable to the awardees' proposals, the trial court correctly concluded that it was not

13

arbitrary and capricious for the VA to rate the proposals differently.  In addition, the trial court found that ODG failed to establish prejudice because it could not establish that it had a substantial chance to win the award but for the VA's alleged procurement error.

## ARGUMENT

### I.    Standards Of Review

#### A.    Standards Of Appellate Review

This Court reviews the trial court's grant of judgment on the administrative record "without deference." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  "This means that [the Court] appl[ies] the 'arbitrary and capricious' standard of [5 U.S.C.] § 706 anew, conducting the same analysis as the Court of Federal Claims." *Centech v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citation omitted).  The court reviews the trial court's findings of fact for clear error.  *Bannum*, 404 F.3d at 1354.

#### B.    Standards For Procurement Challenges

The standard of review in a bid protest is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  *See* 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).  To prevail, a plaintiff must demonstrate: 1) that the procurement decision "lacked a

rational basis"; or 2) "a clear and prejudicial violation of applicable statutes or

regulations." *Impresa*, 238 F.3d at 1332-33 (citation omitted).

   In reviewing the agency's procurement decisions, the Court should apply a

"presumption of regularity," *Cleveland Assets, LLC v. United States*, 883 F.3d

1378, 1382 (Fed. Cir. 2018), and should not substitute its judgment for that of the

agency. *E.g., R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1322

(Fed. Cir. 2003). Contracting officers are "entitled to exercise discretion upon a

broad range of issues confronting them[.]" *Impresa*, 238 F.3d at 1332 (citation

omitted). "For that reason, procurement decisions 'invoke[ ] 'highly deferential'

rational basis review.'" *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d

1282, 1286 (Fed. Cir. 2010) (citation omitted). In alleging that a solicitation term

"unduly restricts competition," the plaintiff has the burden of demonstrating that

the term is "so plainly unjustified as to lack a rational basis." *Id.* at 1285-87.

   The deference afforded to an agency's decision must be even greater when a

trial court is asked to review a technical evaluation. "[T]echnical ratings . . .

involve discretionary determinations of procurement officials that a court will not

second guess." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996).

Indeed, "the greater the discretion granted to a contracting officer, the more

difficult it will be to prove the decision was arbitrary and capricious." *Glenn*

*Defense Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907-08 (Fed. Cir.

2013) (citing *Burroughs Corp. v. United States*, 617 F.2d 590, 597 (Ct. Cl. 1980)).

Additionally, if the protestor can show any errors in the procurement process, the protestor must then show that it was "significantly prejudiced" by those errors. *Bannum*, 404 F.3d at 1353.

## II.    The Trial Court Correctly Found That The VA Did Not Conduct An Arbitrary And Capricious Technical Evaluation

ODG makes the same allegations before this Court that it did before the trial court and GAO. ODG generally contends that the VA scored its proposal more harshly than other offerors because it "ignored the weaknesses of some of the awardees' proposals," and "accepted generic responses from awardees to the subfactor questionnaires (i.e. Attachment 15) under the technical capability category; answers similar to those provided by ODG." Applnt Br. at 11.

However, the trial court made factual findings that ODG's proposal was deficient in several respects. *See* Appx7 (finding that ODG's staffing plan "could not be compared to others"); Appx7 (finding that ODG's proposal "did not respond to" the second key element); Appx7-8 (finding that ODG's proposal contained "inadequacies" and "neglect[ed] to include an indication of the materials it planned to use); Appx8 (ODG's proposal "neglected to describe the hardware and software that its designer planned to use"); Appx8 (ODG's proposal "d[id] not address the technical capabilities of its staff to use AutoCAD or PDF to produce drawings"); Appx8 (ODG's "proposal d[id] not address whether its staff had knowledge of and

16

experience with safety codes, infection control standards, and patient privacy standards"). Thus, the trial court correctly concluded that the VA reasonably evaluated ODG's proposal when it determined that ODG's proposal failed to address most of the requirements of technical subfactor 3 (service narrative), which rendered its proposal "unacceptable" and, therefore, ineligible for award. Appx6-9; *see also* Appx120 (indicating that ODG's service narrative was "significantly lacking [in] details" and assigning a total Technical Capability rating of "unacceptable," meaning that the "[q]uotation is 'unawardable'"); Appx121 (explaining the deficiencies in the service narrative). In performing its evaluation, the VA used Attachment 15 to the RFP, an evaluation questionnaire designed to assess the quality of each offeror's proposal under technical subfactor 3. Appx167-168; Appx141.

ODG attacks the VA's evaluation, and by implication, the trial court's decision, with a two-pronged attack: (1) ODG asserts that, contrary to the VA's evaluation, ODG's service narrative did, in fact, include all the information required by technical subfactor 3; and (2) ODG compares its service narrative to some of the awardees' service narratives and asserts that the comparison reveals qualitatively equivalent service narratives that have been assigned different points (and, correspondingly, ratings), thus proving that the VA subjected ODG to disparate treatment. *See generally* Applnt Br.

17

### A.    The Trial Court Correctly Determined That The VA Appropriately Relied On Attachment 15 In Its Evaluation

The trial court rejected ODG's argument below that the VA should not have relied on Attachment 15 in its evaluation.  The trial court made a factual determination that the amended solicitation informed offerors "that Attachment 15 . . . 'will be used to evaluate the technical proposals.'"  Appx5 (quoting Appx141).

In its opening brief, ODG reiterates its argument before the trial court, contending that, in its evaluation, the VA erred in relying on Attachment 15 as a rubric for measuring the offerors' proposals.  Applnt Br. at 12-13.  Specifically, ODG alleges that the RFP does not "explicitly state that a failure to answer the questions in that attachment will result in a determination that the proposal is technically unacceptable."  *Id.* at 13.  ODG also asserts that, because "the words 'complete details'" do not appear in the solicitation, the VA could not have rejected its proposal for "significantly lacking [in] details."  *Id.*; *see also* Appx120.

However, the VA specifically informed all offerors that it would be using Attachment 15 in the evaluation process – first, by including the attachment in the RFP and titling it "Service Technical Evaluation Questions", Appx166-167, and, second, by including the Q&A about it in Amendment 0001 to the RFP, which informed all offerors that Attachment 15 was "informational only" for the offerors, but that it was a "checklist[] that will be used to evaluate the technical proposals." Appx141.  As the GAO found, "it is difficult to imagine how [ODG's] obligation

18

to submit a detailed SOW service narrative in response to the questions set forth in attachment 15 could have been more clear."  Appx197-198.

In any event, the VA ultimately made its rating decisions based not only upon the preliminary scoring from Attachment 15, but also upon a direct assessment of each offeror's service narrative in light of the RFP's requirements and after providing detailed reasons for the rating chosen.  *See* Appx121 (TEP consensus report for ODG, noting ODG's Attachment 15 score of 12 points, and also providing a four-line narrative explanation of all the information not present in ODG's service narrative that compelled its "unacceptable" rating).

Thus, the trial court correctly found that the VA reasonably relied on Attachment 15 in its evaluation.

## B.    The Trial Court Correctly Found That ODG Was Not Prejudiced By The VA's Evaluation

As we stated above, even if ODG can show any errors in the procurement process, it must then show that it was "significantly prejudiced" by those errors. *Bannum*, 404 F.3d at 1353.  Prejudice is a fact question.  *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1359 (Fed. Cir. 2018) (citing *Diaz v. United States*, 853 F.3d 1358, 1359 (Fed. Cir. 2017); *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358 (Fed. Cir. 2015)).  As a factual matter, the trial court found that ODG failed to establish prejudice, finding that ODG "d[id] not establish

that, but for the VA's alleged error, it had a substantial chance of winning the contract." Appx8 (citing *Octo Consulting Grp*, 124 Fed. Cl. at 467-68).

Although ODG contends that, "had the VA conducted a fair and consistent evaluation," it would have received an award, Applnt Br. at 10, ODG cannot establish prejudice. ODG's argument that some of the awardees' proposals similarly did not respond fully to the RFP requirements is irrelevant because the RFP called for multiple awards without a technical limit upon the number of awards the VA could make. Because ODG could obtain an award (if it could improve its rating), ODG's argument that any current awardees deserved a lower rating is unnecessary and does not establish prejudice.

To the extent ODG contends that its disparate-treatment challenge should result in an increase in its own rating, its argument is misplaced. As the trial court found, ODG's proposal contains many deficiencies that would independently warrant an "unacceptable" rating. The evaluation must always conform to the requirements of the solicitation. 41 U.S.C. § 3701(a) ("An executive agency shall evaluate sealed bids and competitive proposals, and award a contract, based solely on the factors specified in the solicitation."). Thus, if ODG's argument that offerors' proposals contained similar deficiencies (*see* Applnt Br. at 15-16, arguing that the proposal of A. Pomerantz – which was evaluated more favorably – was allegedly similar in material respects to ODG's proposal), the proper solution

20

would have been to decrease the other offerors' scores, not to increase ODG's

scores despite its own deficiencies.  To do otherwise would constitute an additional

departure from the stated evaluation criteria.

Thus, ODG cannot demonstrate that any error that the VA may have

committed through its allegedly disparate evaluation of ODG's technical proposal

(we maintain that the VA did not commit any such errors) was prejudicial to ODG.

*E.g.*, *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1380 (Fed. Cir.

2009) (emphasizing that, to establish prejudice, a protestor must demonstrate that

the alleged procurement error actually "interfered with [the protestor's] ability to

receive [a] contract award").

## C.    The Trial Court Correctly Found, As Did GAO, That ODG's Examples Of Disparate Treatment Are Not Supported By The Administrative Record

The trial court rejected each of ODG's allegations of disparate treatment.

Appx6-9.  In its appeal, ODG again provides seven "examples" of ways in which it

believes the VA's evaluation disparately treated ODG by examining the "key

elements" for the service narrative listed in technical subfactor 3.  *Compare*

Appx131 (RFP technical subfactor 3, listing "key elements" A-H) *with* Applnt Br.

at 14-28 (discussing each "key element" as an example of the alleged procurement

error).

It is well-settled that an agency must evaluate offerors' proposals based

21

solely upon the factors specified in the solicitation.  41 U.S.C. § 3701(a); 48 C.F.R.

§ 15.305(a) ("An agency shall evaluate competitive proposals and then assess their

relative qualities solely on the factors and subfactors specified in the solicitation.").

Similarly, it is also well-established that procuring agencies may not treat different

offerors disparately if they provided "substantively indistinguishable" proposals.

*See* Appx6 (quoting *Sci. Applications Int'l Corp. v. United States*, 108 Fed. Cl.

235, 272 (2012)); *see also CW Government Travel, Inc. v. United States*, 110 Fed.

Cl. 462, 490 (2013); *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 207 (2004).

As the trial court found, and GAO before that, the administrative record

demonstrates that the VA did not violate either of these well-established principles

in its evaluation of ODG's proposal.  Appx6-9; Appx199 (GAO finding that "the

record indicates that the awardees submitted comparatively more detailed and

complete proposals as compared to Office Design, accordingly, the agency had no

obligation to assess comparable weaknesses").  ODG's contentions about the

quality of its service narrative, either independently or relative to other offerors,

are not supported by the record.  As detailed in the recitation of facts above, the

RFP contains detailed evaluation criteria for technical subfactor 3, most of which is

presented as lists and bullets that potential offerors could use to organize their

narratives.  *See* Appx131; Appx149-164.  Attachment 15 to the RFP provides a list

of 33 questions that the offerors knew their proposals would have to answer to be

considered for award. *See* Appx166-167. ODG's service narrative, by contrast, is short, organized in a manner that does not reflect the requirements of the RFP, and consists primarily of generalized language about performing healthcare furniture installation, providing healthcare furniture products, and maintaining a commitment to good customer relations. Appx94-100.

A protestor alleging disparate treatment concerning a subjective technical evaluation must show "nearly identical provisions in the proposals" to establish disparate treatment. *Enhanced Veterans Solutions, Inc. v. United States*, 131 Fed. Cl. 565, 588 (2017) (citing *USFalcon, Inc. v. United States*, 92 Fed. Cl. 436, 462 (2010)). But "[w]hen a court is not convinced that the aspects of the proposals brought to its attention are indistinguishable for purposes of the evaluation, then the exercise instead crosses the line and involves the second guessing of 'minutiae'" which the Court may not undertake. *Id.* (citing *E.W. Bliss Co.*, 77 F.3d at 449). The trial court correctly determined that "[t]he VA properly exercised its discretion in finding that [ODG's] service narrative was not comparable to the awardees' proposals." Appx6. We explain this conclusion more fully in our discussion of each of ODG's arguments, below.

### 1.    Key Element A: Staffing Plan And Key Personnel

The first "key element" under technical subfactor 3 requires offerors to submit a "staffing plan to include qualifications and experience working in a

healthcare environment for key personnel (Project Manager/lead installer and Interior Designer(s))." Appx131. The trial court found that ODG "submitted a staffing plan that could not be compared to others; in particular, saying little of the staff's qualifications in healthcare." Appx7.

ODG continues to contend in its opening brief that its narrative provided sufficient information in the portion of its service narrative labeled "Quality Control Program and Risk Management," which is mostly a chart that does indicate the promised years of experience for Project Managers, Interior Designers, and Installation Supervisors. *See* Applnt Br. at 14-15. But ODG's proposal does not indicate what part of its staff's experience was obtained "working in a healthcare environment," as the RFP requires. Appx98. The referenced portion of ODG's service narrative also does not say anything about the qualifications of these key personnel (separately from their experience – again, as the RFP requires), and nothing here resembles a staffing plan. *Id.* Thus, contrary to ODG's assertions, this portion of ODG's service narrative does not include most of the information required by this first subpart of technical subfactor 3.

As the trial court correctly found, "the comparators' proposals were more responsive and descriptive." Appx7. ODG argues that it was evaluated unequally because another offeror, A. Pomerantz, received six points for this key element even though it "provided a Staffing Plan comparable to ODG's (*i.e.* providing a

general organizational chart, listing expertise and years of service of its

employees)," and "only addressed the staffing plan directly under SV3 – Industrial

Design." Applnt Br. at 15. ODG misreads the record. A. Pomerantz's service

narrative contains a "Staffing Plan" header under only SV3, but the text below that

header is more descriptive of the contract-specific capabilities of A. Pomerantz's

staff than it is a plan of how A. Pomerantz proposes to staff the contract. Appx30.

A. Pomerantz's actual staffing plan is found later in its service narrative, following

a page with colored text that says "Staffing Plan," and includes an organizational

chart, information about how A. Pomerantz proposes to staff contracts for all five

VA service regions, and a discussion of its key personnel and teams. Appx36-39.

ODG also criticizes offeror Veteran Office Design for including a staffing

plan that, from ODG's perspective, is equal to what ODG offered, and complains

that Veteran Office Design received credit when ODG did not. Applnt Br. at 15.

ODG views itself too favorably and views Veteran Office Design too harshly. As

demonstrated above, the information ODG provided in response to this key

element is minimal and omits significant information specifically required by the

RFP. Veteran Office Design, on the other hand, discusses not only the years of

experience its key personnel possess (which is the only information ODG

includes), but Veteran Office Design also discusses the level of education of its

key personnel (including the names of the academic institutions they attended),

25

their professional certifications, and the breadth of their professional experience –

and it addresses most of these aspects in each of its SV sections.  Appx65-87.

As we demonstrated above, ODG did not provide a staffing plan or any

details about it, so this is not a case of unequal treatment.  Rather, it is a situation

where unequal proposals were rated appropriately.  *See Enhanced Veterans*

*Solutions*, 131 Fed. Cl. at 588.

## 2.    Key Element B: Inventory Process

The second "key element" under technical subfactor 3 requires the offeror to

"describe the process of inventory, cataloging, protecting existing VA furniture

and providing temporary storage for existing furniture."  Appx131.  This second

key element also requires a listing of materials that will be used to protect the

furniture while it is in the contractor's possession.  *Id*.  The trial court reasonably

found that ODG "concedes that it did not respond to this requirement and relies on

the unsupported assertion that it is normal practice to provide such a plan once the

VA issues a task order."  Appx7.

The trial court's decision is supported by the administrative record; nothing

in ODG's service narrative addresses this requirement.  *See* Appx94-100.  Indeed,

ODG's opening brief admits this deficiency when it argues only that "ODG

intended to provide a plan for protecting the equipment once the VA issued a Task

Order, which is normal practice in the industry."  Applnt Br. at 17.

The trial court also made a factual finding that "[t]he VA was not unreasonable in exercising its discretion to award credit to the awardees' responses." Appx7. The administrative record supports this finding. For example, ODG complains that it was unequally evaluated in comparison to offeror GovSolutions, which it claims "parrot[ed] the above key element in its proposal but discusses absolutely nothing regarding existing VA furniture." Applnt Br. at 17. But GovSolutions' service narrative on this key element includes a detailed description of its access to a warehouse network, propriety asset and inventory management software, and protection of existing furniture – including a commitment to repair or replace anything that is damaged. Appx41-42. This is vastly different than the complete and admitted lack of information ODG provided, and the agency did not err by assigning the two different ratings.

ODG also complains about The Russell Group for the omission of the words "inventory" and "cataloging" from its service narrative, but ODG overlooks The Russell Group's full-page description of the logistical processes and tools that The Russell Group plans to use. Appx62. This is much more than ODG's complete lack of information, and the agency acted reasonably in treating the two proposals differently. *See Enhanced Veterans Solutions*, 131 Fed. Cl. at 588.

Finally, ODG complains that A. Pomerantz received credit for this requirement under SV2, SV3, and SV4 on its Attachment 15 questionnaire, but not

for SV1, all while ODG received no credit.  Applnt Br. at 18-19.  But A.

Pomerantz's service narrative clearly includes information responsive to this key

element.  Appx25-26.  In any event, as demonstrated above, the agency reasonably

gave ODG no credit for its admittedly omitted information and, as the trial court

found, "[t]he VA was not unreasonable in exercising its discretion to award credit

to the awardees' responses."  Appx7.

### 3.    Key Element C: Protection of Real Property During Work

The third RFP "key element" under technical subfactor 3 requires a

description of the process and materials the contractor will use to protect the VA's

real property while contract work is being performed.  Appx131.  As the trial court

found, ODG ignored "the inadequacies of its own proposal in neglecting to include

an indication of the materials it planned to use."  Appx8.

ODG reiterates its assertion that this information is included in its service

narrative in a bullet point that states that "[t]he Project Manager and Installation

Supervisor ensure that all personnel working the job site [will] adhere to the rules

outlined for each particular installation site including the placement of all proper

building protection prior to furniture delivery, proper removal of all trash, and

proper cleaning of space upon completion."  Applnt Br. at 19 (citing Appx99).

ODG admits that this answer "generally explain[ed] that the company would

properly handle the VA's existing furniture."  Applnt Br. at 20.  But ODG's

proposal does not contain any indication of the materials ODG plans to use when doing that job.  Again, ODG's service narrative does not address the RFP requirement, and the correctly found that VA did not err when it rated it accordingly.

ODG criticizes the Attachment 15 scoring for A. Pomerantz, noting ODG's belief that A. Pomerantz received partial credit for this key element on Attachment 15 even though it allegedly did not provide the required information.  Applnt Br. at 19-20.  This, according to ODG, is evidence of unequally harsh treatment being inflicted upon ODG.  However, even if this is an error by the VA (and we do not concede that it is), it cannot be prejudicial to ODG.  If the premise of ODG's position is correct and A. Pomerantz's proposal is actually deficient in this small respect, as stated above, the solution is not to increase ODG's rating; the solution is to downgrade A. Pomerantz.  Because ODG can only put itself in a position of possibly becoming eligible for an award by increasing its own rating, this alleged error cannot be prejudicial to ODG.  The trial court concluded that, "[i]f the VA's assessment was erroneous, that would not diminish or eliminate A. Pomerantz as an awardee."  Appx8.  Accordingly, this Court should reject ODG's argument.

### 4.    Key Element D: Walkthroughs and Punchlists

The fourth "key element" asks for a description of the final walkthrough and punchlist process.  Appx131.  Although in its opening brief ODG alleges disparate

treatment as to this element, Applnt Br. at 20-21, as the trial court found, ODG's

proposal on this requirement "was not marked as deficient."  Appx8, n.4.  Because

the VA did not cite this item as one of ODG's deficiencies, *see* Appx121, and

awarded ODG points for its answer, s*ee* Appx116, ODG has not been prejudiced

by any alleged disparate treatment.

### 5.    Key Element F: Interior Designer Experience And Design & Installation Drawings[5]

The sixth "key element" requires a description of the interior designer's

"experience and qualifications working on healthcare facilities and what hardware

and software that will be used to produce digital and hard copy drawings of design

work and prepared installation drawings."  Appx131.  The trial court made factual

findings that ODG "neglected to describe the hardware and software that its

designer planned to use."  Appx8.

Moreover, the administrative record supports the trial court's conclusion that

ODG's service narrative does not address this key element.  Appx94-100.  In its

brief, ODG recites nearly one page of snippets from its proposal that plainly do not

address this requirement, then concludes that it has met the requirement because its

---

[5] Before the trial court, ODG also alleged that it was disparately treated regarding its evaluation on the fifth key element, which requires a description of the warranty repair process.  ODG does not allege on appeal that it was disparately treated as to this element, so ODG has waived this argument and we do not address it. *See Beckton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990) ("an issue not raised by an appellant in its opening brief . . . is waived.").

*design manager* (not its interior designer) has 18 years of experience in healthcare, and its *interior designer* (the position required to be addressed by the RFP) has over 10 years of nonspecific experience.  Applnt Br. at 21-22.  However, arguments of counsel are not record evidence.  Furthermore, ODG completely ignores – both in its service narrative and in its brief – the second part of this key element, which requires a description of "what hardware and software that will be used to produce digital and hard copy drawings of design work and prepared installation drawings."  Appx131.  As the trial court found, for this reason alone, the VA acted reasonably and well within its discretion when it did not credit ODG for meeting this requirement.  Appx8.

**6.    Key Element G: AutoCAD or PDF Capability for As-Builts**

The RFP's seventh "key element" for the service narrative requires a description of the "technical capabilities of staff producing AutoCAD and/or PDF drawings of the as-built furniture installation."  Appx131.  The trial court found that ODG's "proposal does not address the technical capabilities of its staff to use AutoCAD or PDF to produce drawings, as required."  Appx8.

The trial court's findings are supported by the administrative record; nothing in ODG's service narrative addresses this key element.  Appx94-100.  In its opening brief, ODG argues that it has addressed furniture installation, but does not allege that it has addressed the capabilities of its staff to use AutoCAD or PDF to

31

produce drawings.  Applnt Br. at 26 (citing Appx95; Appx97; Appx99)).

Despite ODG's conclusory assertions to the contrary, ODG's service narrative is not responsive to the RFP, and the trial court correctly determined that the VA's "decision therefore was not unreasonable."  Appx8; *see also Enhanced Veterans Solutions*, 131 Fed. Cl. at 588.

## 7.  Key Element H: Knowledge Of Codes And Standards

Finally, the eighth RFP "key element" requires a description of the installation staff's and the interior designer's experience working in Federal facilities and healthcare facilities, and it also requires a discussion of the staff's knowledge of safety codes, infection control standards, and patient privacy standards.  Appx131.  As the trial court found, as a factual matter, ODG's "proposal does not address whether its staff had knowledge of and experience with safety codes, infection control standards, and patient privacy standards."  Appx8.

ODG contends that it has satisfied this requirement with references to the design manager's 18 years of healthcare (but not necessarily Federal) experience, "patient[-]centered design" concepts, the generalized need for safety when moving about a hospital, the availability of ergonomic and LEED credit-generating products, as well as furniture with antimicrobial finishes.  Applnt Br. at 21.  Once again, ODG misunderstands the plain intent of the requirement.  The eighth key element does not ask about the cleanliness, safety, or privacy of the products that

32

the contractor will install (which is what the language ODG highlights addresses); instead it is concerned with whether an offeror's staff has the requisite training, experience, and knowledge to conduct themselves in accordance with applicable safety codes, infection control standards, and patient privacy standards.  Appx131.  ODG's service narrative does not address this issue at all.

ODG argues that several other offerors, including A. Pomerantz, SDV Office Systems, JohnsonDanforth, Cuna Supply, Coronado, and the Russell Group, all failed to fully address this requirement, were nonetheless rated acceptably, and that this is evidence of disparate treatment prejudicial to ODG.  Applnt Br. at 23-25.  However, as we explained above, procuring agencies should not consider multiple "wrongs" as a "right."  If ODG's contention is accurate, which we do not concede, then ODG is not entitled to an upgraded rating for its deficient proposal; the other offerors should be downgraded so their ratings reflect their proposals' actual responsiveness to the RFP.

Thus, this alleged error, even if it were proven, cannot be prejudicial to ODG because it cannot improve ODG's chances of obtaining an award in this multiple-award environment.  The trial court correctly concluded, therefore, that the VA acted reasonably when assigned ODG an unacceptable rating for this failure.  Appx8.

Finally, even if this Court disagrees with the GAO and trial court and finds

that the record shows that the VA erred in its evaluation, the trial court correctly found that ODG was not prejudiced.  *See* Appx8 (finding that ODG "d[id] not establish that, but for the VA's alleged error, it had a substantial chance of winning a contract.").  Moreover, ODG failed to explain how any error would be prejudicial.  Because prejudice is an issue of fact, and the trial court made a factual finding that ODG has not been prejudiced, this Court should affirm the trial court's decision.  *See CliniComp*, 904 F.3d at 1359.

## CONCLUSION

ODG in its third attempt, still fails to establish that the VA's evaluation was arbitrary and capricious or that it was prejudiced by the VA's evaluation.  For these reasons, we respectfully request that the Court affirm the judgment of the Court of Federal Claims.

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

/s/ Tanya B. Koenig
TANYA B. KOENIG
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 305-7587
E-mail. Tanya.b.koenig@usdoj.gov

May 10, 2019                    Attorneys for Defendant

## CERTIFICATION OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure (FRAP) 32(a)(7)(B), I certify that the forgoing brief contains 7,494 words, excluding the parts of the brief exempted by the rule.  The brief complies with the typeface requirements and type style requirements of FRAP 32(a)(5) and has been prepared using Times New Roman 14 point font, proportionally spaced typeface.


/s/ Tanya B. Koenig
TANYA B. KOENIG
Counsel for Defendant-Appellee United States

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on this 10th day of May, 2019, a copy of the foregoing "CORRECTED BRIEF FOR DEFENDANT-APPELLEE UNITED STATES" was filed electronically.  This filing was served electronically to all parties by operation of the Court's electronic filing system.


<u>/s/ Tanya B. Koenig</u>