19-1337

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

OFFICE DESIGN GROUP
Plaintiff-Appellant,

v.

UNITED STATES, CUNA SUPPLY, LLC
Defendants-Appellees,

and

GOVSOLUTIONS, INC.,
Defendant.

---

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS,
CASE NO. 18-1147C
DECISION BY HONORABLE ROBERT H. HODGES JR.

---

**CORRECTED NON-CONFIDENTIAL JOINT APPENDIX**

Joseph Whitcomb, Esq.
Timothy J. Turner, Esq.
Whitcomb, Selinsky, McAuliffe, PC
2000 Colorado Boulevard
Tower One, Suite 9500
Denver, CO 80222
Telephone: (303)534-1958
Fax: (303)534-1949
E-Mail: joe@whitcomblawpc.com
E-Mail: tim@wsmlapc.com
Attorneys for Plaintiff-Appellant
June 18, 2019

# TABLE OF CONTENTS

Decision of the US Court of Federal Claims, dated October 26, 2019………...Appx1

US Court of Federal Claims Civil Docket for Case 18-01147……………...Appx11

Notification of Protest-Summary Report at GAO………………………..Appx16

Table of Winning Contractors………………………………………………Appx23

Excerpt from A. Pomerantz (Azalea) Service Narrative…………………...Appx25

Excerpt from GovSolutions (Bluebell) Service Narrative…………..………Appx40

Excerpt from SDV Office Systems (Calla) Service Narrative……………...Appx45

Excerpt from Russel Group (Daisy) Service Narrative……..……………...Appx55

Excerpt from Veteran Office Design (Sage) Service Narrative………..……Appx65

Excerpt from JPL (Tulip) Service Narrative………………………………...Appx88

Except from Office Design Group (Primrose) Service Narrative…………..Appx94

Excerpt from Office Design Group (Primrose) Sample Project…………...Appx101

Source Selection Evaluation Plan…………………………………………Appx103

Excerpt for Evaluation of Region 1………………………………………..Appx110

Attachment 15 Point Evaluation for A. Pomerantz (Azalea)…………...…Appx112

Attachment 15 Point Evaluation for Russel Group (Daisy)………………Appx114

Attachment 15 Point Evaluation for Office Design Group (Primrose)……Appx116

Office Design Group (Primrose) Technical Evaluation Form……………..Appx119

Excerpt from Solicitation VA119-17-R-0261……………………………..Appx122

Amendment 1 of Solicitation VA119-17-R-0261…………………………Appx138

Attachment 1: Statement of Work…………………………………………Appx147

Attachment 15: Service Technical Evaluation Questions………...……….Appx166

Office Design Group Notice of Unsuccessful Offeror…………………….Appx168

Office Design Group April 5, 2018 Debriefing E-mail……………………Appx172

Office Design Group April 10, 2018 GAO Post-Award Protest…………..Appx177

GAO Decision, dated July 16, 2018……………………………………….Appx192

Excerpt from SDV Office Systems (Calla) Service Narrative…………….Appx201

Excerpt from JohnsonDanforth (Lilac) Service Narrative………………..Appx216

Excerpt from Coronado Distribution (Orchid) Service Narrative…………Appx231

Attachment 15 Point Evaluation for SDV Office Systems (Calla)………...Appx246

Attachment 15 Point Evaluation for JohnsonDanforth (Lilac)……………Appx248

Attachment 15 Point Evaluation for Cuna Supply (Morning Glory)…...…Appx250

Attachment 15 Point Evaluation for Coronado Distribution (Orchid)……..Appx252

**CONFIDENTIAL MATERIAL OMITTED**

The material omitted on pages 25-39 contains information related to the "Service Narrative" submitted by A. Pomerantz in its bid proposal for the subject solicitation; the material omitted on pages 40-44 contains information contains information related to the "Service Narrative" submitted by GovSolutions in its bid proposal for the subject solicitation; material omitted on pages 45-54 contains information related to the "Service Narrative" submitted by SDV Office Systems in its bid proposal for the subject solicitation; material omitted on pages 55-64 contains information related to the "Service Narrative" submitted by Russel Group in its bid proposal for the subject solicitation; the material omitted on pages 66 to 87 contains information related to the "Service Narrative" submitted by Veteran Office Design in its bid proposal for the subject solicitation; the material omitted on pages 88 to 93 contains information related to the "Service Narrative" submitted by JPL in its bid proposal for the subject solicitation; the material omitted on page 110 pertains to the Source Selection Authority's ("SSA") deliberative process in evaluating certain submitted proposals and initial assessments given to A. Pomerantz's proposal; the material omitted on page 111 pertains to the SSA's deliberative process in evaluating A. Pomerantz's sample project submitted with its bid proposal; the material omitted on page 112 is the SSA's designation for scoring Attachment 15; the material omitted on page 114 is the SSA's designation for scoring Attachment 15; the material omitted on page 116 is the SSA's designation for scoring Attachment 15; material omitted on pages 201-215 contains information related to the "Service Narrative" submitted by SDV

Office Systems in its bid proposal for the subject solicitation; material omitted on pages 216-230 contains information related to the "Service Narrative" submitted by JohnsonDanforth in its bid proposal for the subject solicitation; material omitted on pages 231-245 contains information related to the "Service Narrative" submitted by Coronado Distribution in its bid proposal for the subject solicitation.

# United States Court of Federal Claims

No. 18-1147C
Filed: October 26, 2018
(Filed Under Seal)

_____

**OFFICE DESIGN GROUP,**

　　　　　*Plaintiff*,

　　v.

**UNITED STATES OF AMERICA,**

　　　　　*Defendant,*

**and**

**CUNA SUPPLY LLC** *et al.*,

　　　　　*Defendant-Intervenors*.

_____

*Joseph A. Whitcomb*, Whitcomb Law PC, Denver, Colorado, for plaintiff.

*Tanya Beth Koenig*, United States Department of Justice, Washington, D.C., for defendant.

*Matthew Thomas Schoonover*, Koprince Law LLC, Lawrence, Kansas, for defendant-intervenor, Cuna Supply LLC.

*John Bradley Reaves*, ReavesColey PLLC, Chesapeake, Virginia, for defendant-intervenor, GovSolutions, Inc.

## ORDER AND OPINION

**HODGES**, Senior Judge.

　　Plaintiff, Office Design Group, brings this post-award bid protest against the Department of Veterans Affairs, contending that the VA failed to assess its proposal

pursuant to the stated evaluation criteria, disparately evaluated its proposal, failed to maintain the anonymity in its evaluation process, and turned a blind eye to contractor collusion. Plaintiff therefore seeks a declaratory judgment that the VA's evaluation process was arbitrary and capricious and in violation of Federal Acquisition Regulation. Pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims, the parties, including defendant-intervenor, Cuna Supply LLC, have each filed a motion for judgment on the administrative record and several reply briefs.

For the following reasons, we deny plaintiff's motion and grant defendant and defendant-intervenor's cross-motions for judgment on the administrative record.

## BACKGROUND

This bid protest concerns the award of multiple "indefinite delivery/indefinite quantity" (IDIQ) contracts by the VA. The Requests for Proposals (RFP) sought bids to provide healthcare furniture and related services for VA facilities in five regions across the country.[1] The RFP or solicitations contemplated awarding three to five IDIQ contracts in each region, but expressly reserved the discretion to exceed that number. The solicitations established that awards would be made using a best-value trade off selection process considering three primary evaluation factors: Technical Capability, Past Performance, and Price. For evaluation purposes, the VA deemed Technical Capability more important than Past Performance and Past Performance more important than Price.

Plaintiff's claims focus on the Technical Capability evaluation factor, namely the third of four technical evaluation sub-factors, which provides that the "Government will evaluate the contractor's Service Narrative to be able to meet all services as defined in the Statement of Work." Compl. Ex. 1 at 33 (quoting RFP). The RFP further provides that a contractor must cover all services required under four line items with contract tasks and requirements specified in each: (1) Furniture, Design, and Installation Support Services; (2) Installation and Reconfiguration Services; (3) Industrial Design Services; and (4) Advanced Project Management Turn-key Services with Furniture.

The RFP then lists eight "key elements" that need to be met and provides that: "An 'Unacceptable Rating' for any Technical Section will result in an overall 'Unacceptable'

---

[1] The parties have agreed that the administrative record should only contain one of these solicitations.

rating for the Technical Factor." *Id.* at 34 (quoting RFP); *see also* Admin. R. Attach. 5 at AR 1522 (stating that out of sixty-six points total, a score of thirty-nine points or below would be rated unacceptable).[2] The RFP also included Attachment 15, entitled "Service Technical Evaluation Questions." Attachment 15 is a questionnaire that contains the service requirements from the Statement of Work and essentially mirrors key elements found in sub-factor three. It is the checklist to evaluate technical proposals and is "informational only." Admin. R. Attach. 6 at AR 2023 (quoting amended RFP Questions and Answers).

The RFP advised contractors not to include any company identifying information, as any reference to their company would be redacted for anonymity. *Id.* at AR 1988. Bidders were to use their assigned company identifier.

Plaintiff submitted a proposal for all five regions. The VA found that plaintiff's technical proposal was unacceptable because it did not provide complete details or support on several questions. Compl. Ex. 2. After the VA had conducted a formal debriefing via telephone, plaintiff filed a GAO bid protest. The GAO dismissed plaintiff's protest as "academic," because the VA had indicated that it would take corrective action by reopening the procurement and reevaluating plaintiff's proposal.

The VA's reevaluation, however, again found plaintiff's technical proposal unacceptable, giving it a score of twelve for sub-factor three. Admin. R. Attach. 6 at AR 2193-2194 (stating that under sub-factor three Attachment 15, plaintiff's "response to the service technical requirements missed the majority of the requirements"). The awards were

---

[2] The key elements to be addressed can be summarized as follows: (a) provide a staffing plan with qualifications and experiences working in healthcare for key personnel; (b) describe process of inventory, cataloging, and protecting existing VA furniture; (c) describe process of protecting VA property; (d) describe process for making corrections during final walkthrough; (e) describe process for warranty repairs; (f) describe interior designer's experience working on healthcare facilities and what hardware and software will be used to produce drawings of design work; (g) describe technical capabilities of certain staff; and (h) describe experience of the installation staff and interior design staff regarding work in a federal and healthcare facilities, namely their knowledge regarding safety codes, infection control standards, and patient privacy standards. Compl. Ex. 1 at 33-34 (stating key elements).

issued to several other companies, including defendant-intervenors, Cuna Supply and GovSolutions. Thereafter, plaintiff filed a protest with the GAO, which was denied.

Plaintiff filed a Complaint before this court and a motion for judgment on the administrative record maintaining that the VA: (1) disparately evaluated its proposal under the stated evaluation criteria and that this failure was arbitrary and capricious and in violation of FAR; (2) failed to maintain anonymity in its evaluation process; and (3) turned a blind eye to contractor collusion. Defendant and defendant-intervenor, Cuna Supply, have each filed a motion for judgment on the administrative record challenging those claims and seeking judgment in their favor.

## LEGAL STANDARD

In ruling on motions for judgment on the administrative record pursuant to Rule 52.1(c) of the RCFC, "the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). Because the court makes factual findings from the record evidence, judgment on the administrative record is akin to an expedited trial on the record. *See Bannum*, 404 F.3d at 1356 (adding that the statute conferring jurisdiction over bid protests requires the court to give "due regard" to expedited resolution of the action).

Bid protest cases are reviewed under the standard established in the Administrative Procedures Act, 5 U.S.C.A. § 706. *See* 28 U.S.C. § 1491(b)(4) (referring court to 5 U.S.C.A. § 706). An agency's procurement decisions will be upheld unless shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ceres Envtl. Servs., Inc. v. United States*, 52 Fed. Cl. 23, 33 (2002) (quoting § 706(2)(A)). To make such a showing, a plaintiff must demonstrate that (1) the agency's decision lacked a rational basis or (2) that it involved a violation of regulation or procedure. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332-33 (adding that the plaintiff bears a heavy burden and that the test on the first ground is to determine whether the agency provided a coherent and reasonable explanation of its exercise of discretion).

When a challenge is brought on the second ground, the plaintiff must show a "clear and prejudicial violation of applicable statutes or regulation." *Id.* at 1333 (quotation and citation omitted). To demonstrate prejudice, the plaintiff must show a substantial chance that it would have received the contract award but for that error. *Elec. Data Syss., LLC v.*

- 4 -

*United States*, 93 Fed. Cl. 416, 429 (2010) (citation and quotation omitted). In the context of a multiple-awardee IDIQ contract, "prejudice analysis must take into account the impact of the error on all the awards, including whether the correction of an error 'might not only improve the protester's evaluation, but diminish that of a current awardee, or even eliminate that awardee from further consideration altogether.'" *Afghan Am. Army Servs. Corp. v. United States*, 90 Fed. Cl. 341, 366 (2009) (quoting *Serco Inc. v. United States*, 81 Fed. Cl. 463, 501 (2008) (stating that the "slightest shifting of a single adjectival rating could have significant impact not only on the ranking of a given protester, but also on who they might be compared with in a tradeoff analysis" (quoting *Serco Inc.*, 81 Fed. Cl. at 501)).

## DISCUSSION

Plaintiff's motion for summary judgment on the administrative record must be denied; defendant and defendant-intervenor's cross-motions are granted for the following reasons:

1. The VA Provided a Coherent and Reasonable Explanation for Denying Plaintiff's Proposal

Plaintiff contends that the VA's decision lacked a rational basis because it included all the information required to meet sub-factor three. To support its claim, plaintiff reexamines each of the eight key elements of the service narrative.

Plaintiff's service narrative did not include all the information required to meet sub-factor three. An offeror bears the burden of presenting an adequately written proposal that satisfies the requirements of the solicitation. *Mercom, Inc. v. United States*, 131 Fed. Cl. 32, 40 (2017) (quotation and citation omitted). A significant part of plaintiff's contention in this regard is that the VA improperly relied on Attachment 15 as a rubric to evaluate the proposals. Plaintiff contends that the VA should have confined itself to the RFP, which stated that proposals would be evaluated on their ability "to meet all services as defined in the Statement of Work." Compl. Ex. 1 at 33 (quoting RFP).

Contrary to plaintiff's contention, however, the amended solicitation provided a set of Questions and Answers, which stated that Attachment 15 "will be used to evaluate the technical proposals." Admin. R. Attach. 6 at AR 2023 (quoting RFP); *see also Office Depot, Inc. v. United States*, 95 Fed. Cl. 517, 532-33 (2010) ("[A] solicitation need not identify each element to be considered by the agency during the course of the evaluation where such element is intrinsic to the stated factors." (citation omitted)). The VA's reliance on Attachment 15 was therefore consistent with the solicitation.

- 5 -

The VA assessed plaintiff's proposal a score of twelve out of sixty-six points because its proposal under sub-factor three did not provide complete details or support on several questions. This court does not sit as a "super" Source Selection Authority to second guess agency procurement decisions. *Ceres Envtl. Servs., Inc. v. United States*, 97 Fed. Cl. 277, 308 (adding that the court will "not second guess the minutiae of the procurement process in such matters as technical ratings") (quotation and citation omitted)). As developed further below, the VA made a rational determination and provided a coherent explanation, when it remarked *inter alia* that plaintiff's bid was "[v]ery generic on staffing, experience; No inventory, cataloging or protection of VA property information . . . ; No info on AutoCAD or PDF . . . ; No info on staffing having knowledge of life safety, infection control and HIPPA." Admin. R. Attach. 6 at AR 1952 (stating VA remarks). The VA properly exercised its discretion to deny plaintiff's proposal.

    2.  <u>The VA's Decision Did Not Involve a Clear and Prejudicial Violation of Regulation or Procedure</u>

Plaintiff claims that: (i) the VA disparately evaluated its proposal and held it to a more exacting standard than other offerors; (ii) failed to maintain anonymity in its evaluation process; and (iii) turned a blind eye to contractor collusion. We disagree.

*i.    Claim Regarding Disparate Evaluation*

Plaintiff contends that a comparison of some of the other awardees' service narrative reveals equivalent service narratives that were assigned more points. *See* Pl.'s Mot. J. Admin. R. at 9-27 (discussing key elements and comparing plaintiff's service narrative to that of other offerors). Plaintiff maintains that such disparate treatment is proof of the VA's arbitrary and capricious evaluation.

Plaintiff's comparative analysis of various offerors' service narratives points to several inconsistencies in the VA's evaluations; however, these are not sufficient to demonstrate that the VA's decision involved a clear and prejudicial violation of regulation or procedure and was therefore arbitrary and capricious. An agency's decision is unreasonable if it downgrades "technical proposals for deficiencies that are **substantively indistinguishable** from those found in the proposals of the other offerors who remained in the competitive range." *Sci. Applications Int'l Corp. v. United States*, 108 Fed. Cl. 235, 272 (2012) (emphasis added) (citation omitted); *see also TLT Const. Corp. v. United States*, 50 Fed. Cl. 212, 216 (2001) (stating that when evaluation factors are listed in the RFP, they must be applied to each proposal consistently) (citing 10 U.S.C. § 2305 (1999)).

The VA properly exercised its discretion in finding that plaintiff's service narrative was not comparable to the awardees' proposals. Where an offeror alleges unequal treatment, it must demonstrate that the differences in evaluation did not accurately reflect

- 6 -

actual differences between the awardees' proposals. *Dismas Charities, Inc. v. United States*, 61 Fed. Cl. 191, 205 (2004) (quotations and citation omitted). Where comparably detailed proposals are not submitted, the agency has no basis to find comparable weaknesses. *See Paragon Syss., Inc.; SecTek, Inc.*, B–409066.2, B–409066.3, June 4, 2014, 2014 CPD ¶ 169 at *7 (finding different rating reasonable based on differences in proposals).

Defendant demonstrates that plaintiff did not meet its high burden of establishing that the VA's evaluation was unreasonable and prejudicial. *See Elec. Data Syss.*, 93 Fed. Cl. at 429 (stating that the focus of the standard is on the reasonableness of the agency result, rather than its correctness). For instance, with respect to:

(a) the staffing plan and key personnel — plaintiff contends that other offerors received two point credits for their staffing plan, despite not providing an adequate response or a response to each line item. However, the record reveals that plaintiff submitted a staffing plan that could not be compared to others; in particular, saying little of the staff's qualifications in healthcare. Moreover, the comparators' proposals were more responsive and descriptive. *See* A. Pomerantz, Veteran Office Design, the Russell Group, and the four alleged colluders.[3] The VA's point credits were not unreasonable;

(b) the process used for protecting and cataloging VA furniture — plaintiff contends that it provided a plan for protecting existing furniture and intended to provide a list of materials that would be used to protect the furniture once in its possession; whereas, another offeror and the alleged colluders did not provide a plan for existing furniture, yet they received two points. Whether all the awardees' proposals responded directly to the solicitation is not clear. Plaintiff concedes that it did not respond to this requirement and relies on the unsupported assertion that it is normal practice to provide such a plan once the VA issues a task order. The VA was not unreasonable in exercising its discretion to award credit to the awardees' responses;

(c) the protection of VA's real property — plaintiff contends that it generally explained that it would handle the VA's property and that awardee, A. Pomerantz, was credited two points in line item two, despite the VA finding that it had not provided a description of materials used and how they would protect the VA's property in line item one. Even if this is correct, plaintiff

---

[3] The four alleged colluding parties are SDV Office Designs, Johnson Danforth, Cuna Supply, and Coronado Distribution.

does not establish how this error is prejudicial given the inadequacies of its own proposal in neglecting to include an indication of the materials it planned to use. A. Pomerantz received an "outstanding" rating consisting of sixty-two points for sub-factor three. If the VA's assessment was erroneous, that would not diminish or eliminate A. Pomerantz as an awardee. The VA's decision therefore was not unreasonable and/or prejudicial;

(d) the interior designer's experience working on healthcare facilities and the hardware and software used to producing drawings — plaintiff maintains that its proposal states that its "design manager" has eighteen years of experience in healthcare, but plaintiff's proposal also states that its "interior designer" has ten years of experience, without specifying the nature of the experience. Defendant maintains, without explanation, that a distinction exists between the terms. Plaintiff neglected to describe the hardware and software that its designer planned to use. The VA's point credits were not unreasonable;

(f) the technical capabilities of staff — plaintiff contends that its proposal demonstrates its ability to fulfill the required services. Yet, the record reveals that plaintiff's proposal does not address the technical capabilities of its staff to use AutoCAD or PDF to produce drawings, as required. The VA's decision therefore was not unreasonable; and

(g) the experience of installation and design staff working on federal and healthcare facilities — plaintiff argues that its proposal discussed the experience of its staff in these facilities and that its generic responses were penalized; whereas, other offerors' responses were not. The record shows that plaintiff's proposal does not address whether its staff had knowledge of and experience with safety codes, infection control standards, and patient privacy standards. The VA's decision therefore was not unreasonable.[4]

Plaintiff does not establish that, but for the VA's alleged error, it had a substantial chance of winning a contract. *See Octo Consulting Grp., Inc. v. United States*, 124 Fed. Cl. 462, 467-68 (2015) (stating that the prejudice inquiry focuses on the effect of the government's error on the plaintiff's chances of being awarded the contract). In finding that defendant's evaluation was not arbitrary and capricious, we are mindful that the agency is not required to search for information to render plaintiff's proposal responsive to the

---

[4] Plaintiff's proposal regarding the element requiring a description of the final walkthrough and punchlist process was not marked as deficient. Defendant, moreover, states that the "parties agree that [plaintiff] satisfied this requirement." Def.'s Mot. J. Admin. R. at 25.

- 8 -

solicitation if it is not included in the correct part of the proposal. *See IBM Corp. v. United States*, 101 Fed. Cl. 746, 758-59 (2011) (citation omitted) (stating that agency is not required to search proposal for information bearing on identified weaknesses). The VA's decision did not involve a clear and prejudicial violation of regulation or procedures.

### ii.  *Claim Regarding Failure to Maintain Anonymity in Evaluation*

Plaintiff contends that the VA failed to maintain the anonymity designed to ensure fairness and equality of the evaluation process. In support, it asserts that several offerors' names appeared unredacted in their proposals or proposal metadata. An agency has the discretion to reject offers that do not comply with redaction requirements. *Strategic Bus. Solutions, Inc. v. United States*, 129 Fed. Cl. 621, 628 (2016), *aff'd*, 711 Fed. Appx. 651 (Fed. Cir. 2018). However, plaintiff does not address the key issue of whether it had a substantial chance of receiving the contract award, but for those errors. *Cf. Elec. Data Syss.*, 93 Fed. Cl. at 429 (stating that a violation of procedures requires a showing of prejudice); *see also Square One Armoring Serv., Inc. v. United States*, 123 Fed. Cl. 309, 329 (2015) (stating that there is a "strong presumption that government officials act correctly, honestly, and in good faith when considering bids"). Plaintiff neglects to explain whether its own failure to redact its company identifiers from its proposal compromised the fairness and equality of the evaluation process. Plaintiff has not established a prejudicial violation of procedures in connection with this procurement; therefore, we must reject its claim.

### iii.  *Claim Regarding Contractor Collusion*

Plaintiff maintains that the VA turned a blind eye to contractor collusion in violation of 48 C.F.R. § 3.303, which deals with reporting suspected antitrust violations. Plaintiff states that four awardees provided virtually identical Statement of Work narratives and received almost identical marks. Pl.'s Mot. J. Admin. R. at 33 (adding that it asked the VA to refer this matter to the Department of Justice pursuant to 48 C.F.R. §§ 3.301(b), 3.303(d)). In response, defendant-intervenor maintains that plaintiff has not shown a link between the alleged collusion and the VA's evaluation and award. Defendant states that the VA was reviewing the matter, which was referred to the Department of Justice. Meanwhile, plaintiff has provided no authority preventing the VA from proceeding with the awards despite these suspicions, nor has it sought to enjoin such awards.

If proven, collusion arguably could prejudice an offeror's chance of obtaining an award. Proving collusion, however, is not the VA's responsibility; it must do what it did: refer the matter to the Department of Justice. The VA's decision not to dismiss the suspected colluding offerors, but refer the matter to DOJ, is not a violation of regulations or procedures. Plaintiff's claim that the VA acted arbitrarily and capriciously is without merit.

- 9 -

## CONCLUSION

Plaintiff's motion for judgment on the administrative record is **DENIED**. Defendant and defendant-intervenor's cross-motions for judgment on the administrative record are **GRANTED**. No costs.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*

Robert H. Hodges, Jr.
Senior Judge

- 10 -

APPEAL,CLOSED,ECF

# US Court of Federal Claims
## United States Court of Federal Claims (COFC)
## CIVIL DOCKET FOR CASE #: 1:18-cv-01147-RHH

OFFICE DESIGN GROUP v. USA
Assigned to: Senior Judge Robert H. Hodges, Jr
Case in other court: 19-01337
Cause: 28:1491 Tucker Act

Date Filed: 08/07/2018
Date Terminated: 10/26/2018
Jury Demand: None
Nature of Suit: 138 Contract - (Pre
Award) Injunctions
Jurisdiction: U.S. Government
Defendant

**Plaintiff**

**OFFICE DESIGN GROUP**    represented by    **Joseph A. Whitcomb**
Whitcomb, Selinsky, McAuliffe, PC
2000 South Colorado Boulevard
Tower One, Suite 9500
Denver, CO 80222
(303) 534-5461
Fax: (866) 476-4558
Email: joe@wsmlawpc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**USA**    represented by    **Tanya Beth Koenig**
U.S. Department of Justice - Civil
Division
P. O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 305-7587
Fax: (202) 307-0972
Email: tanya.b.koenig@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devin Andrew Wolak**
U. S. Department of Justice
Civil Division
1100 L Street, NW
Washington, DC 20005
(202) 616-0170

Fax: (202) 514-8624
Email: devin.wolak2@usdoj.gov
*TERMINATED: 10/25/2018*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

**CUNA SUPPLY LLC**                  represented by **Matthew Thomas Schoonover**
Koprince Law LLC
901 Kentucky Street
Suite 301
Lawrence, KS 66044
(785) 200-8919
Fax: (785) 370-0773
Email: mschoonover@koprince.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**GOVSOLUTIONS, INC.**               represented by **John Bradley Reaves**
ReavesColey, PLLC
505 Independence Parkway
Suite 103
Chesapeake, VA 23320
(757) 410-8066
Fax: (757) 624-3169
Email: brad.reaves@reavescoley.com
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/07/2018 | 1 | COMPLAINT against USA (VA) (Filing fee $400, Receipt number 9998-4835112) (Copy Served Electronically on Department of Justice), filed by OFFICE DESIGN GROUP. **Answer due by 10/9/2018.** (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(vds) Modified on 8/7/2018 to seal (vds). (Entered: 08/07/2018) |
| 08/07/2018 | 2 | NOTICE of Assignment to Senior Judge Robert H. Hodges. (vds) (Entered: 08/07/2018) |
| 08/07/2018 | 3 | NOTICE of Designation of Electronic Case. (vds) (Entered: 08/07/2018) |
| 08/07/2018 | 4 | MOTION for Protective Order, filed by OFFICE DESIGN GROUP. Service: 8/7/2018. **Response due by 8/21/2018.**(vds) (Entered: 08/07/2018) |
| 08/07/2018 | 5 | NOTICE of Appearance by Devin Andrew Wolak for USA . (Wolak, Devin) (Entered: 08/07/2018) |
| 08/09/2018 | 6 | |

| | | |
|---|---|---|
| | | Joint MOTION scheduling order, protective order, permission to file AR on DVD-ROM, restoration of complaint to CM/ECF docket , filed by USA.**Response due by 8/23/2018.**(Wolak, Devin) (Entered: 08/09/2018) |
| 08/14/2018 | 7 | ORDER granting 6 Motion setting schedule for preliminary briefs. Administrative Record due August 22, 2018. Signed by Senior Judge Robert H. Hodges, Jr. (vk). (Entered: 08/14/2018) |
| 08/14/2018 | 8 | ORDER granting 4 Motion for Protective Order Signed by Senior Judge Robert H. Hodges, Jr. (vk). (Entered: 08/14/2018) |
| 08/21/2018 | 9 | Unopposed MOTION to Intervene , filed by CUNA SUPPLY LLC.**Response due by 9/4/2018.**(Schoonover, Matthew) (Entered: 08/21/2018) |
| 08/22/2018 | 10 | **SEALED**ADMINISTRATIVE RECORD , filed by USA. (Attachments: # 1 CO Certification, # 2 Tabs 1-2c, # 3 Tabs 2d-2g, # 4 Tabs 2h-3, # 5 Tabs 4-5b, # 6 Tabs 5c-7)(Wolak, Devin) (Entered: 08/22/2018) |
| 08/22/2018 | 11 | NOTICE, filed by USA re 10 Administrative Record (Wolak, Devin) (Entered: 08/22/2018) |
| 08/24/2018 | | ORDER granting 9 Motion to Intervene. Defendant-intervenor will comply with the same schedule as defendant set forth in 7 Scheduling Order. Signed by Senior Judge Robert H. Hodges, Jr. (vk). (Entered: 08/24/2018) |
| 08/27/2018 | 12 | APPLICATION for Access to Protected Material by Steven J. Koprince, Matthew T. Schoonover, Matthew P. Moriarty, and Shane J. McCall, filed by CUNA SUPPLY LLC.(Schoonover, Matthew) Modified on 9/11/2018 to terminate pending gavel (vds). (Entered: 08/27/2018) |
| 08/31/2018 | 13 | MOTION to Intervene , filed by GOVSOLUTIONS, INC..**Response due by 9/14/2018.** (Attachments: # 1 Text of Proposed Order)(Reaves, John) (Entered: 08/31/2018) |
| 09/04/2018 | 14 | **SEALED**First MOTION for Extension of Time until 9/7/2018 to file Plaintiff's MJAR , filed by OFFICE DESIGN GROUP.**Response due by 9/18/2018.** (Whitcomb, Joseph) (Entered: 09/04/2018) |
| 09/05/2018 | | ORDER granting 14 Motion for Extension of Time. **Plaintiff's Motion for Judgment on the Administrative Record is due by 9/7/2018; Defendant's Response is due 9/21/2018. The remaining deadlines set forth in the 8/14/17 Scheduling Order will remain the same.** Signed by Senior Judge Robert H. Hodges, Jr. (vk). (Entered: 09/05/2018) |
| 09/05/2018 | | ORDER granting 13 Motion to Intervene. Defendant-intervenor will comply with the same schedule as defendant set forth in 7 Scheduling Order as modified in the Order dated 9/5/2018. Signed by Senior Judge Robert H. Hodges, Jr. (vk). (Entered: 09/05/2018) |
| 09/05/2018 | 15 | APPLICATION for Access to Protected Material by Timothy J Turner, filed by OFFICE DESIGN GROUP.(Turner, Timothy) Modified on 9/11/2018 to terminate pending gavel (vds). (Entered: 09/05/2018) |
| 09/06/2018 | 16 | |

| | | APPLICATION for Access to Protected Material by Brad Reaves, filed by GOVSOLUTIONS, INC..(McMahon, Beth) Modified on 9/11/2018 to terminate pending gavel (vds). (Entered: 09/06/2018) |
|---|---|---|
| 09/06/2018 | 17 | APPLICATION for Access to Protected Material by David Hearne, filed by GOVSOLUTIONS, INC..(McMahon, Beth) Modified on 9/11/2018 to terminate pending gavel(vds). (Entered: 09/06/2018) |
| 09/06/2018 | 18 | APPLICATION for Access to Protected Material by Beth McMahon, filed by GOVSOLUTIONS, INC.(McMahon, Beth) Modified on 9/11/2018 to terminate pending gavel (vds). (Entered: 09/06/2018) |
| 09/07/2018 | 19 | **SEALED**First Motion for Judgment on the Administrative Record , filed by OFFICE DESIGN GROUP.**Response due by 9/21/2018.** (Attachments: # 1 Exhibit Ex. 5C1, # 2 Exhibit Ex. 5C2, # 3 Exhibit Ex. 5C3, # 4 Exhibit Ex. 5C4, # 5 Exhibit Ex. 5C5, # 6 Exhibit Ex. 5C6, # 7 Exhibit Ex. 5C7, # 8 Exhibit Ex. 5C8, # 9 Exhibit Ex. 5C9, # 10 Exhibit Ex. 5C10)(Whitcomb, Joseph) (Entered: 09/07/2018) |
| 09/21/2018 | 20 | **SEALED** MOTION for Judgment on the Administrative Record *and Opposition to Office Design Group's Motion*, filed by CUNA SUPPLY LLC.**Response due by 10/19/2018.** (Attachments: # 1 Memorandum of Facts and Law)(Schoonover, Matthew) (Entered: 09/21/2018) |
| 09/21/2018 | 21 | **SEALED** MOTION for Judgment on the Administrative Record *and response to plaintiff's motion for judgment upon the administrative record*, filed by USA.**Response due by 10/19/2018.** (Wolak, Devin) (Entered: 09/21/2018) |
| 09/28/2018 | 22 | **SEALED**REPLY to Response to Motion re 21 MOTION for Judgment on the Administrative Record *and response to plaintiff's motion for judgment upon the administrative record* , filed by OFFICE DESIGN GROUP.(Whitcomb, Joseph) (Entered: 09/28/2018) |
| 10/05/2018 | 23 | **SEALED**REPLY to Response to Motion re 20 MOTION for Judgment on the Administrative Record *and Opposition to Office Design Group's Motion* , filed by CUNA SUPPLY LLC.(Schoonover, Matthew) (Entered: 10/05/2018) |
| 10/05/2018 | 24 | **SEALED**REPLY to Response to Motion re 21 MOTION for Judgment on the Administrative Record *and response to plaintiff's motion for judgment upon the administrative record* , filed by USA.(Wolak, Devin) (Entered: 10/05/2018) |
| 10/18/2018 | 25 | REDACTED DOCUMENT, filed by CUNA SUPPLY LLC redacting 20 MOTION for Judgment on the Administrative Record *and Opposition to Office Design Group's Motion* . (Schoonover, Matthew) (Entered: 10/18/2018) |
| 10/18/2018 | 26 | REDACTED DOCUMENT, filed by CUNA SUPPLY LLC redacting 23 Reply to Response to Motion . (Schoonover, Matthew) (Entered: 10/18/2018) |
| 10/25/2018 | 27 | NOTICE of Appearance by Tanya Beth Koenig for USA . (Koenig, Tanya) (Entered: 10/25/2018) |
| 10/26/2018 | 28 | **SEALED**ORDER denying 19 Motion for Judgment on the Record; granting 20 Motion for Judgment on the Administrative Record; granting 21 Motion for Judgment on the Administrative Record; Order of Dismissal.Signed |

| | | |
|---|---|---|
| | | by Senior Judge Robert H. Hodges, Jr.(jb) Copy to parties. (Entered: 10/26/2018) |
| 10/26/2018 | | ORDER. Any proposed redactions to 28 Order on Motion for Judgment on the Admin. Record, Order on Cross Motions [Dispositive], may be filed on or before 11/09/2018. Upon receipt and consideration of any proposed redactions, a reissued Opinion will be filed, unsealed. **Notice of Compliance due by 11/9/2018.** Signed by Senior Judge Robert H. Hodges, Jr. (jb) Service on parties made. (Entered: 10/26/2018) |
| 10/26/2018 | 29 | JUDGMENT entered, pursuant to Rule 58, that judgment is entered in favor of defendant and defendant-intervenors. No costs. (Service on parties made.) (ac7) (Main Document 29 replaced on 10/26/2018 to correct caption) (ac7). (Entered: 10/26/2018) |
| 11/07/2018 | 30 | REDACTED DOCUMENT, filed by USA redacting 21 MOTION for Judgment on the Administrative Record *and response to plaintiff's motion for judgment upon the administrative record* . (Koenig, Tanya) (Entered: 11/07/2018) |
| 11/07/2018 | 31 | REDACTED DOCUMENT, filed by USA redacting 24 Reply to Response to Motion, . (Koenig, Tanya) (Entered: 11/07/2018) |
| 11/09/2018 | 32 | JOINT STATUS REPORT *regarding redactions*, filed by USA. (Koenig, Tanya) (Entered: 11/09/2018) |
| 12/15/2018 | 33 | NOTICE OF APPEAL as to 28 Order on Motion for Judgment on the Record,, Order on Motion for Judgment on the Admin. Record,,,,, Order Dismissing Case,, filed by OFFICE DESIGN GROUP. Filing fee $ 505, receipt number 9998-5103086. Copies to judge, opposing party and CAFC. (Whitcomb, Joseph) (Entered: 12/15/2018) |
| 12/17/2018 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals for the Federal Circuit re 33 Notice of Appeal. (ac7) (Entered: 12/17/2018) |
| 12/21/2018 | | CAFC Case Number 2019-1337 for 33 Notice of Appeal, filed by OFFICE DESIGN GROUP. (ac7) (Entered: 12/21/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/01/2019 14:31:49 | | | |
| **PACER Login:** | dc7775:3403958:4299065 | **Client Code:** | DOJ |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-01147-RHH |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**NOTIFICATION OF PROTEST—SUMMARY REPORT**

Type of Protest:      General Accounting Office (GAO) Post-award
Contracting Office:   Office of Procurement, Acquisition, and Logistics (OPAL),
                      Strategic Acquisition Center (SAC) – Fredericksburg, VA

| PROTEST SUMMARY | |
|---|---|
| Type | Post-award |
| Level | GAO |
| GAO Case Number | B-415853.3, B-415854.3, B415855.3, B415856.3, and B415859.3 |
| Filed | April 11, 2018 |
| Protestor | Office Design Group (ODG) |
| | Solicitation Company Identifiers:  Region 1:Primrose; Region 2: Orchid; Region 3: Lily; Region 4: Tulip; Region 5: Sunflower |
| Basis (Page 2) | See page two through three |
| CO Position (Page 2) | See pages three through six |
| **Status** | Stay of Performance on all awarded IDIQs |

| ACQUISITION PROTESTED | |
|---|---|
| Title of Acquisition | VHA Healthcare Furniture Standardization Services and Products (All Regions)* |
| Solicitation Number | VA119-17-R-0260, 0261, 0262, 0263 & 0264 |
| Contract Number | Multiple IDIQs |
| Dollar Value | $499M Ceiling / IDIQ |
| Solicitation Date | May 5, 2017 |
| Contract Award Date | December 14, 2017**/ April 3, 2018 |
| Winning Contractor(s) | Multiple awards – see page eight |
| Customer | VHA Office of the Deputy Under Secretary for Health for Operations and Management (C. Emanuelson) |
| Contracting Officer | SAC, Vicki Whiteman |
| Assigned VA Attorney | Aleia Barlow |

*Region 1:  Maine, Vermont, New Hampshire, New York, Connecticut, Massachusetts, New Jersey, Pennsylvania, District of Columbia, West Virginia, Virginia and North Carolina.
Region 2: Kentucky, Tennessee, Alabama, Georgia, South Carolina, Florida and Puerto Rico.
Region 3: Ohio, Michigan, Indiana, Illinois, Wisconsin, Missouri, Iowa, Minnesota, North Dakota, South Dakota, Nebraska and Kansas.
Region 4: Mississippi, Louisiana, Arkansas, Texas, Oklahoma, Colorado, Utah, Wyoming, and Montana.
Region 5: Arizona, New Mexico, California, Nevada, Idaho, Oregon, Washington, Hawaii, Philippines and Alaska.
  **Original IDIQ award date.

**Appx16**

| ACQUISITION STRATEGY | | |
|---|---|---|
| Contract Type | | Indefinite Delivery Indefinite Quantity – Multiple Award |
| Set-Aside | X | Service-Disabled Veteran-Owned Small Business (SDVOSB) |
| Full and Open | | NO |
| Sole Source | | NO |
| FSS | | NO |

**BRIEF DESCRIPTION OF THE REQUIREMENT**

The Veterans Health Administration (VHA) has a recurring requirement for healthcare furniture for the Medical Centers, the Community-Based Outpatient Clinics (CBOCs), the Vet Centers, and other outlying clinics and offices throughout the United States, by Region (total of 5 regions under separate solicitations as listed above). This is an effort by VHA to streamline the acquisition process and obtain further discounted commercial pricing. This requirement includes healthcare furniture, design, project management, furniture removal, professional installation and maintenance/warranty services.

A total of 19 proposals were received in regions one through four and 20 proposals in region 5 under the referenced solicitations.

**WINNING CONTRACTORS / CONTRACT NUMBERS**

See Page 8.

**BASIS OF PROTEST**

1. The SSA did not evaluate ODG's proposal pursuant to the Evaluation Criteria listed in the solicitation. This failure was prejudicial to ODG and was arbitrary, capricious, and in violation of the FAR.

2. a.) The SSA disparately evaluated ODG's proposal. ODG avers that because the procurement is an IDIQ, which necessarily means that the specific VA requirements are still forthcoming, the VA must have held the potential awardee's procurement to a different standard than it did ODG's.

   b.) No offeror could have provided, as an example, a detailed staffing plan (one of ODG's alleged deficiencies) when the precise requirements for the five different regions are still unannounced.

**Appx17**

c.) When the VA attempted to compete this procurement in 2016, the record showed (after much effort on ODG's part to secure the administrative record) that the VA had disparately evaluated the proposals, finding fault in ODG's submission where it had winked at the same shortcomings in the awardee's proposals.

3. The SSA engaged in unequal and prejudicial discussions with the awardees. ODG makes this allegation on two grounds. Firstly, this is the second time the VA has competed this requirement. The last time was in 2016. ODG learned during that protest that the VA had engaged in unequal and prejudicial discussions with other Offerors. Secondly, ODG believes that since all five regions for this procurement were awarded to the same six Offerors and given the vagueness of the SOW, the record will demonstrate that the VA engaged in unequal discussions with the awardees and that ODG was prejudiced by those discussions. Any presumption of regularity the VA would normally enjoy is overcome by the fact that the VA already demonstrated a propensity to engage in unequal discussions when trying to compete this contract in 2016.

## CONTRACTING OFFICER'S POSITION

Response #1:   The evaluation of each Offeror's proposal was evaluated based on the evaluation criteria stated in the solicitation in FAR clause 52.212-1 Instruction to Offerors – Commercial Items (Solicitation(s) pgs. 27 – 33) and FAR clause 52.212-2 Evaluation – Commercial Items (Solicitation(s) pgs. 34 – 36). Each Offeror was assigned a company identifier (example: Rose, Iris, Lilac) to prevent any prejudice towards any of the Offerors or proposals. The Offerors were instructed to utilize the company identifier to insure the procurement integrity was maintained. The technical evaluation team did not have access to the list of companies and the associated company identifiers. Each proposal was evaluated utilizing the exact same criteria as stated in the solicitation. The winning IDIQ vendors were identified publically upon award (December 2017) however the company identifiers remained intact and not disclosed outside of the contracting staff and required pre-award reviews, but never disclosed to the technical evaluation team. Therefore no offeror was prejudiced during evaluations, either initial or re-evaluation as a result of corrective action.

The Agency determined corrective action would be taken based on the GAO protest received December 2017 (against original awards). All Offerors were reevaluated based on the evaluation criteria set-forth in the solicitation, with company identifiers intact, which resulted in the same outcome (overall technical ratings) for ODG. ODG's proposal did not meet the requirements of the solicitation as detailed in the unsuccessful offeror letter sent on April 03, 2018. The unsuccessful letter details the evaluation summary of ODG's proposal against the requirements contained in the solicitation. In fact, the solicitation contained, as attachments, the exact evaluation forms to be used by the evaluation team and was consistently disclosed to all potential Offerors. Specifically, under Evaluation – Commercial Items, (the basis for this protest) includes specific details on how the Government will evaluate the contractor's service narrative, "must cover all services required under SV1 Furniture, Design, and Installation Support Services; SV2 Installation and Reconfiguration Services; SV3 Industrial Design Services; SV4 Advanced Project Management Turn-key Services with Furniture", with key elements also

listed in this same section of the solicitation, available to all Offerors. In fact, the solicitation also included Attachment 15, Service Technical Evaluation Questions, notifying all Offerors of the exact items to be reviewed under the service narrative portion of the technical proposal.

The Contracting Officer denies this allegation.

Response #2:   a.) The SSA reviewed the recommendations of the Source Selection Evaluation Team (SSET) for accuracy to insure that all Offeror's proposals were evaluated fairly and in accordance with the evaluation criteria of the solicitation. ODG's proposal was presented to the SSET with a company identifier (see response #1) as was all Offerors. All Offerors' proposals, including ODG's, were evaluated the same in accordance with Section E.4, FAR 52.212-2, Evaluation – Commercial Items, on pages 34 through 36 of the solicitation. Therefore, ODG's proposal was not evaluated disparately as alleged.

Corrective action (from December 2017 protest) was taken and all Offerors proposals were reevaluated in accordance with the same criteria set-forth in the solicitation. To prevent any disparate treatment all offeror's proposal assigned company identifiers in the original evaluation remained intact and the SSET did not have any knowledge of the actual company names during the evaluation process.

The Contracting Officer denies this allegation.

b.) As part of the technical proposal (Technical Subfactor 3 SOW Solicitation Attachment 1) Offerors were required to address four items (SV1 – SV4) (Evaluation – Commercial Items). Solicitation Attachment 15 Service Technical Evaluation Questions was provided to the Offerors as part of the solicitation and informed Offerors this attachment would be used to evaluate proposals (as the Protestor states) in the evaluation of Technical Subfactor 3. In Attachment 15 under SV1 – SV4 a staffing plan is addressed. In fact, a significant number of Offerors addressed the staffing plan requirements and received credit accordingly for Technical Subfactor 3 SOW.

Additionally, ODG's assertion that the information provided "should have provided sufficient evidence to satisfy all requirements of the SOW" is not supported by the information contained in the proposal. No assumptions can be made on the part of the evaluators. An assertion made by an offeror that is not supported through information contained in the proposal is not acceptable / ineligible for award (see below) as stated in the solicitation.

1. If ODG's position is that no Offeror could have provided an element of the solicitation, as an example a detailed staffing plan, this should have been identified at the solicitation phase and not after contract award. A protest against a solicitation element is now untimely.
2. The solicitation instructed Offerors (Instructions to Offerors) to:

     a. "…confine submissions to essential matters, sufficient to define the proposal and provide an adequate basis for evaluation."

     b. "Contractors are responsible for including sufficient details, in a concise manner, to permit a complete and accurate evaluation of each proposal."

3. In the solicitation, Evaluation of Commercial Items, Offerors were instructed that "Proposals that merely restate the solicitation requirements or state that the requirements will be met with no supporting rationale will be considered ineligible for award. Each proposal will be evaluated in strict accordance with its written content."

The Contracting Officer denies this allegation.

c. ODG is asserting an unfounded claim that discussions were conducted with some of the Offerors and not all Offerors. As stated within the solicitation (Evaluation of Commercial Items) the Government reserves the right to award without discussion. Discussions were not conducted with any of the Offerors. The Government made award determinations based solely on the Source Selection Team's technical evaluation of each proposal in accordance with the evaluation criteria set-forth in the solicitation. This allegation is based on a previous solicitation (2016) and has no bearing on the current solicitation or award decision.

The Contracting Officer denies this allegation.

Response #3:    The VA established awards of the IDIQs without discussions in accordance with solicitation clause FAR 52.212-2 Evaluation - Commercial Items page 34 paragraph (a). The VA did not engage in unequal or prejudicial discussions with the awardees or any other Offeror.

The Contracting Officer denies this allegation.

1. The Protestor also identifies a previous solicitation (2016) that was awarded, received protests, and was subsequently cancelled. This reference has no bearing on the current acquisition. It is unfounded and pure conjecture on the part of the protestor.

2. The VA utilized a new contracting officer and contract specialist for this effort. As stated above the previous solicitation and BPA award (2016) have no bearing on the solicitation and award of the current requirement. There is no basis for this allegation it is merely conjecture on the part of ODG.

The basis of protest submitted by ODG is addressed above. The remaining information in ODG's protest, pages 4 through 11 are statements disagreeing with the technical proposal. Specifically, ODG disagrees with the technical evaluation team's assignment of Unacceptable on subfactor 3, which deems ODG's overall technical proposal unacceptable in accordance with the solicitation (Evaluation – Commercial

Items) whereas an "Unacceptable Rating" for any Technical section will result in an overall "Unacceptable" rating for the Technical Factor. ODG was provided a notification to the unsuccessful offeror which contained detailed information where the proposal fell short under subfactor 3 as well as assigned ratings and summaries for all portions of the evaluation (Exhibit B through F of the protest).

A prompt dismissal of the protest in its entirety is requested. ODG has provided no factual or legal grounds for their protest, only disagreement with the evaluation results of the protestor's proposal. To further delay the performance on the contracts would be detrimental to VHA's need to purchase furniture and associated services at various medical facilities and supporting the Veterans and their families, as well as impact end of year procurements.

## STATUS

1. Contract performance has suspended pending resolution of this protest.

2. Significant Dates:

| | |
|---|---|
| May 5, 2017: | Solicitation publicized on www.fbo.gov. |
| May 5, 2017: | Correction to FBO Post (Amendment 0001) Fix technical error. While posting the solicitation electronically a glitch occurred and Attachment 1 SOW was not posted. Amendment 0001 added Attachment 1. (Region 1 solicitation (0260) only) |
| June 5, 2017: | Amendment A00002 posted to answer questions submitted by industry and make revisions to solicitation documents. (Amendment A00001 under Regions 2 through 5) |
| June 20, 2017: | Amendment A00003 posted to answer questions submitted by industry and extend the closing date to July 5, 2017. (Amendment A00002 under Regions 2 through 5) |
| June 26, 2017: | Amendment A00004 posted to provide final clarifications and remove clause 52.222-60 Paycheck Transparency. |
| July 5, 2017: | 19 responsive proposals were received. One additional company attempted to deliver their proposal 2 hours after the closing time of 1:00PM EST and it was rejected for not being timely. (Amendment A00003 under Regions 2 through 5) |
| July 24, 2017: | Source Selection began. |
| November 7, 2017: | Requests send (via email) to all Offerors to extend their proposals for an additional 90 days. All Offerors agreed to extend their proposal for 90 days. |
| November 29, 2017: | Source Selection completed. |
| December 14, 2017: | Contracts awarded. |
| December 14, 2017: | Unsuccessful Offerors notified of contract award. |
| December 19, 2017: | Debriefings conducted. |
| December 26, 2017: | Protest filed with GAO. |
| December 27, 2017: | CO notified of Protest. |

**Appx21**

January 10, 2018:      Notice to Intervene received from an awardee.
January 22, 2018:      Agency determined Corrective Action would be completed; GAO protest dismissed as a result.
February 7 – 9, 2018:  Corrective Action Taken: Reevaluation of Technical Proposals
March 5, 2018:         Confirmation of proposal validity requested to the apparent awardees (Offerors not notified they were selected for an award)
April 3, 2018:         Notifications sent to all Offerors of the Results of the Reevaluation, to include 3 additional IDIQ awards
April 11, 2018:        Protest filed with GAO
April 12, 2018:        Stay of Performance issued to all IDIQ awardees
April 23, 2018:        Notice to Intervene received from an IDIQ awardee

## NEXT STEPS

1. Response to GAO due May 10, 2018.
2. GAO response by July 19, 2018.
3. Contract performance suspended until resolution of protest or Stay of Performance lifted by HCA / DSPE.
4. Request dismissal of protest.

**WINNING CONTRACTORS / CONTRACT NUMBERS**

Contract Numbers

| Region 1 | Region 2 | Region 3 | Region 4 | Region 5 | Vendor |
|---|---|---|---|---|---|
| 36C10G18D0006 | 36C10G18D0011 | 36C10G18D0016 | 36C10G18D0021 | 36C10G18D0027 | A Pomerantz & Company, 123 S. Broad St, STE 1260, Philadelphia, PA 19109 |
| 36C10G18D0007 | 36C10G18D0012 | 36C10G18D0017 | 36C10G18D0023 | 36C10G18D0028 | GovSolutions LLC, 108 S Birdneck Road, Virginia Beach, VA 23451 |
| 36C10G18D0008 | 36C10G18D0013 | 36C10G18D0018 | 36C10G18D0022 | 36C10G18D0029 | JohnsonDanforth & Associates, 2200 N. Rodney Parham Rd, Suite 210, Little Rock, AR 72212 |
| 36C10G18D0010 | 36C10G18D0015 | 36C10G18D0020 | 36C10G18D0025 | 36C10G18D0031 | JPL & Associates, 1520 Pelican Point Dr., Suite BA151, Sarasota, FL 34231 |
| 36C10G18D0037 | 36C10G18D0039 | 36C10G18D0040 | 36C10G18D0026 | 36C10G18D0032 | The Russell Group, 1250 Arthur E Adams Drive, Columbus, OH 43221 |
| 36C10G18D0009 | 36C10G18D0014 | 36C10G18D0019 | 36C10G18D0024 | 36C10G18D0030 | Veteran Office Design, 3216 Chaucer Dr., Charlotte, NC 28210 |
| 36C10G18D0059 | 36C10G18D0063 | 36C10G18D0072 | 36C10G18D0066 | 36C10G18D0069 | SDV Office Systems, LLC, 26 Macallan Ln, Asheville NC 28805* |
| 36C10G18D0060 | 36C10G18D0064 | 36C10G18D0073 | 36C10G18D0067 | 36C10G18D0070 | Cuna Supply LLC, 5455 Dashwood Street, Suite 500, Bellaire, TX 77401* |
| 36C10G18D0061 | 36C10G18D0065 | 36C10G18D0074 | 36C10G18D0068 | 36C10G18D0071 | Coronado Distribution Company Inc., 8653 Avendia Costa Norte, San Diego CA 92154* |

*Additional awards as a result of corrective action and re-evaluation (awarded April 2018)

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**

Strategic Acquisition Center- Fredericksburg, VA
VA119-17-R-0260, VA119-17-R-0261, VA119-17-R-0262, VA119-17-R-0263 & VA119-17-R-0264  |  July 5, 2017

RFP response for the Department of Veterans Affairs
by Offeror Azales R1-R5

# Contractor Service Narrative

CONFIDENTIAL All information contained in this quote is considered confidential and may only be released to authorized VHA and VA119-17-R-0260, VA119-17-R-0261, VA119-17-R-0262, VA119-17-R-0263 & VA119-17-R-0264 Project personnel CONFIDENTIAL

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO PROTECTIVE ORDER

**SV1 – Furniture, Design & Installation Support Services**

<u>**Contract Tasks/Requirements**</u>

<u>**Protection of Property**</u>

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

███████████████████████████ .

**Delivery**

████████████████████████████████
██████████████████████████████████
███████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████████

**Receive and Unload**

██████████████████████████████████████
█████████████████████████████████████
██████████████████████████████████████
███████████████████████████████
███████████████████████████████████
████████████████████████████████████
█████████████████████████████████
███████████████████████████████████
██████████████████████

**Assembly and Final Acceptance**

██████████████████████████████████████
█████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████
██████████████████████████████████
███████████████████████████████████
██████████████████████████████████
█████████████████████████████████
████████████████████████████████

**Jobsite Cleanliness**

████████████████████████████████████
█████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████
██████████████████████████████████████
███████████████████████████████████████
██████

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**Warranty Items**

████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███

**SV2 - Installation & Reconfiguration Services**

**Life & Safety Requirements**

████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████.

**Management Plan**

████████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

**Project Development Phase**

████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████████████████
████████████████████████████

███████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

**Product & Layout Phase**

████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**Specification & Procurement Phase**

**Pre-Installation / Project Coordination**

**Installation Management**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER



**Post-Installation Management**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**SV3 - Industrial Design**

**Staffing Plan**

**For the Reception & Check-In Area:**

**Patient-Facing Areas:**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT
TO PROTECTIVE ORDER

████████████████████████████████████████
██████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████

**Exam Rooms:**

█████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████

**Clinical Staff Work & Lounge Areas:**

██████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████
████████

**SV4 - Advanced Project Management Turn Key Services**

**Contract Tasks/Requirements**

█████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████ ██
██████████████████████████████████████████
██████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████

**Design Contract Tasks/Requirements**

██████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████████

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER



THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER



**Project Manager (PM) Requirements**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

███████████████████████████████████████████████
████████████████████████

**Protection of Property**

████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████

██████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
███████████████████

████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
███████

**Delivery**

████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████

**Receive and Unload**

██████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**Assembly and final acceptance**

████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████.

**Jobsite Cleanliness**

██████████████████████████████████
██████████████████████████████
█████████████████████████████████
████████████████████████████████
██████████████████████████████████
███████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

**Warranty Items**

██████████████████████████████████████
███████████████████████████████████
█████████████████████████████████████████
███████████████████████████████

**Kickoff Meeting**

█████████████████████████████████████████
███

**Quality Control Plan**

██████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
████████████████████████████

# Staffing Plan

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO PROTECTIVE ORDER



**Team Organizational Chart**

*Resources based on size of opportunity

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

Strategic Acquisition Center- Fredericksburg, VA
VA119-17-R-0260, VA119-17-R-0261, VA119-17-R-0262, VA119-17-R-0263 & VA119-17-R-0264 | July 5, 2017

RFP response for the Department of Veterans Affairs
by Offeror Azalea R1-R5

## Azalea VA Enterprise Wide Support (All 5 Regions)



CONFIDENTIAL. All information contained in this quote is considered confidential and may only be released to authorized VA and VA119-17-R-0260, VA119-17-R-0261, VA119-17-R-0262, VA119-17-R-0263 & VA119-17-R-0264 Project personnel  CONFIDENTIAL

**Appx38**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

Strategic Acquisition Center- Fredericksburg, VA
VA119-17-R-0260, VA119-17-R-0261, VA119-17-R-0262, VA119-17-R-0263 & VA119-17-R-0264 | July 5, 2017

RFP response for the Department of Veterans Affairs
by Offeror Azalea R1-R5

CONFIDENTIAL  All information contained in this quote is considered confidential and may only be released to authorized VA and VA119-17-R-0260, VA119-17-R-0261, VA119-17-R-0262, VA119-17-R-0263 & VA119-17-R-0264 Project personnel   CONFIDENTIAL

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**Service Narrative:**

████████████████████████████████████████████████

**Sustainability:**

████████████████████████████████████████████████

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**Acknowledgement/Self Certification to meet requirements in the SOW:**

**AIM: Asset and Inventory Management Services:  (b. SV1, SV2, SV4)**

**Protection of Property (b. SV1, SV2, SV4)**

2

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER



**Jobsite Cleanliness (b. SV1, SV2, SV4)**

**Delivery (SV1, SV2, SV4)**

3

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO PROTECTIVE ORDER

**Receive and Unload (SV1, SV2, SV4)**

a.

**Assembly and final acceptance (SV1, SV2)**

4

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**Punchlist Procedures (SV1, SV2, SV4)**

**Warranty Items(SV1, SV2, SV4)**

a.

5

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

VETERANS HEALTH ADMINISTRATION (VHA) FURNITURE IDIQ – REGIONS 1 - 5          Page 98
VA119-17-R-0260; VA119-17-R-0261; VA119-17-R-0262; VA119-17-R-0263; VA119-17-R-0264
*Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.*
*Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).*

**Appx45**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER



Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.
Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).

**Appx46**

**VOLUME I – TECHNICAL CAPABILITY**

JULY 5, 2017                                      R1-Calla; R2-Dahlia; R3-Lavender; R4-Gardenia; R5-Aster



**VETERANS HEALTH ADMINISTRATION (VHA) FURNITURE IDIQ – REGIONS 1 - 5**
VA119-17-R-0260; VA119-17-R-0261; VA119-17-R-0262; VA119-17-R-0263; VA119-17-R-0264

**Page 100**

*Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.*
*Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).*

**Appx47**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**VOLUME I – TECHNICAL CAPABILITY**

JULY 5, 2017                                                  R1-Calla; R2-Dahlia; R3-Lavender; R4-Gardenia; R5-Aster



**VETERANS HEALTH ADMINISTRATION (VHA) FURNITURE IDIQ – REGIONS 1 - 5**    **Page 101**
VA119-17-R-0260; VA119-17-R-0261; VA119-17-R-0262; VA119-17-R-0263; VA119-17-R-0264
*Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.*
*Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).*

**Appx48**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER



**VETERANS HEALTH ADMINISTRATION (VHA) FURNITURE IDIQ – REGIONS 1 - 5**
VA119-17-R-0260; VA119-17-R-0261; VA119-17-R-0262; VA119-17-R-0263; VA119-17-R-0264
*Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.*
*Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).*

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER



**VETERANS HEALTH ADMINISTRATION (VHA) FURNITURE IDIQ – REGIONS 1 - 5**
VA119-17-R-0260; VA119-17-R-0261; VA119-17-R-0262; VA119-17-R-0263; VA119-17-R-0264

**Page 103**

*Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.*
*Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).*

**Appx50**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**VOLUME I – TECHNICAL CAPABILITY**
JULY 5, 2017                                          R1-Calla; R2-Dahlia; R3-Lavender; R4-Gardenia; R5-Aster



**VETERANS HEALTH ADMINISTRATION (VHA) FURNITURE IDIQ – REGIONS 1 - 5**      **Page 104**
VA119-17-R-0260; VA119-17-R-0261; VA119-17-R-0262; VA119-17-R-0263; VA119-17-R-0264
*Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.*
*Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).*

**Appx51**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**VOLUME I – TECHNICAL CAPABILITY**
JULY 5, 2017                                              R1-Calla; R2-Dahlia; R3-Lavender; R4-Gardenia; R5-Aster



*Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.*
*Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).*

**Appx52**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**VOLUME I – TECHNICAL CAPABILITY**

JULY 5, 2017

R1-Calla; R2-Dahlia; R3-Lavender; R4-Gardenia; R5-Aster



**VETERANS HEALTH ADMINISTRATION (VHA) FURNITURE IDIQ – REGIONS 1 - 5**
VA119-17-R-0260; VA119-17-R-0261; VA119-17-R-0262; VA119-17-R-0263; VA119-17-R-0264

**Page 106**

*Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.*
*Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).*

**Appx53**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO PROTECTIVE ORDER



**VETERANS HEALTH ADMINISTRATION (VHA) FURNITURE IDIQ – REGIONS 1 - 5**
VA119-17-R-0260; VA119-17-R-0261; VA119-17-R-0262; VA119-17-R-0263; VA119-17-R-0264

**Page 107**

*Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.*
*Confidential business information exempt from disclosure under FOIA exemption 4, codified at 5 U.S.C. 552(b)(4).*

**ORDER OFFERER:**   Reg 1 Daisy   Reg 2 Lavender

Reg 3 Petunia Reg 4 Petunia

Reg 5 Primrose       (DLPPP)

**Design Services SV1 SV2 SV3 & SV4**

**Appx55**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**OFFERER:**   Reg 1 Daisy   Reg 2 Lavender
Reg 3 Petunia Reg 4 Petunia
Reg 5 Primrose      (DLPPP)

**Design Services SV1 SV2 SV3 & SV4**

**Appx56**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**OFFERER:**    Reg 1 Daisy    Reg 2 Lavender
    Reg 3 Petunia Reg 4 Petunia
    Reg 5 Primrose    (DLPPP)

**Order Fulfilment**

**Appx57**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

OFFERER:    Reg 1 Daisy    Reg 2 Lavender

Reg 3 Petunia Reg 4 Petunia

Reg 5 Primrose        (DLPPP)

**Warehouse, Delivery and Installation Services SV1 SV2 SV3 & SV4**

**Appx58**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**OFFERER:**    Reg 1 Daisy    Reg 2 Lavender
                Reg 3 Petunia Reg 4 Petunia
                Reg 5 Primrose    (DLPPP)

**Warehouse, Delivery and Installation Services SV1 SV2 SV3 & SV4**

**Appx59**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

OFFERER:    Reg 1 Daisy    Reg 2 Lavender
            Reg 3 Petunia Reg 4 Petunia
            Reg 5 Primrose      (DLPPP)

**Work Flow Diagram**



**Appx60**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**OFFERER:** Reg 1 Daisy    Reg 2 Lavender
Reg 3 Petunia Reg 4 Petunia
Reg 5 Primrose    (DLPPP)

**Task Order Management**

**ESTABLISHED RELATIONSHIPS**

**Appx61**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**OFFERER:**     Reg 1 Daisy     Reg 2 Lavender

Reg 3 Petunia Reg 4 Petunia

Reg 5 Primrose        (DLPPP)

**QUALITY STANDARDS**

**Appx62**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

OFFERER:     Reg 1 Daisy     Reg 2 Lavender
Reg 3 Petunia Reg 4 Petunia
Reg 5 Primrose        (DLPPP)

**QUALITY ASSURANCE**

**Appx63**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

OFFERER:    Reg 1 Daisy    Reg 2 Lavender
            Reg 3 Petunia Reg 4 Petunia
            Reg 5 Primrose     (DLPPP)

**Supply Partners**



**Appx64**

<u>**PROJECT NAME**</u>:  **VHA HEALTHCARE FURNITURE STANDARDIZATION**

SOLICITATION NUMBER: VA119-17-R-0260

# <u>Volume I</u>

## Technical Capability

### Attachment 1 SOW


**U.S. Department of Veterans Affairs**
Veterans Health Administration

**OFFEROR:** R1-Sage, R2-Rose,
R3-Daisy, R4-Azalea, R5-Bluebell

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:** **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy, R4-Azalea, R5-Bluebell

**Statement of Work – Page 1**

## SV1    Furniture, Design & Installation Support Services

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME**:  **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 2**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 3**

### Protection of Property

### Delivery, Receiving, Unloading and Staging

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

__PROJECT NAME:__  **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 4**

**Assembly and Final Acceptance**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:**  **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

Statement of Work – Page 5

**Jobsite Cleanliness**

**Warranty Items**

THIS PAGE CONTAINS  REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:**  **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 6**

## SV2   Installation and Reconfiguration Services

### Constract Task/Requirements

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 7**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:** **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 8**

### Protection of Property

### Assembly and Final Acceptance

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 9**

**Contractor Furnished Materials and Equipment**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 10**

**Jobsite Cleanliness**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

<u>**PROJECT NAME**</u>:  **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 11**

## SV3  Industrial Design Services

### Contract Task/Requirements

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:**  **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 12**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 13**

**Project Management Requirements**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 14**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 15**

## SV4  Project Management Turn Key Services with Furniture

**Contract Task/Requirements**

**Design Contract Task/Requirements**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:**  **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 16**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:** **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 17**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:**  **VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

Statement of Work – Page 18

### Project Management Requirements

### Protection of Property

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 19**

**Delivery, Receiving, Unloading and Staging**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

Statement of Work – Page 20

**Assembly and Final Acceptance**

**Jobsite Cleanliness**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 21**

**Warranty Items**

**Kickoff Meeting**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROJECT NAME:  VHA HEALTHCARE FURNITURE STANDARDIZATION**



SOLICITATION NUMBER: VA119-17-R-0260
6/19/17
**OFFEROR:** R1-Sage, R2-Rose
R3-Daisy,  R4-Azalea, R5-Bluebell

**Statement of Work – Page 22**

**Quality Control Plan**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

VA119-17-R-0260 6/26/2017

**VOLUME I – TECHNICAL NARRATIVE FOR THE STATEMENT OF WORK**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

VA119-17-R-0260 6/26/2017

**Appx89**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

VA119-17-R-0260 6/26/2017



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

VA119-17-R-0260 6/26/2017

Tulip Strategic Staffing Model



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

VA119-17-R-0260 6/26/2017



**Appx92**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

VA119-17-R-0260 6/26/2017



## SOW Information for SV1, SV2, SV3 & SV4 – All Regions
### Identifier: Primrose, Orchid, Lily, Tulip & Sunflower

## How we can assist Veteran Affairs (VA)

We are an **SDVOSB**  company that specializes in delivering turn-key furniture solutions to both commercial and government agencies that result in cost-savings while minimizing risks to the client.  W e  currently holds a Packaged Office contract.  We accompany our customers from beginning to end: from the initial consultation, throughout the design process and furniture selection to the final installation.

As an industry partner, we bring a broad knowledge of furniture and experience in a range of project types. Our projects have enabled us to outfit spaces in many markets including education, healthcare, hospitality and corporate offices. This experience gives us the leverage to make reasonable suggestions that fit within any work-style and budget. As new technologies develop within the healthcare industry, we believe that the furniture within these spaces need to match with equally advanced levels of functionality and durability. It is our ultimate goal to ensure that each final furnished space is functional, beautiful, and ultimately fulfills our client's needs.

Our proactive and "white-glove" approach to handling customer concerns from pre- to post-project implementation is well-suited to meet the VA's expectations. We accompany customers from beginning to end: from the initial consultation, throughout the design process and furniture selections to the final installation.  We will work directly with you and project stakeholders to ensure all requirements are addressed and all timelines are met.

In addition to client-driven project management and coordination, we habr excellent relationships with relevant manufacturers and can leverage these relationships to pass significant cost savings from the manufacturer directly to our clients.  The VA will have access to manufacturers who offer options for ergonomic, secure, safe, sustainable and LEED credit- generating products.

## Evidence Based Design
Patient centered design is transforming our industry, with healthcare spaces being designed to support the health and recovery process of patients, and to improve the working lives of caregivers, staff and patient families. Our entire team understands the importance of creating a warm and welcoming environment from the patient room, through the waiting and cafeteria areas all the way to the doctors' offices and nurses'

stations. Navigating through a hospital has the potential to be a safe experience, with areas that support multiple functions and interactions, and with furniture and finishes that invite patients and families to stay for treatment, or for longer periods of recovery. We carry leading healthcare product lines that are outstanding not only for their aesthetic and functional characteristics, but because they cater to the needs of a multifunctional, and clean environment.

**Warm and Welcoming** – Evidence shows that patient recovery times are impacted by the physical environment and the quality of care. Creating a residential or hospitality feel in a patient room can increase the comfort level of a patient (and family), and the small details that allow for personalization, such as a message board, begin to make all the difference. It is also important to provide supportive features- such as sleeper sofas in patient rooms, but these needs extend further into the hospital. Waiting in a lounge area while a loved one is in treatment can afford family members the opportunity to plug in and catch up on work- or take a breather in an environment that is more personal than a cold waiting room.

**Positive Distraction** — while this is not a new concept in healthcare design, new technologies allow for dynamic and evolving art to be part of the healthcare environment. With new applications artwork doesn't have to be just inside frames any longer.  Inspiring and soothing images can be placed on everything from ceiling tiles, glass markerboards, magnetic surfaces, walls, and more – the possibilities are endless.

**Healthy Interior Environments** — another area of increased interest in healthcare design is infection control. Our manufacturing partners provides a number of durable antimicrobial fabrics and furniture finishes which can help to improve hospital infection control. We also carry lines of furniture which comply with low emissions, helping to create a healthier indoor environment.

## Our Services

Within the Healthcare Environment, we believe that collaboration is "not just as a working style, but as one of the fundamentals of innovation". We think and work beyond boundaries to make new discoveries.  Our team is continuously researching and collaborating with our industry partners to stay current on best practices and use it as at the core of our business practice.

We work tirelessly to help make your job easier. Our proactive communication and coordination with key stakeholders ensures that we completely understand each customer's requirements. We then work behind the scenes to find product and design efficient space layouts to present to you and the customer with options.

Our comprehensive services include:

- ✓ Project Management
- ✓ Design and Specification
- ✓ Order Processing and Tracking
- ✓ Delivery and Installation

## Project Management Approach

At the beginning of all projects a designated Project Manager (PM) will be assigned and facilitate as your main Point of Contact (POC).  You can be sure that your PM will assist you in every step of the way, making sure your requirements, suggestions and needs are heard and met.

Your PM will leverage connections with our design team, manufacturing partners, furniture representatives and installation companies to coordinate all aspects of the project making the entire process seamless to you and your clients. Our team structure was created to accommodate high levels of responsiveness, flexibility and quality, giving you a single POC with the resources of an entire team.

Some of our PM services include:

- Working with the VA to find product to match desired styles and function
- Meeting with End Users regularly to discuss requirements.
- Confirming field measurements and existing furniture plans
- Creating project timelines/schedules with key deliverable dates
- Working with our Design Team to create customer-specific furniture solutions
- Monitoring the progress on all orders, shipments and product deliveries to notify customers of any impacts to project schedules
- Coordinating the delivery and installation activities
- Supervising the Installation Team
- Conducting final walk-throughs and follow-up meetings to ensure overall satisfaction

## Our Services and Deliverables

Below is a sample of the services we provide and the final deliverables we give to our customers as a result of our efforts.  With clear documentation, customers are given the tools necessary to make their key-decisions with certainty.

| Service | Deliverable |
|---|---|
| Assist with the selection of furniture fabrics, finishes and options | **Samples of fabrics and finishes** and a **Selection Guide/Checklist** for all selections to be made |
| Generate a design solution for the new furniture layout and verify critical dimensions to ensure that the furniture will fit in the space allotted | **Test-Fit Plans** with verified critical dimensions, data, and outlet locations **Installation Drawing Package** in hardcopy and electronic format that includes critical hold-to dimensions as needed |
| Generate the finalized list/quote for all new furniture for customer review | A **Bill of Materials (BOM)** itemizing the new furniture with costs shown |
| Coordinate the delivery and installation of new furniture | A **Project Schedule** that identifies all key dates of approval, order, delivery and installation of product **Clearance Information** for all installers as needed |
| Verify any restrictions or limitations to delivery of furniture including loading dock access and/or street delivery | **Written documentation** as needed (e.g. permits, Certificate of Insurance, clearances, etc.) |
| Process the purchase orders for the new furniture, check manufacturer's Acknowledgements for accuracy, and monitor production, shipment and delivery dates | Immediately notify the customer and update the **Delivery Schedule** if final ship dates will affect the approved timeline |
| Provide storage for required furniture to include 30 days at no cost | A **Cost Breakdown for Additional Storage** that may exceed the 30 day agreement |
| Installation services to include unpacking, inspection of product for damage, placement cleanup and leveling | Installation per the **Installation Package. Documentation of Deviations** to the original, design if on-site changes are required |
| Coordinate a post installation walk through with Project Manager and Installation Supervisor to identify outstanding issues | A **Punch List Report** that identifies outstanding deficiencies A **Plan for Resolution** to include target dates of completion A written **Confirmation of Completion** |
| Follow-up with End Users to identify any user adjustments or design changes post-install | A set of **As-Built Drawings** that highlights changes to the space after initial installation |
| Provide instructions for the proper care and maintenance of the furniture and warranties for each product offered. | **Warranties** Written **Care and Maintenance Instructions** |

We are headquartered in the state of California and have relationships with resources throughout the country.  We have successfully completed work nationwide for locations in multiple Veterans Integrated Service Networks (VISN).  **Our Principal has personally worked with the Veteran Affairs (VA) since 2003** and has a vast knowledge of the individual departments and their overall functions and goals.

With our proven past performance, turn-key solutions, project management approach, and service and deliverable standards, the representatives for the VA can rest assured that our team can support and deliver on-time, accurate product and services for all locations identified within all regions.

## Quality Control Program and Risk Management

Although each project is different in scope, we implement standard Quality Control methods to identify and mitigate risks that could arise.  Our chart below represents the internal Quality Control methods that will be executed during all VA projects

| Devise | Method/Control Steps |
|---|---|
| Qualified Staff | - Assigns dedication & qualified staff to all VA Projects<br>- Project Managers have at least 10 years of experience<br>- Interior Designer has at least 10 years of experience<br>- Installation Supervisors have at least 5 years of experience |
| Training | - Ensure that all staff is trained on the most current technology and manufacturer offerings within the industry for proper design and installation completion<br>- Installers are trained on specific manufacturer installations procedures |
| Assignment of Personnel | - Each VA Project is assigned a dedicated Project Manager that works with VA representatives during all aspects of a project from kick-off through completion ensuring that data is captured through one source eliminating potential missed information when through multiple POC's<br>- The dedicated Project Manager coordinates efforts of all personnel to include installers, movers, designers, and the back office procurement team ensuring that all requirements on the project are addressed and completed |
| Frequent Meetings | - Daily in-house meetings are held at the beginning and at the end of the day to manage planned schedules, identify risks, and develop plans to mitigate risks<br>- Key personnel are briefed on the most recent status of project schedules, product schedules, and site/building updates |
| Peer Checks | - Schedules, designs, bills of materials, and any other deliverables are peer checked to ensure accuracy and quality |
| Site Checks | - Project Manager will field verify building site to inspect and verify conditions are suitable for delivery/installation; Issues are addressed with VA representatives immediately for resolution |
| Ordering Checks | - A dedicated procurement team that ensures all manufacturer acknowledgements are accurate to the final bill of materials submitted including quantity checks, finish checks, delivery destination checks, and ship date checks to ensure that timelines stay on schedule |

| Installation Supervision | - A qualified Installation Supervisor is assigned to every installation project for overseeing moving crews, installation crews, proper delivery of all products and ensuring that product is delivered and installed per the approved installation drawings<br>- The dedicated Project Manager works directly with the Installation Supervisor daily to ensure all schedules/timelines are met and any issues are addressed immediately<br>- Project Manager and Installation Supervisor ensure that all personnel working the job site adhere to the rules outlined for each particular installation site including the placement of all proper building protection prior to furniture delivery, proper removal of all trash, and proper cleaning of space upon completion |
|---|---|
| Installation Completion Checks & Walkthrough | - A final walkthrough of the space is conducted to ensure that all product was delivered/installed per the approved installation drawings<br>- Products are inspected to ensure proper working condition of all componentry<br>- Product deficiencies are documented during the final walk thru and resolutions and timelines for replacements are discussed with VA representatives immediately following walkthrough |

## Rate Schedule

### SV1 – Furniture, Design and Installation Support Services

- Senior Project Management      $90.00
- Project Management      $70.00
- Senior Interior Design      $79.00
- Interior Design      $70.00
- Installation Services (Regular Hours)      $49.00
- Installation Services (Outside Reg Hours)      $71.00

### SV2 – Installation and Reconfiguration Services

- Senior Project Management      $90.00
- Project Management      $70.00
- Senior Interior Design      $79.00
- Interior Design      $70.00
- Installation Services (Regular Hours)      $49.00
- Installation Services (Outside Reg Hours)      $71.00

**SV3 – Industrial Design Services**

- ▪ Senior Interior Design                    $79.00
- ▪ Interior Design                              $70.00

**SV4 – Project Management Turn Key Services with Furniture**

- ▪ Senior Project Management            $90.00
- ▪ Project Management                      $70.00
- ▪ Senior Interior Design                    $79.00
- ▪ Interior Design                              $70.00

To conclude, we are a full service company that works with companies throughout the country and strive to make sure every project, no matter the size, is handled professionally and completed on time.

# Attachment 8 Sample Project
# Project Management Plan / Timeline
### Identifier: Primrose, Orchid, Lily, Tulip & Sunflower

We have been in business for over 18 years with a talented staff that has over 100 years of experience in product procurement, design, project management, dispute resolution and installation. We hold our own certifications (Certified 8(a) Company, SDVOSB, VOSB, SB and 2 GSA contracts, Navy BPA & Nasa BPA. We have created many valuable partnerships that enable us to reach customers across the region and give them personalized service.

Our goal is to respond to every order quickly and accurately. We will have a team dedicated to handling all projects from design through installation. They will be responsible for reviewing each order and familiarizing themselves with your expectations. We will follow the process listed below to ensure we have covered everything to provide you with our best service and support possible.

Estimated man hours for the project would be:
    28   hours for design
    24   hours for PM
    144 hours for installation (6 guys, 3 days)

This includes, but is not limited to:

- Setup Design meeting with VA Staff to create detailed specifications and drawings to meet project deliverables.
- Create design board for approval from VA staff.
- Verification of specifications to ensure they match the requested specifications.
- Contact onsite representative to review order and identify any special needs and delivery dates.
- Coordinate with vendors to place order and acquire best lead times to meet needs.
- Visit site with PM and installation leads to map out the area to make sure we are using the best routes for delivery and installation.
- Once product arrives at our warehouse, inspect each product for damage and/or accuracy of order. The product will then be separated by area and labeled with area/location name.
- Before delivery, product will be blanket wrapped and loaded on to the truck by area and order of installation.
- Deliver product to site and place in each area per the VA's installation drawings.
- Install product.
- Clean products and remove all trash daily.
- Perform punch walk with onsite client, if applicable.
- Report any damaged product that needs to be replaced, if applicable.

- Order replacement product, if applicable.
- Return to site and install replacement product, if applicableOnce project is awarded, we will create a master schedule to include the following:

Once project is awarded, we will create a master schedule to include the following:

- Meeting schedules with milestones
- Locations for all products to be installed
- Design Milestones
- Lead times
- Note any special instructions – delivery requirements
- Installation timeframes
- Punch item lead times
- Final completion

Here is a tentative schedule once the contract is awarded:

- Verification of all product and finishes within 1 week after contract award.
- If necessary, all modifications will be made to ordering documents and will have the signature of the Designer before being ordered.  This will take 2 days after we receive any change requests.
- Within 1 week of award, Project Manager will perform a field verification at the site and meet with the VA Designer. This is to ensure all product will fit as planned and site conditions allow for accurate placement.
- 1 week before installation, PM and Lead Installer will perform a final site visit and meet with the Designer to make sure everything is ready for installation.
- Manufacturing leads times are unable to be confirmed until an order is placed. We are able to meet the timeline needed.
- Shipping will add 1 week to product.
- Installation will take 3 - 5 work days.
- Cleanup will be performed as we are installing.  A final cleanup will take place after installation is complete.

Our Design Manager will be point of all design meetings and deliverables.  She has over 18 years of design experience and specializes in the Healthcare area.

Our PM for this project has over 17 years of experience in the furniture industry and working on government projects.  The installation will be under the supervision of the PM and will also include 2 leads/supervisors from the installation company.  Our PM will be your point of contact for all communication.

We are driven to ensure our jobs/projects are performed to the highest standards while exceeding customer expectations.  Our goal is 100% client satisfaction.

## SECTION 1 – INTRODUCTION

### 1 Introduction

This Source Selection Evaluation Plan (SSEP) establishes the policy and guidance for assigning responsibilities and implementing procedures for the evaluation and award of the Government contract. The Government intends to issue multiple award regional Indefinite Delivery Indefinite Quantity (IDIQ) Contracts for healthcare furniture and services. The commodities and services required under this solicitation are considered commercial in nature as defined in Federal Acquisition Regulation (FAR), Subpart 2.101-Definitions, therefore, this evaluation process will be conducted in accordance with FAR Part 16.500 - Indefinite-Delivery Contracts.

This SSEP is the written guide for VHA Healthcare Furniture Standardization Services and Products, source selection process. This SSEP describes:

- How proposals will be solicited from industry.
- How proposals will be evaluated, rated, and summarized after receipt.
- Who will evaluate proposals, i.e. the composition of the Source Selection Advisory Council (SSAC), Source Selection Evaluation Board (SSEB), and the functional areas to be represented.
- How the successful Offeror will be selected for award.
- How contract(s) will be negotiated.
- How source selection records and data will be protected.
- The timetable for contract execution.
- Who will act as the Source Selection Authority (SSA)?

### 1.1 Purpose of this SSEP

The principal objective of this document is to set forth the Government's plan for a source selection to establish VHA Healthcare Furniture Standardization Services and Products IDIQ's. This document details the evaluation criteria and procedures to be followed by evaluators and will be the resulting basis for award.

### 1.2 Additional uses of this SSEP

In addition to the principal objective, stated above, this SSEP will be used to:

  a. Provide a format for communicating competitive range and award recommendations to the source selection authority.

  b. Serve as guidance to the SSAC/SSEB.

  c. Provide essential guidance to writers of the Request for Proposals (RFQ) as to what should be emphasized in the solicitation sections E.

6

Case: 19-1337    Document: 48    Page: 107    Filed: 06/18/2019

**1.3 Source Selection Process**

Proposals will be solicited from industry by publicly advertising the Request for Proposal (RFP) on Federal Business Opportunities (FEDBIZOPPS). Source selection will begin upon termination of the RFP response period. The Government will examine the Offerors' submissions for compliance with RFP requirements. The Government reserves the right to establish IDIQs with or without discussions. The Government will examine the technical capability of each Offeror. The SSA will consider Technical capability, Past Performance, and Price to determine the "best value" proposal. The Source Selection Advisory Council (SSAC) will compare the business portions of Vendor's proposal, review past performance information, combine that information with the final technical findings, and recommend a source or sources for the VHA Healthcare Furniture Standardization Services and Products. The Procurement Contracting Officer (PCO) will memorialize the source selection in an Award Decision Memorandum after receipt of the SSA decision.

## SECTION 2 – REQUIREMENTS

**2. Requirement and Program Description**

There are constant requirements to: replace worn out furnishings; reconfigure furniture within VHA facilities; furnish new or remodeled facilities; and purchase furnishings to accommodate improvements to patient care (i.e. advancements in equipment). Vendors will provide healthcare furniture products and services that include design, project management, installation, furniture reconfiguration and/or removal, and warranty services. Principal categories of healthcare furnishings are: case goods and modular desking, filing and storage systems, modular cabinetry, modular systems, seating, tables/carts, and furniture accessories.

**2.1 Description of the Requirement**

Currently, VHA field activities purchase furniture and related services through a variety of methods to include Government purchase cards, Federal Supply Schedule contracts, and open market acquisitions. Each VHA procurement is unique, yielding inconsistent levels of product quality, varying contract terms and conditions, and unpredictable prices. Additionally, each procurement requires all steps in the acquisition process— with little to no opportunities to gain efficiencies and strategic pricing at the enterprise level.

The principal goals of this acquisition are: 1) streamlining acquisition processes by providing VHA field activities an established set of vendors already vetted to provide healthcare furniture; 2) reducing furniture costs by harnessing the consolidated purchasing power of the entire VHA, regionally and nationwide; and 3) gaining visibility on types of furniture being acquired across VHA in terms of price, quality and application.

FOR OFFICIAL USE ONLY
CONTAINS SOURCE SELECTION INFORMATION-FAR 3-104

**Appx104**

The Government intends to issue multiple regional IDIQs for healthcare services and furniture. This acquisition plan covers **Region 1 that includes: Maine, New Hampshire, New York, Pennsylvania, West Virginia, Virginia, Washington, DC, North Carolina, New Jersey, Rhode Island, Vermont, Delaware, Connecticut, Maryland, and Massachusetts** within the continental United States (CONUS), aligned to VHA's Regions. Only current Service-Disabled Veteran-Owned Small Businesses (SDVOSB) registered in VetBiz.gov under NAICS Code 337215 will be solicited for this acquisition on the open market. SAC will solicit these services and products on the open market to allow for products to be added or removed according to the contract terms and conditions which do not restrict the Government to Federal Supply Schedule (FSS) services and products and allows for expanded competition.

### 2.2 Integration Program and Acquisition Strategy

Consistent with commercial item procurement "best practices," market research was conducted and the results were applied toward the development of a synopsis/solicitation which will be based on performance-based requirements in promoting industry participation, innovation, and price competition.

## SECTION 3- SOURCE SELECTION ORGANIZATION

### 3. VHA Healthcare Furniture Standardization Services and Products Source Selection Organization (SSO)

The VHA Healthcare Furniture Standardization Services and Products Integration Source Selection decision will be made by the SSA. The SSA's selection decision will be based on the results of the proposal evaluation conducted by technical and business experts on the SSEB and the SSAC. Staff selected for the SSAC and SSEB will be knowledgeable of selection practices, possess an in-depth understanding of the contracting strategy, business requirements of the work, and be prepared to act as an integral member of the evaluation process throughout its duration. Prior to evaluation of proposals, mandatory training will be provided for all members of the SSAC and SSEB in the following areas:

Best Value Source Selection Analysis
Price Analysis Techniques
Mechanics of Proposal Evaluations
Conflicts of Interest
Past Performance in Source Selection

FOR OFFICIAL USE ONLY
CONTAINS SOURCE SELECTION INFORMATION-FAR 3-104

<u>Adverse Past Performance.</u> Performance does not meet some or most contractual requirements and recovery is not likely to occur in a timely manner. The contractual performance of the element or sub-element being assessed reflects a serious problem for which the Contractor has not yet identified corrective actions. The Contractor's proposed actions appear only marginally effective or were not fully implemented which appear to have been ineffective.

The award(s) will be made to the most responsive and responsible Offeror whose proposal(s) (conforming to the solicitation) represents the best value to the Government considering the areas of Technical Capability, Program Management, Past Performance, and Price.

## SECTION 9 – EVALUATION PROCEDURES

### 9.1 General Considerations

This SSEP covers the selection of the VHA Healthcare Furniture Standardization Services and Products. The procedures set forth in this section will be used for source selection.

The basis for this source selection and award of the subject IDIQs must be limited to criteria set forth in the solicitation. During the Initial Evaluation, proposals will be considered on the basis of their individual merit, compliance with the criteria set forth in the solicitation, and the quality and completeness of the Vendor's proposal relative to the evaluation factors. VHA Healthcare Furniture Standardization Services and Products will conduct the evaluations using the source selection process described in Figure 9-1.

FOR OFFICIAL USE ONLY
CONTAINS SOURCE SELECTION INFORMATION-FAR 3-104

Appx106

Case: 19-1337    Document: 48    Page: 111    Filed: 06/18/2019

Figure 9-1. Evaluation Process



## 9.1.1 Source Selection Process

The Government will examine the technical capability of each Offeror. The SSA will consider non-price factors: technical capability, program management, and past performance, and price to determine the "Best-Value" proposal. The SSAC will compare Vendor business proposals, conduct price proposal evaluations, gather past performance information, and combine that information with the initial technical findings. The SSAC will consider all non-price factors and price to determine the "Best-Value" proposal(s). If, at this point, there are a clearly superior proposal(s), the SSAC will

24

recommend one or more sources for the VHA Healthcare Furniture Standardization Services and Products. The SSA shall then make the final award determination. Only the most highly rated proposals will be included in the competitive range. The SSA will make the final competitive range determination.

The SSA will establish the competitive range of Offerors and the PCO will notify those Offerors of their deficiencies, significant weaknesses, and adverse past performance, if any. Offerors will be given an opportunity to respond to discussion questions and revise their offers by submitting a Final Proposal revision (FPR). The SSEB reviews the technical portion of the Offeror's FPR; and issues a Final Technical Evaluation report (FTER). The SSA will again consider all non-price factors and price to determine the "Best-Value" proposal. The SSAC will compare the business portion of the Offeror's FPRs and combine that information with the final technical findings in order to provide final recommendations to the SSA. The SSA will make the final award determination.

### 9.2 Proposal Requirements for Technical Evaluation Factors

### 9.2.1. Required Proposal Format

Offerors shall be required to provide technical and business information, as well as past performance references. Specific instructions to Offerors shall be delineated in the RFQ Section E as attached to this SSEP. Offerors shall prepare proposals IAW 52.215-1 Instructions to Offerors-Competitive Acquisition and the additional instructions provided in RFP and Section E  Proposals shall consist of the Offeror's written and electronic submission, and required product literature.

### 9.3. Evaluation Process

The Government will evaluate each Vendor's proposal against the factors for award set forth in the RFP and use the results in the source selection decision.  The source selection organization will determine the overall merits of each proposal in terms of its potential to best satisfy the needs of the Government.  The Government will determine whether each Offeror is both compliant and technically acceptable.

Specific procedures in this source selection process involve the use of evaluation factors, which form the basis by which each Vendor's proposal is to be evaluated.  The Government will evaluate each Vendor's proposal based on these areas and factors by assigning an assessment rating.  The proposal rating depicts how well the Vendor's proposal meets the evaluation standards and the solicitation requirements.  The results will be used in the Government source selection decision.  The technical evaluation factors will be rated using a five-level, adjectival rating system that depicts how well each Vendor's proposal meets or exceeds the evaluation standards and solicitation requirements.  Satisfying a standard does not equate to a strength or weakness; it merely yields an acceptable evaluation.

An integrated assessment of the strengths and weaknesses, of each Vendor's proposal, together with the past performance and proposed price, will be used to determine which

25

proposal offers the best overall value to the Government. A detailed narrative will provide supporting justification for the decision.

### 9.4 Technical Evaluation Areas and Factors

The Government will evaluate each Vendor's proposal against the factors for award set forth in the RFQ and use the results in the source selection decision. The source selection organization will determine the overall merits of each proposal in terms of its potential to best satisfy the needs of the Government. The Government will determine whether each Offeror is both compliant and technically acceptable.

Specific procedures in this source selection process involve the use of evaluation factors, which form the basis by which each Vendor's proposal is to be evaluated. The Government will evaluate each Vendor's proposal based on these areas and factors by assigning an assessment rating. The proposal rating depicts how well the Vendor's proposal meets the evaluation standards and the solicitation requirements. The results will be used in the Government source selection decision. The technical evaluation factors will be rated using a five-level, adjectival rating system that depicts how well each Vendor's proposal meets or exceeds the evaluation standards and solicitation requirements. Satisfying a standard does not equate to a strength or weakness; it merely yields an acceptable evaluation.

An integrated assessment of the strengths and weaknesses, of each Vendor's proposal, together with the past performance and proposed price, will be used to determine which proposal offers the best overall value to the Government. A detailed narrative will provide supporting justification for the decision.

The Government intends to establish multiple IDIQs based on initial proposals. Each Offeror is encouraged to provide their best terms from a price and technical standpoint in their initial submission because of the Government, after evaluation of proposals, reserves the right to establish IDIQs without discussion.

### 9.5 Initial Evaluation Findings and Reports

Initial evaluations of Vendors' proposals will be accomplished based on the criteria established in the solicitation. The SSEB will conduct its evaluations by measuring each proposal against the evaluation factors set forth herein and cited in the RFQ. The SSEB shall not compare proposals against each other during the initial evaluation.

The chairperson of the SSEB shall assign evaluation areas to the individual board members based on their expertise. The members will brief their assigned evaluation areas and mediate a discussion between the SSEB chair and individual evaluation area experts to reach a consensus opinion. The SSEB Chair shall capture the consensus opinions in an Initial SSEB Report and shall attach the consensus evaluations for each Offeror along with any minority dissenting opinions, should they exist. Each consensus evaluation shall include CRs and DRs to be used in the event discussions (negotiations)

FOR OFFICIAL USE ONLY
CONTAINS SOURCE SELECTION INFORMATION-FAR 3-104

VHA Furniture and Associated Services
Region 1 Northeastern States



**X. Evaluation Results: Supporting documentation for the technical subfactors are included in the Technical Evaluation Consensus form and associated attachments (Attachment 8 and Attachment 15) for each Offeror listed below.** *Final evaluation ratings listed below contain the summary of facts from the corrective action re-evaluations, held February 7-9, 2018. Evaluation consensus forms are included in the official file as detailed back-up to this summary document.*

▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇. was given an overall rating of **Good** for Technical/Management based on receiving three (3) outstanding ratings and one (1) good ratings for the technical section. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**Technical:**

**Attachment 3 (Thirteen Standard Items):** Products represented in product literature review met the minimum technical requirements with the exception of 3 items. The Technical Evaluation Team (TET) found three (3) of the 13 standardized items in the Offeror's proposal did not meet the MTRs (minimum technical requirements) (SP2, CM3 and SL3). The consensus score for this section is 10 out of 13 products met the MTRs (minimum technical requirements). **(GOOD).** Note: For detailed information on the items listed below refer to Attachment 2 General Specifications and Ancillary Configurations.

SP2: Specs did not meet the VA requirements. General specs were omitted, no information regarding locks or warranty, lack of supplying breadth of product line.

CM3: Only able to validate (f, g, h, j, and k). The product literature was missing critical information such as sizes and technical capabilities.

SL3: No mention of Sleeper Sofa Integrated Guest Center requirement (i, j & l). Specs provided meet SL2, not SL3.

**MTR Self-Certification (Attachment 2):** The Offeror self-certification of their ability to provide the required products and optional feature(s) resulted in a score of 1,024 for the base requirement and 94 the optional requirements. The consensus score for this section is 1,118 **(OUTSTANDING).**

**Appx110**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

VHA Furniture and Associated Services
Region 1 Northeastern States

**Service Technical Evaluation (Requirements of SOW Attachment 15):**  The Offeror's response to the service technical requirements addressed the majority of the questions under SV1- SV4.  The Offeror's proposal did have some weaknesses (See narrative below).  The consensus score for this section is 62 out of a possible 66 points **(OUTSTANDING)**.

SV1 Furniture, Design and Installation Support:  The Offeror met five (5) out of seven (7) of the requirements listed on Attachment 15.  The Offeror did not describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility required by question 3. The Offeror did not provide a description of materials used and how they are applied to properly protect VA property during an installation required by question 5. The TET gave the Offeror a score of 10 out of a possible 14 points.

SV2 Installation and Reconfiguration Services:  The Offeror met ten (10) of the ten (10) requirements listed on Attachment 15. The TET gave the Offeror a score of 20 out of a possible 20 points.

SV3 Industrial Design Service:  The Offeror met seven (7) of the seven (7) requirements listed on Attachment 15. The TET gave the Offeror a score of 14 out of a possible 14 points.

SV4 Advanced Project Management Turn Key Services with Furniture:  The Offeror met nine (9) of the nine (9) requirements listed on Attachment 15. The TET gave the Offeror a score of 18 out of 18 points.

**Sample Project Attachment 8 Sample Project Technical Evaluation:**  The technical portion of the sample project met all of the required elements as spelled out in Attachment 4 Project Sample Requirements.  There are no weaknesses or deficiencies noted by the Technical Evaluation Team (TET) for either section of the sample project. The consensus score for this section is 54 out of 56 **(OUTSTANDING)**.

General Requirements:  The Offeror met nine (9) of the nine (9) requirements under the General Requirements section of Attachment 8.  The Offeror received a score 18 out of a possible 18 points.

Space Requirements:  The Offeror met 18 out of the 19 requirements under the Space Requirements section of Attachment 8. The Offeror did not provide the shelving required by question 25.  The Offeror received a score 36 out of a possible 38 points.



**Appx111**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**Vendor: _R1 ▮▮▮ - ALL REGIONS_____    RFP: VA119-17-R-_ALL____**

| SV1 – Furniture, Design and Installation Support | Score |
|---|---|
| 1.   Did the Contractor provide a staffing plan? | 2 |
| 2.   Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 3.   Did the Contractor describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility? | 0 |
| 4.   Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 5.   Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 0 |
| 6.   Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 7.   Did the Contractor describe the process used regarding a warranty repair? | 2 |
| SV2 – Installation and Reconfiguration Services | |
| 8.   Did the Contractor provide a staffing plan? | 2 |
| 9.   Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 10. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 11. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 12. Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 13. Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 14. Did the Contractor describe the process used regarding a warranty repair? | 2 |
| 15. Did the contractor describe the technical capability of staff producing AutoCAD / and or PDF drawings of the as-built furniture installation? | 2 |
| 16. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 17. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| SV3 - Industrial Design Service | |
| 18. Did the Contractor provide a staffing plan? | 2 |

| | |
|---|---|
| 19. Did the Contractor describe the qualifications and experience of the staff that will provide the requested services? | 2 |
| 20. Did the Contractor describe the relevant experience of the staff that will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 21. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 22. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |
| 23.  Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 24. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| *SV4 - Advanced Project Management Turn Key Services with Furniture* | |
| 25. Did the Contractor provide a staffing plan? | 2 |
| 26. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 27. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 28. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 29. Did the Contractor experience do the people who will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 30. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 31. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |
| 32. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 33. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |

**TOTAL SCORE**        **62**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**Vendor: _R1 ███   ALL REGIONS_____   RFP:  VA119-17-R-_ALL____**

| SV1 – Furniture, Design and Installation Support | Score |
|---|---|
| 1.   Did the Contractor provide a staffing plan? | 2 |
| 2.   Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 3.   Did the Contractor describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility? | 2 |
| 4.   Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 5.   Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 6.   Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 7.   Did the Contractor describe the process used regarding a warranty repair? | 2 |
| SV2 – Installation and Reconfiguration Services | |
| 8.   Did the Contractor provide a staffing plan? | 2 |
| 9.   Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 10. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 11. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 12. Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 13. Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 14. Did the Contractor describe the process used regarding a warranty repair? | 2 |
| 15. Did the contractor describe the technical capability of staff producing AutoCAD / and or PDF drawings of the as-built furniture installation? | 2 |
| 16. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 17. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| SV3 - Industrial Design Service | |
| 18. Did the Contractor provide a staffing plan? | 2 |
| 19. Did the Contractor describe the qualifications and experience of the staff that will provide the requested services? | 2 |
| 20. Did the Contractor describe the relevant experience of the staff that will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 21. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 22. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |

| | |
|---|---|
| 23. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 24. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| *SV4 - Advanced Project Management Turn Key Services with Furniture* | |
| | 2 |
| 25. Did the Contractor provide a staffing plan? | |
| 26. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 27. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 28. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 29. Did the Contractor experience do the people who will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 30. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 31. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |
| 32. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 33. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |

**TOTAL SCORE**     **66**

THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**Vendor:  _R1 ▮▮▮▮   ALL REGIONS_____   RFP:  VA119-17-R-_ALL____**

| SV1 – Furniture, Design and Installation Support | Score |
|---|---|
| 1.  Did the Contractor provide a staffing plan? | 0 |
| 2.  Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 3.  Did the Contractor describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility? | 0 |
| 4.  Did the Contractor describe the measures in place to protect from damage and against loss? | 0 |
| 5.  Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 0 |
| 6.  Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 7.  Did the Contractor describe the process used regarding a warranty repair? | 0 |
| SV2 – Installation and Reconfiguration Services | |
| 8.  Did the Contractor provide a staffing plan? | 0 |
| 9.  Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 10. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 0 |
| 11. Did the Contractor describe the measures in place to protect from damage and against loss? | 0 |
| 12. Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 0 |
| 13. Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 14. Did the Contractor describe the process used regarding a warranty repair? | 0 |

| | |
|---|---|
| 15. Did the contractor describe the technical capability of staff producing AutoCAD / and or PDF drawings of the as-built furniture installation? | 0 |
| 16. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 0 |
| 17. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 0 |
| *SV3 - Industrial Design Service* | |
| 18. Did the Contractor provide a staffing plan? | 0 |
| 19. Did the Contractor describe the qualifications and experience of the staff that will provide the requested services? | 2 |
| 20. Did the Contractor describe the relevant experience of the staff that will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 0 |
| 21. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 0 |
| 22. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 0 |
| 23. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 0 |
| 24. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 0 |
| *SV4 - Advanced Project Management Turn Key Services with Furniture* | |
| 25. Did the Contractor provide a staffing plan? | 0 |

**Appx117**

| | |
|---|---|
| 26. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 27. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 0 |
| 28. Did the Contractor describe the measures in place to protect from damage and against loss? | 0 |
| 29. Did the Contractor provide the experience of the people who will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 0 |
| 30. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 0 |
| 31. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 0 |
| 32. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 0 |
| 33. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 0 |

**TOTAL SCORE**      **12**

| TECHNICAL EVALUATION FORM – FIRM FIXED PRICE - CONSENSUS | |
|---|---|
| *Healthcare Furniture* | Date of Proposal: 5 JUL 2017 |
| Name of Offeror<br>**R1 Primrose**<br>**R2 Orchid**<br>**R3 Lily**<br>**R4 Tulip**<br>**R5 Sunflower** | **SAC Number RFQ #:**<br>**VA119-17-R-0260**<br>**VA119-17-R-0261**<br>**VA119-17-R-0262**<br>**VA119-17-R-0263**<br>**VA119-17-R-0264** |
| Technical Evaluation Criteria: FACTOR 1: TECHNICAL CAPABILITY | Source Document:  Attachment 2 Detail Item Review, Attachment 3 Minimum Technical Requirements, Attachment 14, and Attachment 8. |
| 1)  The Government will evaluate the contractor's technical capabilities based on the product literature provided only for the list of the categories, identified in Attachment 3, Titled Detailed Item Review MTRs.  The items listed in Attachment 3, Titled Detail Item Review MTRs correspond to specifications listed in the Attachment 2, Titled Minimum Technical Requirements. Evaluation will be based on the contractor's ability to offer these items. Each category (i.e. PP1, SP2, CGS1, etc.) represents one (1) point.<br><br>2)  The Government will evaluate the contractor's self-certification (Attachment 2) to meet MTRs identified in Attachment 2.  The evaluation will be based on the contractor's ability to meet at least 90% of base requirements. Joint Ventures with other commercial vendors are encouraged and accepted).  Each base criteria MTR represents one (1) point, each optional criteria represents one quarter (0.25) point to increase contractor beyond acceptable. Contractors are instructed to utilize the drop down selections in the excel sheet to automatically calculate point totals.  Contractors may submit a pdf copy of the excel sheet to maintain copies of submission.<br><br>3)  The Government will evaluate the contractor's narrative addressing each of the items requested in Attachment 14. Service requirements as defined in the SOW. | (Highlight One)<br><br>**Outstanding:** Quotation meets requirements and indicates an exceptional approach and understanding of the requirements.  Strengths far outweigh any weaknesses. Risk of unsuccessful performance is very low.<br><br>**Good:** Quotation meets requirements and indicates a thorough approach and understanding of the requirements.  Quotation contains strengths which outweigh any weaknesses.  Risk of unsuccessful performance is low.<br><br>**Acceptable:** Quotation meets requirements and indicates an adequate approach and understanding of the requirements.  Strengths and weaknesses are offsetting or will have little or no impact on contract performance.  Risk of unsuccessful performance is not worse than moderate.<br><br>**Marginal:** Quotation does not clearly meet requirements and has not demonstrated an adequate approach and understanding of the |

| 4) The Government will evaluate the contractor's technical capabilities based on the contractor's response to the Project Sample addressing each of the requirements in Attachment 8.<br><br>An "Unacceptable Rating" for any Technical section will result in an overall "Unacceptable" rating for the Technical Factor. | requirements. The quotation has one or more weaknesses which are not offset by strengths. Risk of unsuccessful performance is high.<br><br>**Unacceptable:** Quotation does not meet requirements and contains one or more deficiencies. Quotation is "unawardable". |
|---|---|

| **Provide Rationale for the Rating:** The vendor is assigned an overall rating of **UNACCEPTABLE** based receiving two outstanding, one acceptable and one unacceptable rating for the technical factors. The overall rating is supported through the information listed below and the noted conflicts with the self-certification. |
|---|
| • Observed Deficiency/Omissions:<br>Significantly lacking details in service narrative. |
| • Strengths:<br>Nice range of healthcare products. |
| • Weaknesses:<br>Service narrative lacked detail, vague info, not enough info on how they would deal with warranty claims. |

| Description of Evaluation Criteria | Reference/Section |
|---|---|
| **(1): Did the contractor provide one cross-referenced copy of product literatures for all of the items listed in Attachment 3 as follows:** | **YES/NO** |
| PP1    Patient Procedure Area Modular Casegoods | YES |
| SP2    File, Specialty, High Density | NO |
| SH2    Shelving, Wire, Medical Supply | YES |
| CGS1    Caregiver Team Stations (also Nurse Stations): | YES |
| CT1    Conference Table, HPL | YES |
| HAW2    Height Adjustable Work Table, Pneumatic, HPL | NO |
| CM3    Cart, Medical Supplies Storage and Procedure | YES |
| TS1    24/7 Ergonomic Heavy Duty Task With Bariatric version in similar style | YES |

| Description of Evaluation Criteria | Reference/Section |
|---|---|
| **(3):  Did the contractor provide a narrative addressing each of the items requested in Attachment 15. Service requirements as defined in the SOW.** | **YES**/NO |
| Total Score:  **12** | |

**Remarks:**

No staffing plan; Very generic on staffing, experience; No inventory, cataloging or protection of VA property information; No info on protection from damage and against loss; No info on how they will execute warranty; No info on AUTOCAD or PDF. No info on experience of federal work or healthcare except one sentence about principal;No info on staffing having knowledge of life safety, infection control and HIPPA.

Vendor receives **UNACCEPTABLE** based on the point scale below.

| TET Points | Technical Rating Scale – Service Narrative (2 points per question) Total 66 points |
|---|---|
| | Rating |
| 60-66 pts | Outstanding |
| 53-59 pts | Good |
| 47-52 pts | Acceptable |
| 40-46 pts | Marginal |
| 39 pts and below | Unacceptable |

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

VA119-17-R-0261

# SECTION E - SOLICITATION PROVISIONS

## E.1 52.203-98 PROHIBITION ON CONTRACTING WITH ENTITIES THAT REQUIRE CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS— REPRESENTATION (DEVIATION) (FEB 2015)

 (a) In accordance with section 743 of Division E, Title VII, of the Consolidated and Further Continuing Resolution Appropriations Act, 2015 (Pub. L. 113-235), Government agencies are not permitted to use funds appropriated (or otherwise made available) under that or any other Act for contracts with an entity that requires employees or subcontractors of such entity seeking to report fraud, waste, or abuse to sign internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or contactors from lawfully reporting such waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information.

 (b) The prohibition in paragraph (a) of this provision does not contravene requirements applicable to Standard Form 312, Form 4414, or any other form issued by a Federal department or agency governing the nondisclosure of classified information.

 (c) *Representation.* By submission of its offer, the Offeror represents that it does not require employees or subcontractors of such entity seeking to report fraud, waste, or abuse to sign internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or subcontractors from lawfully reporting such waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information.
(End of Provision)

## E.2 52.209-5 REPRESENTATION BY CORPORATIONS REGARDING AN UNPAID TAX LIABILITY OR A FELONY CONVICTION UNDER ANY FEDERAL LAW (DEVIATION)(MAR 2012)

 (a) In accordance with Division H, sections 8124 and 8125 of P.L. 112-74 and sections 738 and 739 of P.L. 112-55 none of the funds made available by either Act may be used to enter into a contract with any corporation that—

  (1) Has an unpaid federal tax liability, unless the agency has considered suspension or debarment of the corporation and the Suspension and Debarment Official has made a determination that this action is not necessary to protect the interests of the Government.

  (2) Has a felony criminal violation under any Federal or State law within the preceding 24 months, unless the agency has considered suspension or debarment of the corporation and Suspension and Debarment Official has made a determination that this action is not necessary to protect the interests of the Government.

 (b) The Offeror represents that—

  (1) The offeror does [  ] does not [  ] have any unpaid Federal tax liability that has been assessed and that is  not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability.

**Page 25 of 59**

VA119-17-R-0261

    (2) The offeror, its officers or agents acting on its behalf have [ ] have not [ ] been convicted of a felony criminal violation under a Federal or State law within the preceding 24 months.

(End of Provision)

### E.3 52.209-7 INFORMATION REGARDING RESPONSIBILITY MATTERS (JUL 2013)

  (a) *Definitions.* As used in this provision—

  "Administrative proceeding" means a non-judicial process that is adjudicatory in nature in order to make a determination of fault or liability (e.g., Securities and Exchange Commission Administrative Proceedings, Civilian Board of Contract Appeals Proceedings, and Armed Services Board of Contract Appeals Proceedings). This includes administrative proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include agency actions such as contract audits, site visits, corrective plans, or inspection of deliverables.

  "Federal contracts and grants with total value greater than $10,000,000" means—

    (1) The total value of all current, active contracts and grants, including all priced options; and

    (2) The total value of all current, active orders including all priced options under indefinite-delivery, indefinite-quantity, 8(a), or requirements contracts (including task and delivery and multiple-award Schedules).

  "Principal" means an officer, director, owner, partner, or a person having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a division or business segment; and similar positions).

  (b) The offeror [ ] has [ ] does not have current active Federal contracts and grants with total value greater than $10,000,000.

  (c) If the offeror checked "has" in paragraph (b) of this provision, the offeror represents, by submission of this offer, that the information it has entered in the Federal Awardee Performance and Integrity Information System (FAPIIS) is current, accurate, and complete as of the date of submission of this offer with regard to the following information:

    (1) Whether the offeror, and/or any of its principals, has or has not, within the last five years, in connection with the award to or performance by the offeror of a Federal contract or grant, been the subject of a proceeding, at the Federal or State level that resulted in any of the following dispositions:

      (i) In a criminal proceeding, a conviction.

      (ii) In a civil proceeding, a finding of fault and liability that results in the payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more.

      (iii) In an administrative proceeding, a finding of fault and liability that results in—

VA119-17-R-0261

(A) The payment of a monetary fine or penalty of $5,000 or more; or

(B) The payment of a reimbursement, restitution, or damages in excess of $100,000.

(iv) In a criminal, civil, or administrative proceeding, a disposition of the matter by consent or compromise with an acknowledgment of fault by the Contractor if the proceeding could have led to any of the outcomes specified in paragraphs (c)(1)(i), (c)(1)(ii), or (c)(1)(iii) of this provision.

(2) If the offeror has been involved in the last five years in any of the occurrences listed in (c)(1) of this provision, whether the offeror has provided the requested information with regard to each occurrence.

(d) The offeror shall post the information in paragraphs (c)(1)(i) through (c)(1)(iv) of this provision in FAPIIS as required through maintaining an active registration in the System for Award Management database via https://www.acquisition.gov (see 52.204-7).

(End of Provision)

## ADDENDUM to FAR 52.212-1 INSTRUCTIONS TO OFFERORS—COMMERCIAL ITEMS

Provisions that are incorporated by reference (by Citation Number, Title, and Date), have the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

**NOTE**:  Offerors submitting quotes under the remaining Regions through solicitations Region 1, VA119-17-R-0260; Region 3, VA119-17-R-0262; Region 4, VA119-17-R-0263; and Region 5, VA119-17-R-0264 need only submit one proposal provided all terms and conditions of your offer remains consistent across all Regions.  The proposal MUST include a signed copy of each solicitation's SF1449 to be considered under the specific Region.  The proposal must also indicate and verify the applicable Regions (solicitations) the proposal supports.

The following provisions are incorporated into 52.212-1 as an addendum to this solicitation:

1. This acquisition is for SDVOSB vendors under NAICS code 337215 Healthcare Furniture.

2. Your point of contact for all matters concerning this request for proposal is Robert Wilson who can be reached at robert.wilson11@va.gov and Vicki Whiteman, who can be reached at vicki.whiteman@va.gov.

3. The duration for this Indefinite Delivery Indefinite Quantity (IDIQ) is anticipated to be 60 month base period with one (1) 60 month option period.

4. Type of contract:  The Government will establish Firm-Fixed Price Multiple-Award Indefinite Delivery Indefinite Quantity (IDIQ) utilizing FAR 16.500 Indefinite Delivery Contracts.  All Orders placed against these IDIQs shall be on a Firm Fixed Price basis issued by regional VISN contracting offices utilizing 16.505 (b)(1) Fair Opportunity for each order exceeding $3,500.00.

5. This requirement is set-aside for Service Disabled Veteran Owned Small Business (SDVOSB) concerns, whose proposal meets the solicitation requirements. If an adequate number of proposals from SDVOSBs are received and evaluated as technically acceptable

**Page 27 of 59**

VA119-17-R-0261

with reasonable costs, the Government intends to issue three to five SDVOSB indefinite delivery indefinite quantity (IDIQ) contract.

    a. If the Government does not obtain at least two technically acceptable SDVOSB offerors, the solicitation will be reopened. The Government reserves the right to issue any amount (more than three to five) to satisfy the Government's need for adequate regional coverage.

6. Order Limitations: All orders placed under the IDIQ must have minimum value $3,500 and a maximum value of $10M.

7. **Submission of Questions and Quotation:** Questions:  All questions must be received by **05/19/2017 at 4:30 PM EST**.  All questions submitted for this solicitation must be electronically sent to the following email address: VASACDirectorateC@va.gov.  Please title email with Solicitation Number "Questions/Proposal Submission". Questions received after the stated date and time, may be addressed at the discretion of the Contracting Officer.

8. **Proposal Submission**:  The contractors shall submit the following: **five (5) Hard Copies of the proposal and (1) complete electronic copy portable document format** (.pdf), Microsoft Word (.docx), or Microsoft Excel (.xls) format of all five (5) volumes; any other method **will not** be considered. All proprietary information shall be clearly marked. The use of hyperlinks is prohibited. Late proposals will not be accepted for evaluation.  The contractor is responsible for confirming the Government's receipt of the contractor's proposal.

9. The contractor's proposal shall consist of five separate .pdf and .xls electronic volumes. The volumes to be submitted are:

    Volume I –     Technical Capability
    Volume II –    Past Performance
    Volume III -    Price (Commercial Catalog PDF)
    Volume IV –   Solicitation, Offer and Award Documents (SF 1449), Active System for Award Management (SAM) and Vendor Information Pages (VIP) Registration

10. Contractor's responses shall be submitted in accordance with the following instructions:

    a. The submission shall be clearly indexed and logically assembled.  Each volume shall be clearly identified and shall begin at the top of a page.  All pages of each volume shall be appropriately numbered and include date and solicitation number in the header and/or footer. Page limitations are applicable to this procurement.

    b. Contractors are advised to **not** include any company identifying information, such as company name, sub-contractor(s), logos, etc. in the proposals.  If you intend on quoting for this acquisition, please contact the Contracting Specialist, Mr. Robert Wilson at VASACDirectorateC@va.gov for a company identifier (e.g. Proposals R1A, R1B, R1C, etc.).  Once assigned a company identifier, please ensure you use this identifier for all volumes and pages of your proposal.  Any reference to your company or any sub-contractor(s) shall be redacted for anonymity.

    Mailing Address:  Mr. Robert Wilson
                       Strategic Acquisition Center - Fredericksburg
                       U.S. Department of Veterans Affairs

VA119-17-R-0261

10300 Spotsylvania Ave., Suite 400
Fredericksburg, VA 22408

The table below indicates the titles and maximum page limit requirements (as applicable) for each volume of the contractor's proposal and all files will be submitted as either a file or (.PDF) file as indicated in the table:

| Volume Number | Factor | File Name (for electronic copy) | Page Limitations* | Number of copies |
|---|---|---|---|---|
| Volume I | Technical Capability | (Identifier name)Tech.pdf | Product Literature Forty (40) pages | 1 electronic copy 5 Hard copies |
| | | (Identifier name) MTRs.pdf Attachment 3 | Forty three (43) pages | 1 electronic copy 5 Hard copies |
| | | (identifier name) Sample Project MTRs.xlsx Attachment 5 \n\n *Note the .xlsx file will only be used to validate correct formulas to calculate total points for MTRs (base requirements and options) met. | Forty three (43) pages | 1 electronic copy \n\n 5 Hard copies |
| | | (identifier name) Attachment 1 SOW | Twenty Five (25) pages | 1 electronic copy 5 Hard copies |
| | | (Identifier name) Attachment 8 Sample Project Technical.pdf | Twenty (20) pages | 1 electronic copy \n\n 5 Hard copies |
| Volume II | Past Performance | PastPerf.pdf | Twenty (20) pages | 1 electronic copy \n\n 5 Hard copies |
| Volume III | Price | (Identifier name) | None | 1 electronic copy \n\n 5 Hard copies |

**Page 29 of 59**

VA119-17-R-0261

| Volume Number | Factor | File Name (for electronic copy) | Page Limitations* | Number of copies |
|---|---|---|---|---|
| | | Attachment 9 Pricing Table.xls Attachment 20 Discount Structure.xls Attachment 21 Sample Task Order Pricing.xls  Catalog Price List.pdf | | |
| Volume IV | Solicitation, Offer and Award Documents (SF 1449) and Active SAM & VIP Registration | (Identifier name).pdf | None | 1 electronic copy 5 Hard copies |

Page size shall be no greater than 8 1/2" x 11" (with the exception of paper size for drawings which must have 1/8in = 1ft scale and not to exceed 24" x 36") with printing on one side.  The top, bottom, left and right margins shall be a minimum of one inch (1") each. Font size shall be no smaller than 11-point.  Arial fonts are required.  Line spacing shall be set at no less than single space.  Each paragraph shall be separated by at least one blank line.   Page numbers, company logos, and headers and footers may be within the page margins ONLY, and are not bound by the 11-point font requirement.  Footnotes to text shall not be used.  All proprietary information shall be clearly and properly marked.  If the contractor submits annexes, documentation, or attachments not specifically required by this solicitation, will count against the contractor's page limitations unless otherwise indicated in the specific Volume instructions below.  Pages in excess of the page limitation stated in the above table will not be evaluated.

A Table of Contents and/or a glossary of abbreviations or acronyms will not be included in the page count.  However, be advised that any and all information contained within any Table of Contents and/or glossary of abbreviations or acronyms submitted with an contractor's proposal will not be evaluated by the Government.

Content Requirements:  All information shall be confined to the appropriate volume.  The contractor shall confine submissions to essential matters, sufficient to define the proposal and provide an adequate basis for evaluation.  Do not cross information among volumes (i.e. do not put pricing information in non-priced factor volumes and vice-versa).  Contractors are responsible for including sufficient details, in a concise manner, to permit a complete and accurate evaluation of each proposal.

11. Contractors shall address the following specific areas:
Identify and describe how the contractor will support the various requirements listed below. The contractor shall:

- Coordinate and provide project management of all products and services at the ordering level; to manage, design, ordering, shipment, delivery and installation of all new furniture from the manufacturer until final acceptance by the Contracting Officer Representative (COR) or designee.

**Page 30 of 59**

**Appx127**

VA119-17-R-0261

- Disseminate (if applicable) and relocate any existing furniture (if the new furniture is replacing existing furniture) as indicated in the individual order.

- Perform tasks on systems/modular furniture and freestanding furniture.

The contractor shall:

- Comply with all applicable federal, state and local laws, building codes, life safety codes, ADA/ADAAG requirements, permits, VA design standards (www.cfm.va.gov/til/dguide.asp) and instructions required for the performance of duties in this Statement of Work (SOW) and attached General Specifications.

- Ensure policies and procedures are established that protect the safety and welfare of customers, employees and the community to minimize or eliminate safety or environmental risks.  These policies shall be in compliance with Federal and Installation policies and procedures.

- Provide products, installation, design, and maintenance/warranty services.

- Provide the necessary resources to manage all orders placed under the IDIQ.

## VOLUME I – TECHNICAL CAPABILITY

1) The contractor shall provide one cross-referenced copy of product literatures for all of the items listed in Attachment 3, titled Sample Product List. The items listed in Attachment 3, titled Detail Item Review General Specifications correspond to specifications listed in the Attachment 2, titled Minimum Technical Requirements.

   The requested copy of cross-referenced product literature for these specific items is requested to verify compliance with each of the items listed in Attachment 3, titled Detail Item Review.

2) Contractors shall submit a self-certification to meet General Specifications identified in Attachment 2.  Contractors are instructed to utilize the drop down selections in the excel sheet to automatically calculate point totals.  Each base criteria General Specification represents one (1) point, each optional criteria represents one quarter (0.25) point. Contractors may submit a pdf copy of the excel sheet to maintain copies of submission.

3) The contractor must provide a narrative addressing each of the items listed under SV1, SV2, SV3, and SV4 as defined in the SOW.

4) Contractor shall submit  a response to the Project Sample

   a. Documents to include: Scaled drawing incorporating the products listed in Attachment 4, titled Sample Project Requirements, Furniture Schedule tagged to the floor plan, furniture Bill of Materials, required 3D images, estimate of Man Hours for installation and project management, and an electronic finish sample board.

   b. Attachment 5, titled Sample MTRS; Attachment 6, titled Sample Project Floor Plan PDF; Attachment 7, titled Sample Project Drawing AutoCad; and Attachment 8, titled Sample Project Technical Evaluation shall be utilized for the development of the technical response.

VA119-17-R-0261

**VOLUME II – PAST PERFORMANCE**

Contractor shall submit recent and relevant past performance.
Recent is defined as performance during the past three years from the date of issuance of this solicitation.

 Relevant is defined as experience of similar size and scope of this requirement. It is incumbent upon the contractors to explain the relevance of the data provided.

The Government may also use other information such as CPARS and other data available from Government sources to evaluate a contractor's past performance.

In the event that no relevant or recent Past Performance is identified for a contractor, the Government will rate the contractor neither favorably nor unfavorably. If the contractor has no recent or relevant past performance, it shall affirmatively state that it possesses no recent or relevant past performance.

**VOLUME III – PRICE**
The Contractor shall submit pricing information for the attachments listed below. The attachments will be utilized to determine price reasonableness, price realism (balanced pricing) and additional discounts to standard government rates. The pricing and quantities are for EVALUATION PURPOSES ONLY.

> A. Attachment 9 titled "Pricing Table" (MS word) contains 13 standard furniture items with the minimum technical requirements (MTRs) for each item. The proposal must provide discounted pricing for each item (quantity of 1 each).  The pricing provided in this attachment is meant to give a baseline for price reasonableness. It will be used for EVALUATION PURPOSES ONLY.

> B. Attachment 20 titled "Discount Structure" (MS Excel) is a list of common commercial furniture and accessories categories. The proposal must show the standard Government discount (from the commercial list price) for all items listed under the seven (7) categories. The proposal will also provide the additional discount that will be offered on the IDIQ in column D.  This Attachment 20 will be incorporated into the resultant IDIQ award.

> C. Attachment 21 titled "Sample Task Order Pricing" (MS Excel) is a pricing sheet for the sample task order. The solicitation contains a requirement for the Offeror to provide a quote for sample task order. This attachment will be completed by the Offeror in conjunction with Attachments 4, 5, 6, 7 and 8. The purpose of this will be to evaluate price realism (balanced pricing).

> D. Discounted Commercial Catalog: The Offeror will provide an electronic version of their commercial furniture catalog containing all of the furniture that will be available for purchase through the resulting IDIQ contract. This catalog will be incorporated into the resultant IDIQ award as an attachment.

**VOLUME IV – SOLICITATION, OFFER AND AWARD DOCUMENTS**

This volume shall include the following:

- An authorized official of the firm shall sign the standard form SF 1449 and any SF30 Solicitation Amendments, if applicable and include in its Volume IV.

VA119-17-R-0261

- A statement that the contractor's proposed prices remains valid for a minimum of 120 days from the RFP closing date.

- Solicitation Provisions:  Completed copy of FAR 52.209-5, Certification Regarding Responsibility Matters (Apr 2010).

- Solicitation Provision: Completed copy of FAR 52.212-3 Offeror's Representations and Certifications – Commercial Items (Dec 2014) or provide print out of Representation and Certifications completed under the System for Award Management (SAM) located at https://www.sam.gov. It is the contractor's responsibility that the registration is valid through IDIQ issuance date.  In the event that registration is not valid through issuance date, contractor will be deemed unresponsive and ineligible for IDIQ issuance. Contractor must also provide verification of current Vendor Information Pages (VIP) registration https://www.vip.vetbiz.gov

Solicitation, Offer and Documents and Representations & Certifications will not be evaluated adjectivally or assigned a score.  For this acquisition, the Government will only evaluate the contractor's Representations & Certifications for completeness, accuracy, for being current and up-to-date.  Any imposed terms and conditions which deviate from the Government's material terms and conditions established by the Solicitation, may render the contractor's proposal unacceptable, and thus ineligible for IDIQ issuance.

(End)

## E.4 52.212-2 EVALUATION—COMMERCIAL ITEMS (OCT 2014)

  (a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered.

  Multiple IDIQ's will be issued to the responsible contractors whose proposals represent the best value to the Government.  The Government reserves the right to issue IDIQs without discussions based upon the initial evaluation.  Proposals that merely restate the solicitation requirements or state that the requirements will be met with no supporting rationale will be considered ineligible for award. Each proposal will be evaluated in strict accordance with its written content. The following factors shall be used to evaluate proposals:

> Factor 1:  Technical Capability
>
> Factor 2:  Past Performance
>
> Factor 3:  Price
>
> Factor 4:  Solicitation, Offer and Award Documents (SF 1449), Active System for Award Management (SAM) and Vendor Information Pages (VIP) Registration

For evaluation purposes, Factor 1 (Technical Capability) is more important than Factor 2 (Past Performance).  Factor 2 is more important than Factor 3 (Price).  When combined, the non-price factors (Factors 1 and 2) are significantly more important than Factor 3 (Price).

**Factor 1: Technical Capability.**  The Government will evaluate the Technical Volume as follows:

Section (1) Contractors technical capabilities based on the product literature provided only for the list of the categories, identified in Attachment 3, titled "Detailed Item Review," by referencing

**Page 33 of 59**

**Appx130**

VA119-17-R-0261

the corresponding specifications identified in Attachment 2, titled "MTRs". Evaluation will be based on the contractor's ability to offer these items.

Section (2) The Government will evaluate the contractor's self-certification under (Attachment 2, MTRs Minimum Technical Requirements (Excel))

Section (3) The Government will evaluate the contractor's Service Narrative to be able to meet all services as defined in the Statement of Work. This must cover all services required under SV1 Furniture, Design, and Installation Support Services; SV2 Installation and Reconfiguration Services; SV3 Industrial Design Services; SV4 Advanced Project Management Turn-key Services with Furniture. Key elements are listed below:

> a. Provide a staffing plan to include qualifications and experience working in a healthcare environment for key personnel (Project Manager/lead installer and Interior Designer(s).

> b. Describe the process of inventory, cataloging, protecting existing VA furniture and providing temporary storage for existing furniture. Include any materials that will be used to protect the furniture from any damage while in contractor's possession.

> c. Describe the process of protecting VA property (building) during installation. Include any materials that will be used to protect the building, architectural elements, and finishes or previously installed furniture.

> d. Describe process for making corrections during final walkthrough and documenting punchlist items with COR.

> e. Describe the process used for warranty repairs.

> f. Describe Interior Designer's experience and qualifications working on healthcare facilities and what hardware and software that will be used to produce digital and hard copy drawings of design work and prepared installation drawings.

> g. Describe technical capabilities of staff producing AutoCAD/and or PDF drawings of the as-built furniture installation.

h. Describe the experience of the installation staff and Interior Design staff regarding work in a federal facility and healthcare facility. Address their knowledge regarding life safety codes, infection control standards and patient privacy standards. Section (4) Contractors technical capabilities based on the Project Sample. Documents to include: Scaled drawing incorporating the products listed in Attachment 4, titled Sample Project Requirements, Furniture Schedule tagged to the floor plan, furniture Bill of Materials, required 3D images, estimate of Man Hours for installation and project management, and an electronic finish sample board. Attachment 5, titled Sample MTRS; Attachment 6, titled Sample Project Floor Plan PDF; Attachment 7, titled Sample Project Drawing AutoCad; and Attachment 8, titled Sample Project Technical Evaluation shall be utilized for the development of the technical response.

An "Unacceptable Rating" for any Technical section will result in an overall "Unacceptable" rating for the Technical Factor.

**Factor 2**:  **Past Performance.**

Past performance will be evaluated on recent and relevant past performance, as well as how well the contractor performed on previous contracts, which will include the information provided by Past Performance Questionnaires that will be completed by the references provided by Contractor.

**Page 34 of 59**

VA119-17-R-0261

In the event that no relevant or recent Past Performance is identified for a contractor, the Government will rate the contractor neither favorably nor unfavorably. If the contractor has no recent or relevant past performance, it shall affirmatively state that it possesses no recent or relevant past performance.

**Factor 3:  Price.**

Price will not be the primary determining factor for IDIQ issuance. The Government reserves the right to use various price analysis techniques and procedures to ensure a fair and reasonable price, including but not limited to: comparison of proposed prices received in response to this solicitation, comparison with competitive published price lists/books, and comparison to Independent Government Cost Estimate.

Price will not be evaluated adjectivally or assigned a score.  The CO will make a price reasonableness determination, considering any discounts to established catalog rates, determining rates are balanced, and the relationship to the contractor's current commercial catalog.

Price will be evaluated for the following 2 things:

    1. Reasonableness

    2. Balance (realism)

Proposed pricing will be evaluated for fair and reasonableness.  Unbalanced pricing will be evaluated for indication of performance risk that may result in payment of unreasonably high prices.  Unbalanced pricing exists when, despite an acceptable total evaluated price, the price of one or more contract line items is significantly over or understated as indicated by the application of price analysis techniques.

Because all proposals will have separately priced line items, they will be analyzed to determine if the prices are unbalanced.  If price analysis techniques indicate that an offer is unbalanced, the evaluation team will do the following:

    i.   Consider whether the IDIQ issuance will result in paying unreasonably high prices or unreasonably low prices for IDIQ performance.

NOTE: A proposal may be rejected if it is determined that the lack of balance poses an unacceptable risk to the Government.
(End of Provision)

### E.5 52.212-3 OFFEROR REPRESENTATIONS AND CERTIFICATIONS— COMMERCIAL ITEMS (JAN 2017)

The Offeror shall complete only paragraph (b) of this provision if the Offeror has completed the annual representations and certification electronically via the System for Award Management (SAM) Web site located at https://www.sam.gov/portal. If the Offeror has not completed the annual representations and certifications electronically, the Offeror shall complete only paragraphs (c) through (u) of this provision.

(a) *Definitions.*  As used in this provision—

*Administrative merits determination* means certain notices or findings of labor law violations issued by an enforcement agency following an investigation. An administrative merits determination may be final or be subject to appeal or further review. To determine whether a

VA119-17-R-0261

particular notice or finding is covered by this definition, it is necessary to consult section II.B. in the DOL Guidance.

*Arbitral award or decision* means an arbitrator or arbitral panel determination that a labor law violation occurred, or that enjoined or restrained a violation of labor law. It includes an award or decision that is not final or is subject to being confirmed, modified, or vacated by a court, and includes an award or decision resulting from private or confidential proceedings. To determine whether a particular award or decision is covered by this definition, it is necessary to consult section II.B. in the DOL Guidance.

*Civil judgment means—*

(1) In paragraph (h) of this provision: A judgment or finding of a civil offense by any court of competent jurisdiction.

(2) In paragraph (s) of this provision: Any judgment or order entered by any Federal or State court in which the court determined that a labor law violation occurred, or enjoined or restrained a violation of labor law. It includes a judgment or order that is not final or is subject to appeal. To determine whether a particular judgment or order is covered by this definition, it is necessary to consult section II.B. in the DOL Guidance.

*DOL Guidance* means the Department of Labor (DOL) Guidance entitled: "Guidance for Executive Order 13673, 'Fair Pay and Safe Workplaces' ". The DOL Guidance, dated August 25, 2016, can be obtained from www.dol.gov/fairpayandsafeworkplaces.

*Economically disadvantaged women-owned small business (EDWOSB) concern* means a small business concern that is at least 51 percent directly and unconditionally owned by, and the management and daily business operations of which are controlled by, one or more women who are citizens of the United States and who are economically disadvantaged in accordance with 13 CFR part 127. It automatically qualifies as a women-owned small business eligible under the WOSB Program.

*Enforcement agency* means any agency granted authority to enforce the Federal labor laws. It includes the enforcement components of DOL (Wage and Hour Division, Office of Federal Contract Compliance Programs, and Occupational Safety and Health Administration), the Equal Employment Opportunity Commission, the Occupational Safety and Health Review Commission, and the National Labor Relations Board. It also means a State agency designated to administer an OSHA-approved State Plan, but only to the extent that the State agency is acting in its capacity as administrator of such plan. It does not include other Federal agencies which, in their capacity as contracting agencies, conduct investigations of potential labor law violations. The enforcement agencies associated with each labor law under E.O. 13673 are—

(1) Department of Labor Wage and Hour Division (WHD) for—

(i) The Fair Labor Standards Act;

(ii) The Migrant and Seasonal Agricultural Worker Protection Act;

(iii) 40 U.S.C. chapter 31, subchapter IV, formerly known as the Davis-Bacon Act;

**Page 36 of 59**

VA119-17-R-0261

    (iv) 41 U.S.C. chapter 67, formerly known as the Service Contract Act;

    (v) The Family and Medical Leave Act; and

    (vi) E.O. 13658 of February 12, 2014 (Establishing a Minimum Wage for Contractors);

    (2) Department of Labor Occupational Safety and Health Administration (OSHA) for—

    (i) The Occupational Safety and Health Act of 1970; and

    (ii) OSHA-approved State Plans;

    (3) Department of Labor Office of Federal Contract Compliance Programs (OFCCP) for—

    (i) Section 503 of the Rehabilitation Act of 1973;

    (ii) The Vietnam Era Veterans' Readjustment Assistance Act of 1972 and the Vietnam Era Veterans' Readjustment Assistance Act of 1974; and

    (iii) E.O. 11246 of September 24, 1965 (Equal Employment Opportunity);

    (4) National Labor Relations Board (NLRB) for the National Labor Relations Act; and

    (5) Equal Employment Opportunity Commission (EEOC) for—

    (i) Title VII of the Civil Rights Act of 1964;

    (ii) The Americans with Disabilities Act of 1990;

    (iii) The Age Discrimination in Employment Act of 1967; and

    (iv) Section 6(d) of the Fair Labor Standards Act (Equal Pay Act).

*Forced or indentured child labor* means all work or service—

   (1) Exacted from any person under the age of 18 under the menace of any penalty for its nonperformance and for which the worker does not offer himself voluntarily; or

   (2) Performed by any person under the age of 18 pursuant to a contract the enforcement of which can be accomplished by process or penalties.

  *Highest-level owner* means the entity that owns or controls an immediate owner of the offeror, or that owns or controls one or more entities that control an immediate owner of the offeror. No entity owns or exercises control of the highest level owner.

  *Immediate owner* means an entity, other than the offeror, that has direct control of the offeror. Indicators of control include, but are not limited to, one or more of the following: Ownership or interlocking management, identity of interests among family members, shared facilities and equipment, and the common use of employees.

  *Inverted domestic corporation* means a foreign incorporated entity that meets the definition of an inverted domestic corporation under 6 U.S.C. 395(b), applied in accordance with the rules and definitions of 6 U.S.C. 395(c).

VA119-17-R-0261

*Labor compliance agreement* means an agreement entered into between a contractor or subcontractor and an enforcement agency to address appropriate remedial measures, compliance assistance, steps to resolve issues to increase compliance with the labor laws, or other related matters.

*Labor laws* means the following labor laws and E.O.s:

(1) The Fair Labor Standards Act.

(2) The Occupational Safety and Health Act (OSHA) of 1970.

(3) The Migrant and Seasonal Agricultural Worker Protection Act.

(4) The National Labor Relations Act.

(5) 40 U.S.C. chapter 31, subchapter IV, formerly known as the Davis-Bacon Act.

(6) 41 U.S.C. chapter 67, formerly known as the Service Contract Act.

(7) E.O. 11246 of September 24, 1965 (Equal Employment Opportunity).

(8) Section 503 of the Rehabilitation Act of 1973.

(9) The Vietnam Era Veterans' Readjustment Assistance Act of 1972 and the Vietnam Era Veterans' Readjustment Assistance Act of 1974.

(10) The Family and Medical Leave Act.

(11) Title VII of the Civil Rights Act of 1964.

(12) The Americans with Disabilities Act of 1990.

(13) The Age Discrimination in Employment Act of 1967.

(14) E.O. 13658 of February 12, 2014 (Establishing a Minimum Wage for Contractors).

(15) Equivalent State laws as defined in the DOL Guidance. (The only equivalent State laws implemented in the FAR are OSHA-approved State Plans, which can be found at www.osha.gov/dcsp/osp/approved_state_plans.html).

*Labor law decision* means an administrative merits determination, arbitral award or decision, or civil judgment, which resulted from a violation of one or more of the laws listed in the definition of "labor laws".

*Manufactured end product* means any end product in product and service codes (PSCs) 1000-9999, except—

(1) PSC 5510, Lumber and Related Basic Wood Materials;

(2) Product or Service Group (PSG) 87, Agricultural Supplies;

(3) PSG 88, Live Animals;

(4) PSG 89, Subsistence;

VA119-17-R-0261

(5) PSC 9410, Crude Grades of Plant Materials;

(6) PSC 9430, Miscellaneous Crude Animal Products, Inedible;

(7) PSC 9440, Miscellaneous Crude Agricultural and Forestry Products;

(8) PSC 9610, Ores;

(9) PSC 9620, Minerals, Natural and Synthetic; and

(10) PSC 9630, Additive Metal Materials.

*Place of manufacture* means the place where an end product is assembled out of components, or otherwise made or processed from raw materials into the finished product that is to be provided to the Government. If a product is disassembled and reassembled, the place of reassembly is not the place of manufacture.

*Predecessor* means an entity that is replaced by a successor and includes any predecessors of the predecessor.

*Restricted business operations* means business operations in Sudan that include power production activities, mineral extraction activities, oil-related activities, or the production of military equipment, as those terms are defined in the Sudan Accountability and Divestment Act of 2007 (Pub. L. 110-174). Restricted business operations do not include business operations that the person (as that term is defined in Section 2 of the Sudan Accountability and Divestment Act of 2007) conducting the business can demonstrate—

(1) Are conducted under contract directly and exclusively with the regional government of southern Sudan;

(2) Are conducted pursuant to specific authorization from the Office of Foreign Assets Control in the Department of the Treasury, or are expressly exempted under Federal law from the requirement to be conducted under such authorization;

(3) Consist of providing goods or services to marginalized populations of Sudan;

(4) Consist of providing goods or services to an internationally recognized peacekeeping force or humanitarian organization;

(5) Consist of providing goods or services that are used only to promote health or education; or

(6) Have been voluntarily suspended.

"Sensitive technology"—

(1) Means hardware, software, telecommunications equipment, or any other technology that is to be used specifically—

(i) To restrict the free flow of unbiased information in Iran; or

(ii) To disrupt, monitor, or otherwise restrict speech of the people of Iran; and

VA119-17-R-0261

(2) Does not include information or informational materials the export of which the President does not have the authority to regulate or prohibit pursuant to section 203(b)(3) of the International Emergency Economic Powers Act (50 U.S.C. 1702(b)(3)).

*Service-disabled veteran-owned small business concern*—

(1) Means a small business concern—

(i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and

(ii) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a service-disabled veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

(2) Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

*Small business concern* means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR Part 121 and size standards in this solicitation.

*Small disadvantaged business concern*, consistent with 13 CFR 124.1002, means a small business concern under the size standard applicable to the acquisition, that—

(1) Is at least 51 percent unconditionally and directly owned (as defined at 13 CFR 124.105) by—

(i) One or more socially disadvantaged (as defined at 13 CFR 124.103) and economically disadvantaged (as defined at 13 CFR 124.104) individuals who are citizens of the United States; and

(ii) Each individual claiming economic disadvantage has a net worth not exceeding $750,000 after taking into account the applicable exclusions set forth at 13 CFR 124.104(c)(2); and

(2) The management and daily business operations of which are controlled (as defined at 13.CFR 124.106) by individuals, who meet the criteria in paragraphs (1)(i) and (ii) of this definition.

*Subsidiary* means an entity in which more than 50 percent of the entity is owned—

(1) Directly by a parent corporation; or

(2) Through another subsidiary of a parent corporation.

*Successor* means an entity that has replaced a predecessor by acquiring the assets and carrying out the affairs of the predecessor under a new name (often through acquisition or merger). The term "successor" does not include new offices/divisions of the same company or a

**Page 40 of 59**

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | BPA NO. | 1. CONTRACT ID CODE | PAGE | OF PAGES |
|---|---|---|---|---|
| | | | 1 | 2 |

| 2. AMENDMENT/MODIFICATION NUMBER | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NUMBER | 5. PROJECT NUMBER (if applicable) |
|---|---|---|---|
| A00001 | 06-05-2017 | | SAC-17-41384 |

**6. ISSUED BY**     CODE   36C10G

U.S. Department of Veterans Affairs
Office of Acquisition Operations
Strategic Acquisition Center
10300 Spotsylvania Ave | STE 400
Fredericksburg VA 22408-2697

**7. ADMINISTERED BY** (If other than Item 6)    CODE   36C10G

U.S. Department of Veterans Affairs
Office of Acquisition Operations
Strategic Acquisition Center
10300 Spotsylvania Ave | STE 400
Fredericksburg VA 22408-2697

**8. NAME AND ADDRESS OF CONTRACTOR** (Number, street, county, State and ZIP Code)

To all Offerors/Bidders

| (X) | 9A. AMENDMENT OF SOLICITATION NUMBER |
|---|---|
| | VA119-17-R-0261 |
| X | 9B. DATED (SEE ITEM 11) 05-05-2017 |
| | 10A. MODIFICATION OF CONTRACT/ORDER NUMBER |
| | 10B. DATED (SEE ITEM 13) |

CODE      FACILITY CODE

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or electronic communication which includes a reference to the solicitation and amendment numbers. **FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER.** If by virtue of this amendment you desire to change an offer already submitted, such change may be made by letter or electronic communication, provided each letter or electronic communication makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA    (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS,
## IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

CHECK ONE

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

**E. IMPORTANT:**    Contractor ☐ is not, ☐ is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this amendment is to answer question from Offerors and make neccessary changes to solicitation documents. See attached for changes to the solicitation.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | | BY (Signature of Contracting Officer) | |

PREVIOUS EDITION NOT USABLE

STANDARD FORM 30 (REV. 11/2016)
Prescribed by GSA - FAR (48 CFR) 53.243

**Continuation of SF30 Narrative**
**VA119-17-R-0261 Amendment A00001**

Note the following changes have been made to the solicitation documents.

1. Questions and Answers have been finalized. Be sure to review all answer to the questions to ensure that you are fully aware of the changes that have been made. We will not issue a revised solicitation or SOW document, changes to these documents that have been made in the Q&A shall be pen and ink changes by Offerors.

2. The following documents have been revised and shall replace the previous versions. Please be sure to delete the previous version and use the revise attached version.

- Attachment 2 General Specifications and Optional Configurations
- Attachment 9 Standard 13 Item Pricing Table
- Attachment 20 Discount Structure
- Attachment 21 Sample Task Order Pricing

3. The closing date has been extended. Revised the closing date from 6/19/2017 to 6/27/2017 the time has not changed (4:30 PM EST).

4. All other terms and conditions remain unchanged.

See attached document: RFP Questions and Answers.

See attached document: Attachment 2 General Specifications and Optional Configurations 2017 June revised.

See attached document: Attachment 9 Pricing Table (Standard 13 Items).

See attached document: Attachment 21 Sample Task Order Pricing Revised 5.

See attached document: Attachment 20 Discount Structure V1_01JUN2017.

**Page 2 of 2**

**Question 1:** Attachment 5 - Sample Project General Specs has criteria that is different from Attachment 2 - General Specifications and Optional Configurations for the same item. Where this occurs, which document supersedes?

**Answer 1:** Attachment 5 is for the sample project only. Attachment 2 is the General Specifications for the furniture on the actual contract.

**Question 2:** Attachment 2 - General Specifications and Optional Configurations states in multiple locations, "Surfaces must be cleanable with hospital grade germicides and bleach solutions without harm to finishes." Please specify the solutions being used so manufacturers can confirm their product is appropriate. Specifically, the percentage of germicide and bleach being used in the solutions.

**Answer 2:** Healthcare grade germicides are those that are used to clean surfaces and kill enveloped and non-enveloped viruses and bacteria commonly found in a healthcare setting. The EPA registers such chemicals for cleaning healthcare environments.  Bleach is used as a 10% solution.

**Question 3:** Many manufacturers use substrate/cores that exceed the performance of particle board or MDF. Please consider updating product requirements to "substrate of particle board, MDF, or better" for applicable categories (Casegoods Modular Desking and Worksurfaces).

**Answer 3:** Materials that exceed the performance requirements are acceptable.

**Question 4:** LF1 File, Lateral, Metal and SC1 Storage Cabinet, Metal state respectively, "e. Multiple base heights. "f. Multiple base heights from a minimum of 1" to 4" (+/- ¼")." Please remove requirement as this is proprietary and a manufacturer specific characteristic.

**Answer 4:** This is not proprietary and was found to be available from multiple manufactures. This will not be removed.

**Question 5:** SC1 Storage Cabinet, Metal state, "b. Counterweight option must be able to be added in the field." The weight of items being stored in a supply cabinet do not extended beyond the case like a file drawer. It is not industry standard to have counter weights in supply cabinets. Please make this requirement optional.

**Answer 5:** The requirement for the Counterweight will be removed from SC1.

**Question 6:** SC1 Storage Cabinet, Metal state, "i.180-degree door swing." Most manufactures limit the range of swing to less than 180 degrees to limit the door from swinging into an adjacent storage pieces and causing damage. Please make this requirement 100-degrees or greater.

**Answer 6:** Requirement stands as written.

**Question 7:** MSF1 Modular Systems Furniture General Requirements: Panels states, "n". All panels shall include top caps, end trims, and base covers, including change of height trims where needed and be available in matching paint colors." Please confirm that the intent of this statement is to ensure that these items will always be included when specifying panels.

**Answer 7:** The intent of this statement is to ensure that all surfaces have finished sides and tops. There is to be no exposed hardware.

**Question 8:** MSS2 Storage, Underdesk – Pedestal and Files states, "d. Leveling glides shall be standard with nylon foot pad adjustable up to 1 inch." Would metal glides be acceptable?

**Answer 8:** Requirement stands as written.

**Question 9:** Category Tables and Carts states, "d. Surfaces must be hard, and durable to be heat, scratch, and mar resistant, and cleanable with healthcare cleaners." Please confirm that the intent of this statement is for the surface or horizontal plane of the table.

**Answer 9:** Requirement is for surfaces to include both horizontal and vertical.

**Question 10:** GC2 Mid-Grade Guest Chair with Bariatric Coordinate states, "b. Weight Capacity of a minimum of 300 lbs. steel reinforced seats." Please confirm product that exceeds the weight capacity by a different construction method is technically acceptable.

**Answer 10:** Requirement stands as written.

**Question 11:** SL1 Basic Sleeper Chair state, "b. Wall saver design." When a manufacturer's sleeper has a fixed back and only the seat moves, a wall saver is not necessary. Please confirm this would be technically acceptable.

**Answer 11:** The Requirement is for method in the design to ensure the wall is not impacted when operated.  The specific method in the design may vary by manufacturer.

**Question 12:** Does the 1st QTR Reporting Excel document need to be filled out by Bidder?

**Answer 12:** No, the QTR Reporting is done after award. It is a tool to keep track of sales on the IDIQ contract.

**Question 13:** Should the hardcopy proposal be sent to Robert Wilson?

**Answer 13:** Yes you should send hard copies to Robert Wilson at 10300 Spotsylvania Ave, Suite 400, Fredericksburg, VA 22408.

**Question 14:** Does the Technical Service Evaluation document need to be filled out by Bidder?

**Answer 14:** Attachment 8 Sample Project Tech Evaluation and Attachment 15 Service Technical Questions are informational only. They are the checklists that will be used to evaluate the technical proposals.

**Question 15:** Sample Project Floor Plan- Area adjacent to #3 Receipt - File/Stor: We respectfully request clarification as to what the critical dimensions are for. Is this area to allow for the Check Out desk or some other type of equipment or furniture?  If so, what is anticipated for this area?

**Answer 15:** Disregard the hold dimension.  This is a previous project that was used as a Sample Project.

**Question 16:** VOL 1 Catalog submittals: To minimize the page count should we only submit the pages that align with the MTR products requested vs. full manufacturer catalogs? Should the electronic submittal have full MFG offering?

**Answer 16:** Literature / catalog only for the items on Attachment 3 should be in Volume 1 Technical.  Full catalog shall be included in Volume 3 Pricing.

**Question 17:** Are sustainability reports for all manufacturers to be included with the Bidder response? If so, hard copy or electronic copy?

**Answer 17:** No, agreements between the SDVOSB prime and manufactures do not need to be included.

**Question 18:** Is there a correlation between the CLIN tags in attachment 9 and the CLIN tags in attachment 21? If so, please explain how it translates into the sample project pricing submittal.

**Answer 18:** There is no correlation.  Attachment 9 is a sample of 13 common commercial items.  Attachment 21 is your proposed pricing of the sample task order.

**Question 19:** The sample project asks for pricing on Attachment 21 with hourly rates per category. The spreadsheet only has one column so is the lump sum rate/price required or are we to break down labor hours and the rate?

**Answer 19:** Attachment 21 contains two tabs.  The second tab, CLIN Backup-Rollup is where your detailed breakdown would be included.

**Question 20:** Should labor rates for the sample project be calculated on Green Valley, AZ for Region 5 only or for all regions?

**Answer 20:** Labor rates shall be based on rates within 90 miles of offeror's location.

**Question 21:** Other than the criteria outlined in FAR 16.500 and FAR 16.505 are there any requirements for products to be on a GSA schedule?

**Answer 21:** No, this requirement is open market not GSA. Offeror's may use the same prices that they offer on their GSA schedule but this solicitation is open market and not under GSA schedules.

**Question 22:** Sample Project Floor Plan: Modular Casework #6 Lab: We respectfully request clarification as the specification calls for 36"H base cabinets, is this accurate or is ADA 34" height preferred?

**Answer 22:** Requirement stands as written

**Question 23:** Should past performance references be for the SDVOSB Bidder only or should it include manufacturer /subcontractor references?

**Answer 23:** The resulting contract will be awarded to the SDVOSB so we only require past performance on the SDVOSB. The Government will not be involved with subcontractor(s), it is the SDVOSB's responsibility to utilize quality subcontractors. All past performance questionnaires must be submitted by the closing date of the RFP.

**Question 24:** Sample Project Floor Plan: We respectfully request clarification regarding size and/or type of existing phlebotomy chair (NIC) in #6 Lab?

**Answer 24:** Phlebotomy chair dimensions are 28"w x 25"d.

**Question 25:** 0004 MTR CGS1: Does the "plug in play power at base" refer to manufacture prewired power system or is there a request for a Plug in power source from the building to the panel vs a hardwired connection.

**Answer 25:** This requirement refers for the manufacturers prewired power system.

**Question 26:** 0006 MTR HAW2 Height adjustable tables:  In order to comply with the ADA Operation 309.4 guideline, can a powered table be submitted in place of the pneumatic adjustment.  Or should we note in the technical requirements that we have the powered solution and in the Attachment 9 pricing we include the Pneumatic table as requested?

**Answer 26:** No.

**Question 27:** 007 MTR CM3 cart: Feature "A" calls for keyless entry lock and feature "G" calls for Key or keyless with key alike option.  How should this cart be priced?

**Answer 27:** Carts are to be priced with keyless entry.

**Question 28:** 00010 MTR WSG1 lounge furniture: Feature "B" calls for "chair in solid wood with metal seat frame".  Which is required metal frame or all wood frames?

**Answer 28:** Requirement stands as written.

**Question 29:** 0011 MTR PC1 patient chair: Is there a minimum height requirement to fulfill the "high back" criteria?

**Answer 29:** There is not a minimum height requirement. The commercial standard definition references the location of the back support (upper back) not a height requirement of the back of the chair.

**Question 30:** In section B3 Price/Cost Schedule it is unclear to me what we would be entering in here.  Is it an hourly rate?  This number will vary so greatly based on the state and city so I'm not really sure what we should be putting in here.

**Answer 30:** Section B3 will not be completed with your proposal.  This is the CLIN structure of the resultant IDIQ and will be used by the VISN contracting office to place orders against the IDIQs.

**Question 31:** In Instruction Addendum #8 Proposal Submission it states that there should be an electronic copy.  How do you want that electronic copy?  Email would be too large.  Are you wanting a USB or a CD or?

**Answer 31:** Please submit the electronic copy on CD only.

**Question 32:** In Instructions to Offerors Addendum #9 states that there are 5 separate volumes but only 4 are listed.

**Answer 32:** Correction noted. There are 4 volumes, not 5.

**Question 33:** Section 10b says not to include logos or name but in instructions on page 30 it says company logos can be in margins only.  Is a logo allowed (I assume not since we can't have our name).

**Answer 33:** Logos and company names must not be included in Volume 1 Technical Capability per the Addendum to FAR 52.212-1 Instructions to Offerors.

**Question 34:** Section 11 states that we need to address how we will support the various requirements listed below that number.  What volume is this to go in?  Is it part of the technical capability?

**Answer 34:** Yes, Volume 1 Technical Capability.

**Question 35:** In SV3 Industrial Design b:  What is meant by end user programming services, hardware and software? Can you clarify this whole section:  are we really supposed to SUPPLY office equipment such as copiers and faxes and markers or only to allow for them in a design?  It's pretty unusual to have to deal with office equipment and supplies as a furniture vendor.

**Answer 35:** End User Programming Services is referring to determining, through interviews and meetings with the customer, the needs, wants, and goals of the project.  The Programming phase is the collection of information to ensure the end result meets the need.

**Question 36:** In the Attachment 3, MTR, it is a long list of furniture items and a line for a manufacturer name and an optional configuration.  Under the contract we could be providing 10 or more manufacturers for any one product so are we to just pick one?  Is the optional configuration just a checkmark or another manufacturer name or how should that be filled out?  Since we're not providing any particular item number in that field, I'm not sure how to complete the "optional" part.

**Answer 36:** Attachment 3 is the Detailed Item Review General Specification.  Attachment 2 (General Specifications and Optional Configurations 2017 FINAL) is the list of all the requirements that the vendor must meet. The option column in Attachment 2 is for different configuration that certain items can have. For example if the item is a computer desk and the basic desk does not come with a keyboard tray but it is an optional attachment then you would check the block for optional keyboard tray.    Columns D and E contain drop down menus. Column D is 0- you are unable to meet, 1- you are able to meet this requirement.  Column E (optional configuration points are 0 and 0.25 for not meeting and meeting the requirements respectively)

**Question 37:** Sample Project Floor Plan: We respectfully request clarification on what the size of the Exam Table is we should allow for in Treatment/Exam/Teledoc/Social Work Exam?

**Answer 37:** Exam Table (NIC) dimensions are 29"w x 74"l to include the extended footrest.

**Question 38:** Attachment 3 MTR- CS1 - Requirement "d": We respectfully request the requirement state: Platform made from ¼" durable phenolic or 100% recycled Kraft paper. (This was approved in the previous RFQ).

**Answer 38:** Attachment 3 is the list of 13 items for the detailed review.  Attachment 2 (General Specifications and Optional Configurations 2017 FINAL) is the list of all the requirements that the vendor must meet.  We will allow 100% recycled Kraft paper as an option as long as it meets all other requirements and warranty.

**Question 39:** Attachment 2 MTR- General Requirements: We respectfully request removal of request asking for Anti-Microbial for any exposed wood surface:  This requirement is highly restrictive.  For any item this requirement is stated it should be placed in the Optional Configurations column and scored at .25 points.

**Answer 39:** MTR General Requirements is actually Attachment 2. It is healthcare standard to use anti-microbial treatment on exposed wood surfaces and this requirement will not be changed.

**Question 40:** We want to confirm all USB and power requirements are to be applied to the tables and not to the individual seats? Where are the power and USB modules to be located on the tables (i.e., Occasional/Connecting tables)?

**Answer 40:** USB options occur on 12 items.  General Requirements for Tables and Carts to include (CT1, CT2) confirming table locations.  Occurrences 4-7 are on WSG2 and WSG3 – Table locations are acceptable.  Occurrence 8 appears on the ottoman of WSG3 (not a table) Occurrence 9 and 10 are on RC2 and RC3 Patient Recliners, not tables.  Occurrence 11 is on SL3 – Sleeper chair, not a table, and Occurrence 12 is on LT2 for a USB option on a table lamp, not a table.  USB options should be indicated for the items above.

**Question 41:** Sample Project Floor Plan: We respectfully request clarification as to if the space is sprinklered?

**Answer 41:** Yes – space is sprinklered.  Ceiling heights are 9'-0".

**Question 42:** Recliners/Sleepers - Are 3" casters acceptable as long as the product meets the weight and warranty requirement?

**Answer 42:**  Requirement calls for a minimum of 3" casters.  Therefore, 3" casters are acceptable on RC1, RC2, and RC3.  SL1, SL2 and SL3 does not require casters.

**Question 43:** The warranty requirements vary from product category to product category. Most manufacturers don't have different warranties by product type. We request that the VA establish a minimum warranty requirement that is consistent across all product categories?

**Answer 43:**  The warranties required reflect industry standards and sometime healthcare required warranties for the items on the IDIQ.  Different product categories do have different warranty standards.  Therefore warranties will remain as listed.  (example, HK1-hooks have a 3 year warranty which would not be appropriate for modular systems furniture.)

**Question 44:** We request that the VA also allows a sled base solution for ST3?

**Answer 44:** Requirement stands as written.

**Question 45:** We have a safety concern about potential adding casters on lounge seating (WSG1) as the minimum weight capacity required puts them in the bariatric range. Based on a safety/fall hazard casters would create we request the VA remove this requirement from the specification.

**Answer 45:** Requirement stands as written.

**Question 46:** Do the lounge units (WSG1) require pull bars in a waiting area setting where movement of the seating would be highly unlikely.

**Answer 46:** Requirement stands as written. Although furniture is listed as Lounge Waiting Room the title will not prohibit the furniture from being used in other areas where pull bars may be needed.

**Question 47:** Lounge seating (WSG1) does not typically have a flexing back. Since this is not industry standard, having this as a requirement will reduce competition. We ask this requirement to be removed to enhance competition within this category.

**Answer 47:** Flex Backs are an option. Requirement stands as written.

**Question 48:** We request that the height of the occasional tables in WSG2 includes 16" - 30" in height which is consistent with industry standards.

**Answer 48:** Requirement stands as written.

**Question 49:** We request that rockers receive equal consideration to gliders in the PC1 category as long as it remains in the same product line/product family.

**Answer 49:** Requirement stands as written.

**Question 50:** PC2 - We have a safety concern about having the option of placing casters on the PC2 gliders. It could create a fall hazard. We request the VA remove this requirement from the PC2 specification.

**Answer 50:** Requirement stands as written.

**Question 51:** PC3 - We have a safety concern about placing casters on Bariatric Patient chairs. The potential of the chair moving and a fall occurring would exist. Based on a safety hazard we request the VA remove this requirement from the specification.

**Answer 51:** Requirement stands as written.

**Question 52:** RC1 – Please explain what you mean by quick release back rest?

**Answer 52:** "Quick Release to remove back" means a mechanism to remove the back as opposed to needing tools to disassemble the chair.

**Attachment 1**
**STATEMENT OF WORK**

**1.0 General Scope:**
The Veterans Health Administration (VHA) has a recurring requirement for healthcare furniture for the Medical Centers, the Community-Based Outpatient Clinics (CBOCs), the Vet Centers, and other outlying clinics and offices throughout the United States and its territories.  This is an effort by VHA to streamline the acquisition process and obtain further discounted commercial pricing.

This requirement includes healthcare furniture, design, project management, furniture removal, professional installation and maintenance/warranty services.    A Contracting Officer Representative (COR) may be assigned at the IDIQ ordering level.

The contractor shall provide all labor, materials, equipment, transportation, and supervision necessary to satisfy the needs of each ordering activity.

**2.0 Delivery:** All orders shall be delivered Free On-Board (FOB) destination to the delivery addresses listed in the individual orders placed against the IDIQ. Specific delivery/shipping information shall be determined at the individual order level.

**3.0 Reports:** The contractor shall provide a quarterly report to the IDIQ Government points of contacts listed in Section B.1 of the solicitation, one (1) an electronic version of the quarterly sales report using the approved format, listed in Attachment 19, IDIQ Quarterly Reporting Tool. This quarterly sales report shall provide the commercial catalog list price, standard government discount price and the IDIQ discounted price to determine savings.  The report is due within thirty (30) calendar days after the close of each quarterly's business.

**4.0 Sustainability Reporting:**

The selected vendors are required to provide the below report of items purchased by each VA station.  This report will be required within 30 days of the end of the VA's fiscal quarter. Additionally, this report will consider all VA orders that are germane to this contracting effort that may be identified as hazardous and must include answers to the following questions:

    1) What VA Site is this for?
    2) Were the items partially or fully blanket wrapped or in environmentally friendly packaging?  (Y/N) _____
    3) Were 10% or more of the materials for the product sourced within 500 miles from the manufacturing facility? (Y/N) _____
    4) What was the dollar amount of the recycled content purchased?     $_____
    5) What was the dollar amount of bio-based product purchased?     $_____
    6) Did the products purchased contain 100 parts per million (ppm) or less of the following chemicals?
        a. Urea formaldehyde (Y/N) _____
        b. Heavy metals including mercury, cadmium, lead, antimony (Y/N) _____
        c. Hexavalent chromium in plated finishes consistent with the Restriction of the Use of (Y/N) _____

      d.  Certain Hazardous Substances of the European Union Directive (EU RoHS) (Y/N) _____
      e.  Stain and non-stick treatments derived from Perfluorinated Compounds (PFCs), including Perfluorooctanoic Acid (PFOA) (Y/N) _____
      f.  Added antimicrobial treatments (Y/N) _____
      g.  Polyvinyl Chloride (PVC) (Y/N) _____

7)  What was the dollar amount of biodegradable or recyclable materials at end of life product purchased?  $_____

8)  What was the dollar amount of rapidly renewable materials in product purchased?   $_____

9)  What was the dollar amount of products that were Greenguard, SCS, or Level certified?   $_____

10) Were any products returned to you to be recycled? (Y/N) _____
    If yes, was a credit towards the purchase received? (Y/N)

**5. 0 Period of Performance:** The period of performance of the IDIQ will be 2017 and continue through 2022 with an additional five year option period. Orders will be issued by each VHA field contracting office based upon its needs and availability of funds.

Duty hours will be established at the ordering level.

The Government recognized US holidays are:

| | |
|---|---|
| New Year's Day | Martin Luther King Jr. Day |
| Presidents Day | Memorial Day |
| Independence Day | Labor Day |
| Columbus Day | Veterans Day |
| Thanksgiving Day | Christmas Day |

If the holiday falls on Sunday, it is observed on the following Monday.

**6.0 General Requirements for Services:** The dates and times for delivery, receipt and installation of furniture will be established by individual orders.  Delivery, receiving and installation of furniture will be determined on the individual orders and may occur outside of normal duty hours to not interfere with patient care in accordance with the IDIQ order.

    a.  When the Contractor requests to deliver, receive and/or install furniture outside normal duty hours.  When these instances occur a written request shall be submitted to the VA Contracting Officer's Representative (COR) for authorization of the individual orders of this type.  Written approval from the VA COR must be received before proceeding with the work.  The request shall be submitted at least (5) five business days prior to the proposed performance of work, and it shall indicate the day(s), time, the amount of work, and the reason why performance is necessary outside normal duty hours.

    b.  The Contractor shall be made aware of and must comply with local security policies and procedures in the task order.  The Contractor will comply to these standards during all site visits on Governmental property. Contractor shall contact the VA COR at least 14 days prior to work start date to ensure compliance to any local security policies.

    c.  The Contractor personnel shall present a professional appearance and shall have a uniform or some method of identifying them as an employee of the contractor.  A VA badge will be provided and must be worn above the waist and be visible at all times while on government property.

    d.  The Contractor shall ensure policies and procedures are established that protect the

2

safety and welfare of customers, employees, and the community to minimize or eliminate safety or environmental risks.

e.  The Contractor shall be knowledgeable of and shall comply with all applicable federal, state, and local laws, Building Codes, Life Safety Codes, Occupational Health and Safety Administration (OSHA), ADA/ADAG, permits, VA design standards (www.cfm.va.gov/til/dguide.asp), and instructions required for the performance of the duties in the Statement of Work (SOW).

f.  The Contractor is responsible for ensuring that its firm and staff maintain any generally required professional certification, accreditation, license, bond, and proficiency relative to their area of expertise. The Contractor shall retain documentation of such records. The Government will not pay for expenses to meet this requirement.

g.  The Contractor is responsible for ensuring staff are trained and certified for planning and installing product to maintain the integrity of the manufacturer's warranty.


## SV1 – Furniture, Design, and Installation Support Services

### Contract Tasks/Requirements

a.  Contractor may be required to provide basic design services and layout for commodities purchased. All designs of furniture layouts, including original designs and any subsequent redesigns, must be accomplished by a qualified professional Interior Designer with either a four (4) year Interior Design degree from an accredited school by the Council for Interior Design Accreditation (CIDA/FIDER), or 5 years of experience, and one year experience using contractor's software similar to that proposed for this contract.

b.  Contractor is required to provide installation drawings for furniture purchased.

c.  Contractor shall place all orders, track orders, schedule deliveries and coordinate trucks with the manufacturer for manufacturing and delivery according to VA project schedule.

d.  Contractor shall be responsible for all field measurements whether in existing spaces or new construction. Contractor shall not rely on AutoCAD drawings for final measurements.

e.  Contractor shall perform installation services per task order SOW.

f.  Contractor must have a project manager/lead installer based on project size. Project manager/lead installer must have a minimum of 2 years of experience performing installation services in healthcare facilities.

g.  Contractor may be required to remove and/or relocate existing VA furnishings in coordination with VA Logistic Management Service and Interior Designer per the task order SOW.

h.  Contractor may or may not be required to complete services outside of normal duty hours per the SOW.

i.  Contractor shall be familiar with VA campuses and various VA Outpatient Clinics, regulations, loading dock locations and hours of operations.

3

**j.** Contractor must provide Proof of Insurance.

**k.** Contractor shall provide 30 Days Free Storage once the complete bill of materials has been received at a conditioned facility that meets all building requirements including but not limited to the sprinkler, security, safety, temperature and environmental controls – as not to void furniture warranties.

**l.** Contractor must notify VA of the specific location of any or all stored furniture.

**m.** Contractor shall provide all necessary materials, equipment, labor, supervision, and Management to: (A) coordinate delivery: (B) load and unload; (C) place/install items in designated rooms/locations; (D) assemble items as required; (E) secure as designated; and (F) properly dispose of all associated packing/crating materials outside the VA premises.

**n.** VA COR: to be specified at delivery/task order level.

## Protection of Property

**a.** The Contractor shall perform an inspection of the buildings and grounds with the COR prior to commencing work. Contractor shall protect all items from damage. The Contractor shall take precaution against damage to the buildings, grounds and furnishings. The Contractor shall repair or replace any items related to buildings or grounds damaged accidentally, or on purpose due to actions by the Contractor, utilizing materials of the same quality, size, grade and color, to match existing work.

**b.** To ensure that the contractor shall be able to repair or replace any items, components, on the buildings or grounds damaged due to negligence and/or actions taken by the Contractor. The Contractor shall communicate with the COR to resolve all repairs beyond simple surface cleaning. Concurrence of the COR is required before the Contractor may perform any significant repair work. In all cases, repairs shall utilize materials of the same quality, size, texture, grade and color to match adjacent existing work.

**c.** The Contractor shall be responsible for the security of the areas in which the work is being performed at all times prior to completion. The Contractor shall maintain accountability and control of any keys provided, and shall return them to the COR upon completion of the work.

**d.** Contractor shall provide floor protection while working in all VA facilities. All material handling equipment shall have rubber wheels.

## Delivery

**a.** Contractor shall contact the COR at least 14 business days prior to the start of work/shipping to ensure that the building is ready for install.

**b.** In the event there is a delay in delivery, Contractor must notify the assigned VA COR immediately in writing, preferably via email.

4

c. Contractor shall provide the COR with scheduled date and time that the delivery truck will be arriving at least 24 hours minimum in advance.

d. Contractor must ensure that the driver of the delivery vehicle has copies of the Bill of Materials/delivery orders and shall not attempt to deliver any items before the scheduled delivery date.

### Receive and Unload

a. If the Contractor is unable to complete the assembly and placement of all unloaded items before the end of the workday, the Contractor will be responsible for moving these items to a secure location, until the next available work day. The Contractor will be responsible for moving the items from the overnight storage site to its designated position in the building.

b. The Contractor shall verify and inspect all items. Any and all deficiencies (damage/overage/shortage) shall be brought to the attention of the assigned VA CO in writing, preferably via email, immediately upon identification.

c. The Contractor shall store damaged items in the location designated by the COR. The Contractor shall maintain a complete file of all documents relating to each discrepancy and copies of all Discrepancy Reports shall be forwarded to the COR on a daily basis.

d. Contractor shall repair or coordinate with the COR for replacement of damaged, defective, or missing items.

### Assembly and final acceptance

a. Contractor shall be responsible for all safety and security guidelines within the area in which work is being performed, to include securing any contractor-owned tools or equipment, and any on-site storage being utilized.

b. The contractor shall install all items in accordance with each requirement statement and basic component floorplan, panel plan and electrical plan, designed and provided by the contractor with each task order.

c. Contractor shall uncrate all items received and perform all required assembly in accordance with the manufacturers' instructions.

d. Contractor shall prevent its personnel from entering any area other than the designated work area.

e. The Contractor shall maintain a means of egress within all designated work areas to comply with fire codes.

f. Contractor shall inspect to ensure that the furniture is free of surface dirt, clean and polished, free of defects, and that the installation is complete and ready for use.

g. The Contractor shall do a final walkthrough with COR and provide a punch list before releasing crew for the day.

5

**Jobsite Cleanliness**

a. Contractor will be responsible for the removal and disposal of all trash/debris connected with uncrating and assembling all items installed under this contract.

b. Final Acceptance by the Government will not occur until **all** *installed items have been wiped cleaned and* debris/dust connected with installation is removed from the VA site.

c. Recyclable cardboard products shall be disposed of in accordance with applicable statutes, in respective containers. The contractor is responsible for providing trash containers at an offsite facility.

d. Packing materials will not be stored in the buildings for any period exceeding 24 hours.

e. The Contractor shall ensure its personnel eat, drink, or smoke only in designated areas.

f. Personal trash (food wrappers, drink containers, etc.,) shall be removed from the site on a daily basis by the Contractor.

**Warranty Items**

a. The warranty of an item is to start on thethe date of acceptance of the products/services by the Government VA COR..

b. The Contractor agrees to furnish, without cost to the Government, replacement of all parts and material which are found to be defective during the warranty period. The cost of installation and travel of replacement material and parts shall be borne by the Contractor.

**SV2 – Installation and Reconfiguration Services**

**Contract Tasks/Requirements**

a. Contractor to provide installation and reconfiguration services per the Statement of Work. Furniture installations and reconfigurations include, but are not limited to the following: free-standing, panel-hung systems, and modular furniture disassembly, relocations, reassembly, and configurations, the disassembly and reassembly of shelving, and special items such as rotary cabinets and mobile rolling file cabinet systems. All furniture installations and reconfigurations requires the COR's approval of a plan provided by the Contractor..

b. Contractor will be required to move and transport products between multiple sites within the applicable Healthcare System. Moving activities include, but are not limited to moving miscellaneous free-standing furniture items, file record boxes, employee property such as boxed files, records and computers, equipment, filing cabinets of various types and sizes of pallets to a different locations, delivering and picking up empty moving boxes, minor furniture repair and disposal of designated items such as removal of trash from work sites. If movement of PHI and PII (records and computer equipment) is required contractor must have a Business Associate Agreement (BAA).

c. Contractor to provide storage, inventorying, stocking and distribution services per the SOW. Storage and Stocking Services include but not limited to maintaining an inventory of VA furnishings for redistribution within the applicable Healthcare System per the SOW and providing ongoing storage at an approved and conditioned storage facility per SOW.

d. Contractor to provide hauling, excessing and recycling services of VA furnishings in coordination with the VA COR per SOW.

e. The Contractor shall provide final move, installation, configuration plans 5-14 days prior per the SOW.

f. The Contractor may be required to provide basic furniture design layout AutoCAD and/or PDF drawings of final furniture layouts as directed by the VA COR.

g. Contractor shall collaborate with VA COR to coordinate compliance with any in-house service that may be affected by installation such as IT, Housekeeping, Facilities, and In-House Construction Teams. Specific, required meetings will be identified at the order level.

h. Contractor shall be solely responsible for all field measurements and may not rely on AutoCAD files or drawings for final measurements.

i. The Contractor shall designate an on-site project manager/lead installer. An on-site project manager/lead installer will require a cell phone or other means of communication coordinate each moving service activity with the VA COR. The project manager/lead installer will be responsible for oversight for all aspects of the project.

j. The Contractor shall provide sufficient and consistent personnel/crews based on workload as required accomplishing assigned tasks in the time frame stated on task order. Requests for additional personnel/crews will be made a minimum of five calendar days in advance of the moving service activity.

k. The Contractor shall provide, operate, manage and maintain a trained, uniformed Moving Services crew.

l. The Contractor shall ensure that crew members have the technical capability to assemble and disassemble all types of furniture and specialized equipment before performing such tasks.

m. The Contractor's personnel shall have the ability to: meet and deal with the general public; ability to read, understand and apply printed rules, detailed orders, instructions and furniture drawing layouts. The contractor's personnel shall also have familiarity with a variety of commercial furniture product disassembly and assembly parts and components; and be able to physically perform the functions required in the performance of their assigned duties.

**Protection of Property**

a. The Contractor shall perform an inspection of the buildings and grounds with the COR prior to commencing work. Contractor shall protect all items from damage. The

7

Contractor shall take precaution against damage to the buildings, grounds and furnishings. The Contractor shall repair or replace any items related to buildings or grounds damaged accidentally, or on purpose due to actions by the Contractor, utilizing materials of the same quality, size, grade and color, to match existing work.

b.  To ensure that the contractor shall be able to repair or replace any items, components, on the buildings or grounds damaged due to negligence and/or actions taken by the Contractor. The Contractor shall communicate with the COR to resolve all repairs beyond simple surface cleaning. Concurrence of the COR is required before the Contractor may perform any significant repair work. In all cases, repairs shall utilize materials of the same quality, size, texture, grade and color to match adjacent existing work.

c.  The Contractor shall be responsible for the security of the areas in which the work is being performed at all times prior to completion. The Contractor shall maintain accountability and control of any keys provided, and shall return them to the COR upon completion of the work.

d.  Contractor shall provide floor protection while working in all VA facilities. All material handling equipment shall have rubber wheels.

## Assembly and final acceptance

a.  Contractor shall be responsible for following all safety and security guidelines within the area in which work is being performed, to include securing any contractor-owned tools or equipment, and any on-site storage being utilized.

b.  The Contractor shall maintain a means of egress within all designated work areas to comply with fire codes.

c.  Contractor shall inspect to ensure that the furniture is free of surface dirt, clean and polished, free of defects, and that the installation is complete and ready for use.

d.  The Contractor shall do a final walkthrough with COR. The Contractor will correct deficiencies at no additional cost to the government.

## Contractor Furnished Materials and Equipment

a.  On-site supervisor must be available via telephone while working on-site.

b.  Specialty moving materials, tools, and supplies, including but not limited to padding, packing, crating, dollies/hand trucks, and any other type of equipment commonly used for moving services activities, as required for the safe transportation of the property.

c.  Boxes necessary to move and pack as required in individual order.

d.  Vehicles/Trucks necessary for meeting the transportation and delivery needs of the individual order.

## Jobsite Cleanliness

8

**Appx154**

a.  Contractor will be responsible for the removal and disposal of all trash/debris connected with uncrating and assembling all items installed under this contract.

b. Final Acceptance by the Government will not occur until **all** installed items have been wiped cleaned and debris/dust connected with installation is removed from the VA site.

c. Recyclable cardboard products shall be disposed of in accordance with applicable statutes, in respective containers. The contractor is responsible for providing trash containers at an offsite facility.

d. Packing materials will not be stored in the buildings for any period exceeding 24 hours.

e. The Contractor shall ensure its personnel eat, drink, or smoke only in designated areas.

f. Personal trash (food wrappers, drink containers, etc.,) shall be removed from the site on a daily basis by the Contractor

**SV3 – Industrial Design Services**

<u>**Contract Tasks/Requirements**</u>

a. As part of the request for design service quotes the contractor will provide a quote on a specifically requested scope of work/Project and provide a firm-fixed price.

b. Contractor to provide end-user programming services, space planning, product specifications, and attend in-person end-user meetings with VA COR.

c. Contractor to develop and provide detailed specifications, conduct product research and assemble materials/finishes as approved by VA COR. Contractor to provide finished specification binder with cut sheets and material samples to the VA per the SOW.

d. Contractor to provide design services such as space planning, schematic design, specifications, finish boards, 2D/3D Rendered models, construction drawings, installation layouts in AutoCAD, Sketch Up, Revit, and Adobe Creative Suite Programs.

e. Contractor to provide expert support in Environmental Product specifications, tracking, and documentation building to obtain LEED Credits for ongoing projects as needed.

f. Contractor to provide Professional Project Management Services including field support, design, move and installation coordination and management of small to large scale projects per the SOW.

g. Contractor shall act in collaboration with VA COR and multi-disciplinary services such as IT, Housekeeping, Facilities, and In-House Construction Teams.

h. Contractor will provide a quote on a specifically requested scope of work/project and provide a firm-fixed price.

9

i.  The contractor shall define and furnish the necessary hardware, software, and all other equipment necessary to accomplish design tasks. Standard equipment in addition to the hardware and software shall include but not limited to: reproduction machines, plotters, paper, pencils/pens/markers/highlighters, fax machines, email and appropriate work space.

j.  The contractor shall be responsible for participating with the COR during the collection of information relevant to the design/redesign of a space. Examples could include personnel interviews, questionnaires and walk-through inspections of the facility, as well as the existing furniture database (if available). Access to an existing furniture database will be determined at the task order level, as needed.

k.  Services shall include site evaluation to ensure proper fit of the furniture within the given space and that all structural and other anomalies are taken into account.

l.  The contractor is responsible for notifying the VA COR of all power requirements regarding location of communication, LAN and power junction boxes, with the expectation that the user will be responsible for providing and locating those junction boxes within 4'- 0" of the ceiling penetration of the power pole location provided by the contractor and within the required distance on the wall for J-boxes.

m.  If electrical power poles are needed in the design, the design shall ensure that power poles do not protrude into main walkways.

n.  The design shall ensure that all outlets included in the design are accessible to the user, free and clear of obstacles.

o.  The design shall not allow more than four cubicles to be served by a single circuit.

p.  The design shall ensure that no existing wall outlets or thermostats are covered or concealed by panels or other systems furniture components.

q.  The contractor shall utilize any existing government product to its maximum as applicable when the project includes add-on parts to existing systems furniture.

r.  All designs of furniture layouts, including original designs and any subsequent redesigns, must be accomplished by a qualified professional Interior Designer with either a four (4) year Interior Design degree from an accredited school by the Council for Interior Design Accreditation (CIDA/FIDER), or 5 years' experience, and one year experience using contractor's software similar to that proposed for this contract.

s.  The contractor shall meet with the VA COR to review the installation drawings prior to submission of a final price quote. Specific, required coordination will be identified at the order level.

t.  The contractor shall provide additional drawings of furniture layouts, if requested by VA organizations in an unlocked electronically transmitted AutoCAD drawing set complete with any attached layers in both .dwg and .pdf formats unless otherwise specified in the contract.

**u.** The hardware/software utilized by the contractor shall perform computerized inventory, computer aided design, automated take-off function, and report generation for all product purchased. The software for this contract shall be compatible software for AutoCAD. The software shall be fully compatible with Microsoft Windows, the most current version.

**v.** Design service shall include an initial complete design with up to three additional revisions prior to final approval. Designs of each location shall include a Panel and Hardware Layout sheet for system and modular furniture: to include all finish colors and fabrics, panel widths (30", 36", 42", etc), in 1/4" = 1'0" scale, in addition to display hardware, keys and locksets shall be included.

**w.** Design sheet layouts of each location shall include a Furniture Power Distribution sheet in 1/4" = 1'0" scale to include: the location of all powered panels, powered components, receptacles, communication ports, power poles, powered raceways, base electrical feeds and building connection points.

**x.** Designs of each location shall include a 3D drawing and/or elevations for clear understanding of objects that cannot be seen in floor plan view.

**y.** Design/redesign timelines shall be expected:

**aa**. Design sheet layouts for all phases of design (initial, revisions and final) of 1-10 workstations shall be received within 3 business days unless otherwise directed in the contract.

**bb.** Design sheet layouts for all phases of design (initial, revisions and final) of 11-25 workstations shall be received within 5 business days unless otherwise directed in the contract.

**cc.** Design sheet layouts for all phases of design (initial, revisions and final) of 26-50 workstations shall be received within 7 business days unless otherwise directed in the contract.

**dd.** Design sheet layouts for all phases of design (initial, revisions and final) of 51-100 workstations shall be received within 10 business days unless otherwise directed in the contract.

**ee**. Design sheet layouts for all phases of design (initial, revisions and final) of 101-200 workstations shall be received within 15 business days unless otherwise directed in the contract.

**ff.** Design sheet layouts for all phases of design (initial, revisions and final) of 200+ workstations shall be received within 20 business days unless otherwise directed in the contract.

**gg.** Within five (5) business days after the final design has been accepted by the requesting organization, a bill of materials detailing all inventory, and all plans including basic floor plan, moveable wall, panel and electrical layouts will be provided to the VA COR for the project.

**hh.** Drawing changes required to a layout due to contractor errors or omissions shall be the responsibility of the contractor and the corrected drawing and bill of materials shall be delivered to the government within three (3) calendar days of the request.

**ii**. Contractor shall make the government aware of any discrepancies to existing conditions not previously identified, immediately to the assigned VA COR in writing, preferably via email.

## Project Manager (PM) Requirements

**a.** The Contractor PM shall be responsible for the performance of all the work the associated with the SOW issued with the individual task orders. The Contractor shall additionally, provided an alternate PM and the name of the primary and alternate who shall act for the contractor PM when the manager is absent shall be designated in writing to the COR.

**b.** Communication with VA COR as pertaining to Requests for Information (RFIs), updates, design changes, Quality Control concerns notifications and installation scheduling in writing by email in addition to any phone conferences or in-person meetings.

**c.** PM shall schedule arrival of the product and installation date.

**d.** PM shall perform an on-site review of space and installation plans at least 5 days in advance with VA Point of Contact (POC), COR or Interior Designer.

**e.** PM shall perform on-site visit and assess area for any encumbrances (loading dock, the path of travel, electrical/data need locations, etc.) that would be a potential delay to the project.

**f.** PM shall be on-site during installation to answer any questions regarding product installation or space/area.

**g.** PM shall perform on-site walk-through and punch list after installation with Lead Installer and VA POC, COR or Interior Designer.

## SV4 –Project Management Turn Key Services with Furniture

## Contract Tasks/Requirements

**a**. Based on provided furniture specifications for the individual order, the contractor shall provide a separate, typed document that matches the VA line item: including *unit price* and *total price* per provided quantity. Products or services that include multiple parts shall be listed within each line item and only the totals for the *whole unit* and *total price per quantity provided* will be provided. No additional line items will be added.

**b.** Package to include PDFs of detailed and dimensioned: Plan, 2-D and 3-D drawings of each workstation (and/or) products with multiple parts list to represent exactly what is being included in the bid and to determine accuracy.

12

   **c.**  Package to include a cut sheet with product detail for any alternate products.

   **d.**  Package to list Labor/Services on a separate line item(s) than the product line items.

   **e.**  Contractor shall be responsible for ordering, tracking and installing all specified items, managing and coordinating all deliveries for the installation schedule as approved by the VA COR.

## Design Contract Tasks/Requirements

   **a.**  As part of the request for design service quotes the contractor will provide a quote on a specifically requested scope of work/Project and provide a firm-fixed price.

   **b.**  Contractor to provide end-user programming services, space planning, product specifications, and attend in-person end-user meetings with VA COR.

   **c.**  Contractor to develop detailed specifications, conduct product research and assemble materials/finishes as approved by VA COR. Contractor to provide finished specification binder with cut sheets and material samples to the VA per the Statement of Work.

   **d.**  Contractor to provide design services such as space planning, schematic design, specifications, finish boards, 2D/3D Rendered models, construction drawings, installation layouts in AutoCAD, Sketch Up, Revit, and Adobe Creative Suite Programs.

   **e.**  Contractor shall comply with all Environmental Product specifications, tracking, and documentation building to obtain Leadership in Energy and Environmental Design (LEED) Credits for ongoing projects as needed.

   **f.**  Contractor to provide Professional Project Management Services including field support, design, move and installation coordination and management from small to large scale projects per the SOW.

   **g.**  Contractor shall act in collaboration with VA COR and multi-disciplinary services such as IT, Housekeeping, Facilities, and In-House Construction Teams.

   **h.**  The contractor shall define and furnish the necessary hardware, software, and all other equipment necessary to accomplish design tasks. Standard equipment in addition to the hardware and software shall include but not limited to: reproduction machines, plotters, paper, pencils/pens/markers/highlighters, fax machines, email and office furniture.

   **i.**  The contractor shall be responsible for the collection of information relevant to the design/redesign of a space. Examples could include personnel interviews, questionnaires and walk-through inspections of the facility, as well as the existing furniture database (if available).

   **j.**  Services shall include site evaluation to ensure proper fit of the furniture within the

13

given space and that all structural and other anomalies are taken into account.

**k.** The contractor is responsible for notifying the COR/Government Project Manager of all power requirements regarding location of communication, LAN and power junction boxes, with the expectation that the user will be responsible for providing and locating those junction boxes within 4'-0" of the ceiling penetration of the power pole location provided by the contractor and within the required distance on the wall for J-boxes.

**l.** If electrical power poles are needed in the design, the Design shall ensure that power poles do not protrude into main walkways.

**m.** Design shall ensure that all outlets included in the design are accessible to the user, free and clear of obstacles.

**n.** Design shall not allow more than four cubicles to be served by a single circuit.

**o.** Design shall ensure that no existing wall outlets or thermostats are covered or concealed by panels or other systems furniture components.

**p.** The contractor shall utilize any existing government product to its maximum as applicable when the project includes add-on parts to existing systems furniture.

**q.** All designs of furniture layouts, including original designs and any subsequent redesigns, must be accomplished by a qualified professional Interior Designer with either a four (4) year Interior Design degree from an accredited school by the Council for Interior Design Accreditation (CIDA/FIDER), or 5 years' experience, and one year experience using contractor's software similar to that proposed for this contract.

**r.** The contractor shall meet with the VA COR to review the installation drawings prior to submission of a final price quote.

**s.** The contractor shall provide additional drawings of furniture layouts, if requested by VA organizations in an unlocked electronically transmitted AutoCAD drawing set complete with any attached layers in both .dwg and .pdf formats unless otherwise specified in the contract.

**t.** The hardware/software utilized by the contractor shall perform computerized inventory, the computer aided design, automated take-off function, and report generation for all product purchased. The software for this contract shall be compatible software for AutoCAD. The software shall be fully compatible with Microsoft Windows, the most current version.

**u.** Design service shall include an initial complete design with up to three additional revisions prior to final approval.

**v.** Designs of each location shall include a Panel and Hardware Layout sheet for system and modular furniture: to include all finish colors and fabrics, panel widths (30", 36", 42", etc.), in 1/4" = 1'0" scale, in addition to display hardware, keys and locksets shall be included.

**w.** Design sheet layouts of each location shall include a Furniture Power Distribution sheet

in 1/4" = 1'0" scale to include:  the location of all powered panels, powered components, receptacles, communication ports, power poles, powered raceways, base electrical feeds and building connection points.

**x.**  Designs of each location shall include a 3D drawing and/or elevations for a clear understanding of objects that cannot be seen in floor plan view.

**y.**  Design/redesign timelines shall be expected:

**aa.**  Design sheet layouts for all phases of design (initial, revisions and final) of 1-10 workstations shall be received within 3 business days unless otherwise directed in the contract.

**bb.**  Design sheet layouts for all phases of design (initial, revisions and final) of 11-25 workstations shall be received within 5 business days unless otherwise directed in the contract.

**cc.**  Design sheet layouts for all phases of design (initial, revisions and final) of 26-50 workstations shall be received within 7 business days unless otherwise directed in the contract.

**dd**.  Design sheet layouts for all phases of design (initial, revisions and final) of 51-100 workstations shall be received within 10 business days unless otherwise directed in the contract.

**ee.**  Design sheet layouts for all phases of design (initial, revisions and final) of 101-200 workstations shall be received within 15 business days unless otherwise directed in the contract.

**ff.**  Design sheet layouts for all phases of design (initial, revisions and final) of 200+ workstations shall be received within 20 business days unless otherwise directed in the contract.

**gg.**  Within five (5) business days after the final design has been accepted by the base requesting organization, a bill of materials detailing all inventory, and all plans including basic floor plan, moveable wall, panel and electrical layouts will be provided to the COR/ Government Project Manager for the project.

**hh**.  Drawing changes required to a layout due to contractor errors or omissions shall be the responsibility of the contractor and the corrected drawing and bill of materials shall be delivered to the government within three (3) calendar days of the request.

**ii.**  Contractor shall make the government aware of any discrepancies to existing conditions not previously identified.

**Project Manager (PM) Requirements**

**a.**  PM shall be responsible for all communication with VA Interior Designer as pertaining to Requests for Information (RFIs), updates, design changes, notifications and installation scheduling in writing by email in addition to any phone conferences or in- person

meetings.

**b.** PM shall represent the Contractor, not the installation company.

**c.** PM shall perform an on-site assessment of product and replacement of damaged product due to freight delivery.

**d.** PM shall schedule arrival of the product and installation date.

**e.** PM shall perform an on-site review of space and installation plans at least 5 business days in advance with VA COR.

**f.** PM shall perform on-site visit and assess the area for any encumbrances (loading dock, path of travel, electrical/data need locations, etc.) that would be a potential delay to the project.

**g.** PM shall be on-site during installation to answer any questions regarding product installation or space/area.

**h.** PM shall perform on-site walk-through and punch list after installation with lead Installer and VA COR.

**i.** PM shall provide final sign-off for completion of installation.


**Protection of Property**

a. The Contractor shall perform an inspection of the buildings and grounds with the COR prior to commencing work. Contractor shall protect all items from damage. The Contractor shall take precaution against damage to the buildings, grounds and furnishings. The Contractor shall repair or replace any items related to buildings or grounds damaged accidentally, or on purpose due to actions by the Contractor, utilizing materials of the same quality, size, grade and color, to match existing work.

b. To ensure that the contractor shall be able to repair or replace any items, components, on the buildings or grounds damaged due to negligence and/or actions taken by the Contractor. The Contractor shall communicate with the COR to resolve all repairs beyond simple surface cleaning. Concurrence of the COR is required before the Contractor may perform any significant repair work. In all cases, repairs shall utilize materials of the same quality, size, texture, grade and color to match adjacent existing work.

c. The Contractor shall be responsible for the security of the areas in which the work is being performed at all times prior to completion. The Contractor shall maintain accountability and control of any keys provided, and shall return them to the COR upon completion of the work.

d. Contractor shall provide floor protection while working in all VA facilities. All material handling equipment shall have rubber wheels.

**Delivery**

   a. Contractor shall contact the COR at least 14 business days prior to start of work/shipping to ensure that the building is ready for install.

   b. In the event there is a delay in delivery, Contractor must notify the assigned VA COR immediately in writing, preferably via email.

   c. Contractor shall provide the COR with scheduled date and time that the delivery truck will be arriving at least 24 hours minimum in advance.

   d. The contractor must ensure that the driver of the delivery vehicle has copies of the delivery order and shall not attempt to deliver any items before the scheduled delivery date.

   e. Contractor must be bonded and insured in accordance with standard commercial practices and state requirements for vehicles and trailers.

   f. Contractor shall provide 30 Days Free Storage once all items have been received from the bill of materials at a conditioned facility that meets all building requirements including but not limited to the sprinkler, security, safety, temperature and environmental controls – as not to void furniture warranties.

**Receive and Unload**

   a. If the Contractor is unable to complete the assembly and placement of all unloaded items before the end of the workday, the Contractor will be responsible for moving these items to a secure location, until the next available work day. The Contractor will be responsible for moving the items from the overnight storage site to its designated position in the building.

   b. The Contractor shall verify and inspect all items. Any and all deficiencies (damage/overage/shortage) shall be brought to the attention of the COR.

   c. The Contractor shall store damaged items in the location designated by the COR. The Contractor shall maintain a complete file of all documents relating to each discrepancy and copies of all Discrepancy Reports shall be forwarded to the COR on a daily basis.

   d. Contractor shall repair or coordinate with the COR for replacement of damaged, defective, or missing items.

**Assembly and final acceptance**

   a. Contractor shall be responsible for following all safety and security guidelines within the area in which work is being performed, to include securing and contractor-owned tools or equipment, and any on-site storage being utilized.

   b. The contractor shall install all furniture in accordance with each requirement statement and basic component floorplan, panel plan and electrical plan, designed and provided by the contractor with each task order.

17

c. Contractor shall uncrate all items received and perform all required assembly in accordance with the manufacturers' instructions.

d. Contractor shall prevent its personnel from entering any area other than the designated work area.

e. The Contractor shall maintain a means of egress within all designated work areas to comply with fire codes.

f.
Contractor shall inspect to ensure that the furniture is free of surface dirt, clean and polished, free of defects, and that the installation is complete and ready for use.

g. The Contractor shall do a final walkthrough with COR and provide a punch list before releasing crew for the day.

## Jobsite Cleanliness

a. Contractor will be responsible for the removal and disposal of all trash/debris connected with uncrating and assembling all furniture items installed under this contract.

b. Final Acceptance by the Government will not occur until **all** installed furniture items have been wiped cleaned and debris/dust connected with installation is removed from the VA site.

c. Recyclable cardboard products shall be disposed of in accordance with applicable statutes, in respective containers. The contractor is responsible for providing trash containers at an offsite facility.

d. Packing materials will not be stored in the buildings for any period exceeding 24 hours.

e. The Contractor shall ensure its personnel eat, drink, or smoke only in designated areas.

f. Personal trash (food wrappers, drink containers, etc.,) shall be removed from the site on a daily basis by the Contractor

## Warranty Items

a. The warranty of an item is to run from the date of acceptance of the products/services by the Government.

b. The Contractor agrees to, without cost to the Government, repair or replace of all parts and material which are found to be defective during the warranty period. The cost of installation and travel of replacement material and parts shall be borne by the Contractor.

## 7.0 Kickoff Meeting

The prime contractor(s) shall participate in a contract kickoff meeting, in accordance with the terms of the first task order.

18

**8.0 Quality Control Plan**

The Contractor is responsible for Contract Management and Quality Control. The contractor shall develop and maintain an effective quality control program to ensure services are performed in accordance with this SOW.  The contractor shall develop and implement procedures to identify, prevent, and ensure non-recurrence of defective services.  The contractor's quality control program is the means by which the contractor ensures their work complies with the requirement of the contract.

The Contractor shall be responsible for quality control (QC) for all work accomplished during the performance of this contract. Work and documentation produced by the contract personnel may be regularly reviewed by the Contracting Officer Representative (COR).

[END OF DOCUMENT]

Attachment 15
Service Technical Evaluation Questions

| |
|---|
| ***SV1 – Furniture, Design and Installation Support*** |
| 1. Did the Contractor provide a staffing plan? |
| 2. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? |
| 3. Did the Contractor describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility? |
| 4. Did the Contractor describe the measures in place to protect from damage and against loss? |
| 5. Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? |
| 6. Did the Contractor describe the process used to perform a walkthrough and document punch list items? |
| 7. Did the Contractor describe the process used regarding a warranty repair? |
| ***SV2 – Installation and Reconfiguration Services*** |
| 8. Did the Contractor provide a staffing plan? |
| 9. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? |
| 10. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? |
| 11. Did the Contractor describe the measures in place to protect from damage and against loss? |
| 12. Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? |
| 13. Did the Contractor describe the process used to perform a walkthrough and document punch list items? |
| 14. Did the Contractor describe the process used regarding a warranty repair? |
| 15. Did the contractor describe the technical capability of staff producing AutoCAD / and or PDF drawings of the as-built furniture installation? |
| 16. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? |
| 17. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? |
| ***SV3 - Industrial Design Service*** |
| 18. Did the Contractor provide a staffing plan? |
| 19. Did the Contractor describe the qualifications and experience of the staff that will provide the requested services? |
| 20. Did the Contractor describe the relevant experience of the staff that will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? |
| 21. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? |
| 22. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? |
| 23. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? |
| 24. Did the Contractor describe the experience of the staff regarding life safety |

**Appx166**

| |
|---|
| code, infection control standards, and patient privacy standards? |
| *SV4 - Advanced Project Management Turn Key Services with Furniture* |
| 25. Did the Contractor provide a staffing plan? |
| 26. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? |
| 27. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? |
| 28. Did the Contractor describe the measures in place to protect from damage and against loss? |
| 29. Did the Contractor experience do the people who will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? |
| 30. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? |
| 31. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? |
| 32. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? |
| 33. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? |

DATE: 03 APR 2018

To:    Office Design Group
       Attn: Ralph Kravitz
       9963 Muirlands Blvd
       Irvine, CA 92618

Reference:  RFP VA119-17-R-0260, Region 1 VHA Healthcare Furniture IDIQ

Dear Mr. Kravitz;

Thank you for providing an offer in response to solicitation VA119-17-R-0260 for VHA Healthcare Furniture and Associated Services for Region 1.  As a result of protests filed with the Government Accountability Office (GAO), the Department of Veterans Affairs took corrective action and re-evaluated all proposals.

In accordance with FAR 16.500, the Contracting Officer is providing notification to the unsuccessful offeror after award has been made.  This award notification also constitutes as a post award debrief for the referenced solicitation in accordance with FAR 15.506.

All proposals were reviewed for responsiveness to the requirements and submission in accordance with instructions outlined in the Request for Proposal (RFP) and all amendments issued. The Government evaluated the proposals that were determined to be responsive in accordance with the evaluation procedures outline in the RFP.  As indicated in the solicitation, awards would be made to the proposal(s) deemed to be the best value to the Government, with Factor 1 (Technical Capability) more important than Factor 2 (Past Performance); Factor 2 is more important than Factor 3 (Price); and when combined, the non-price factors (Factors 1 and 2) are significantly more important than Factor 3 (Price).  Also in accordance with the solicitation, an "Unacceptable Rating" for any Technical section will result in an overall "Unacceptable" rating for the Technical Factor.  The Government reserved the right to issue IDIQs without discussions based upon the initial evaluation and will not consider subsequent revisions of the offeror's proposal.

The evaluation of Office Design Group's proposal is summarized as follows:

Technical Capability: **Unacceptable**

> Subfactor 1 Attachment 3: Product Literature: **Acceptable. T**he product literature included in the proposal did not meet the MTRs on 4 of the 13 standard items.

> > SP2:  Only able to validate a, b, c, d, e, f, i, j, and p.

> > HAW2: Only able to validate c, e, f, g, and i.

> > WSG1:  Only able to validate a, c, and d; and options a, b, d, m, n, o and table.

> > PC1:  Only able to validate c; and options a, e, and i.

Subfactor 2 Attachment 2: MTRs Self-Certification:  **Outstanding**

Subfactor 3 Attachment 15: Service Requirement of SOW: **Unacceptable**
The Offeror's response to the service technical requirements missed the majority of the
requirements under SV1- SV4.  (See narrative below).  The consensus score for this
section is 12 out of 66 points **(UNACCEPTABLE).**

SV1 Furniture, Design and Installation Support:  The Offeror met two (2) of the
seven (7) requirements of SV1.  The Offeror did not provide a staffing plan
required by question 1.  The Offeror did not describe the process of inventory,
cataloging and protecting VA property at the contractor's storage facility required
by question 3.  The Offeror did not describe the measures in place to protect
from damage and against loss required by question 4.  The Offeror did not
provide a description of materials used and how they are applied to properly
protect VA property during an installation required by question 5.  The Offeror did
not describe the process used regarding a warranty repair required by question
7.  The TET gave the Offeror a score of 4 out of a possible 14 points.

SV2 Installation and Reconfiguration Services:  The Offeror met two (2) of the ten
(10) requirements of SV2.  The Offeror did not provide a staffing plan required by
question 8.  The Offeror did not describe the process of inventory, cataloging and
protecting VA property at your storage facility required by question 10.  The
Offeror did not describe the measures in place to protect from damage and
against loss required by question 11.  The Offeror did not provide a description of
materials used and how they are applied to properly protect VA property during
an installation required by question 12.  The Offeror did not describe the process
used regarding a warranty repair required by question 14.  The Offeror did not
describe the technical capability of staff producing AutoCAD / and or PDF
drawings of the as-built furniture installation required by question 15.  The Offeror
did not describe the experience of the people who are providing services
regarding previous work in a federal facility and/or healthcare facility required by
question 16.  The Offeror did not describe the experience of the staff regarding
life safety code, infection control standards, and patient privacy standards
required by question 17. The TET gave the Offeror a score of 4 out of a possible
20 points.

SV3 Industrial Design Service:  The Offeror met one (1) of the seven (7)
requirements of SV3.  The Offeror did not provide a staffing plan required by
question 18.  The Offeror did not describe the relevant experience of the staff
that will provide the requested service have with space planning for federal
facilities and healthcare facilities, VA programming guides and design guides
required by question 20.  The Offeror did not describe the relevant experience of
the staff that will provide the requested service have with space planning for
federal facilities and healthcare facilities, VA programming guides and design
guides required by question 21.  The Offeror did not describe the Hardware and
Software used to produce digital and physical hard copy drawings of design work
and prepare installation drawings required by question 22.  The Offeror did not
describe the experience of the people who are providing services regarding
previous work in a federal facility and/or healthcare facility required by question
23.  The Offeror did not describe the experience of the staff regarding life safety
code, infection control standards, and patient privacy standards required by

question 24.  The TET gave the Offeror a score of 2 out of a possible 14 points.

SV4 Advanced Project Management Turn Key Services with Furniture:  The Offeror met one (1) of the nine (9) requirements of SV4.  The Offeror did not provide a staffing plan required by question 25.  The Offeror did not describe the process of inventory, cataloging and protecting VA property at your storage facility required by question 27.  The Offeror did not describe the measures in place to protect from damage and against loss required by question 28.  The Offeror did not provide the experience of the people who will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides required by question 29.  The Offeror did not describe how the designer meets the qualification requirements established in the SOW required by question 30.  The Offeror did not describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings required by question 31.  The Offeror did not describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility required by question 32.  The Offeror did not describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards required by question 33.  The TET gave the Offeror a score of 2 out of a possible 18 points.

Subfactor 4 Attachment 8: Sample Project: The technical portion of the sample project met all of the required elements as spelled out in Attachment 4 Project Sample Requirements except for question 8 of the General Section and question 13 of the Space Requirement Section.  The consensus score for this section is 52 out of 56 **(OUTSTANDING)**.

General:  The Offeror met eight (8) of the nine (9) requirements under the General Requirements section of Attachment 8.  The Offeror did not provide a design concept for how to meet the client's goals required by question 8.  The Offeror received 16 points out of 18 possible points.

Space Requirement:  The Offeror met 18 of the 19 requirements under the Space Requirements section of Attachment 8.  The Offeror did not provide all requirement items of question 13.  The Offeror received 36 points out of 38 possible points.

Past Performance:

Confidence rating is **Satisfactory**

Relevancy rating is **Good.**

Price:  Proposed pricing was evaluated for fair and reasonableness.

Based on the overall evaluation of Office Design Group's proposal, Office Design Group was not selected for an award of an Indefinite Delivery Indefinite Quantity (IDIQ) within Region 1.

IDIQ awards within Region 1 were established with the following:

A. Pomerantz & Company, 123 S. Broad St, STE 1260, Philadelphia, PA 19109
Coronado Distribution Company Inc, 8653 Avendia Costa Norte, San Diego, CA 92154
Cuna Supply LLC, 5455 Dashwood St, STE 500, Bellaire, TX 77401
GovSolutions LLC, 108 S Birdneck Road, Virginia Beach, VA 23451
JPL & Associates, 1520 Pelican Point Dr., Suite BA151, Sarasota, FL 34231
JohnsonDanforth & Associates, 2200 N. Rodney Parham Rd, Suite 210, Little Rock, AR 72212
SDV Office Systems LLC, 26 MaCallan LN, Ashville, NC 28805
The Russell Group, 1250 Arthur E Adams Drive, STE 204, Columbus, OH, 43221
Veteran Office Design, 3216 Chaucer Dr., Charlotte, NC 28210

No response is required unless a basis exists to challenge the small business status of the apparently successful offeror.  Thank you for submitting a proposal to support this Department of Veterans Affairs requirement; we look forward to working with you on future requirements.

Sincerely,

*Vicki Whiteman*

*Vicki Whiteman* - Contracting Officer
Office of Acquisition Operations Strategic Acquisition Center
Department of Veterans Affairs
10300 Spotsylvania Avenue, Suite 400
Fredericksburg, VA 22408
Phone: (202) 578-8028

**Joseph Whitcomb**

| | |
|---|---|
| **From:** | Whiteman, Vicki L. <Vicki.Whiteman@va.gov> |
| **Sent:** | Thursday, April 5, 2018 2:19 PM |
| **To:** | Joseph Whitcomb |
| **Cc:** | Rusty Smith; ralph@teamodg.com |
| **Subject:** | RE: Office Design Group Notification for Solicitation VA119-17-R-0260, 0261, 0262, 0263, 0264 |

Mr. Whitcomb,

In accordance with FAR 15.506(d), specific debriefing information was provided for the offeror's proposal and includes:

(1) The Government's evaluation of the significant weaknesses or deficiencies in the offeror's proposal, if applicable;

    a. ODG's notification and debrief letter(s) dated 3 April 2018 includes detailed information of the Government's evaluation of ODG's proposal, including the identification of weaknesses or deficiencies in the proposal.

(2) The overall evaluated cost or price (including unit prices) and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror;

    a. The overall evaluated cost or price, if applicable, of the successful offeror(s), as well as the debriefed offeror (ODG) is not applicable. As stated in the solicitation, price will not be evaluated adjectivally or assigned a score, and therefore is not applicable. All successful offerors received an overall technical rating of good. ODG's notification and debrief letter(s) dated 3 April 2018 includes past performance information in ODG's proposal.

(3) The overall ranking of all offerors, when any ranking was developed by the agency during the source selection;

    a. No overall ranking of all offerors was developed by the agency during source selection and therefore is not applicable.

(4) A summary of the rationale for award;

    a. As stated in the solicitation, the Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. Multiple IDIQ's will be issued to the responsible contractors whose proposals represent the best value to the Government. The Government reserves the right to issue IDIQs without discussions based upon the initial evaluation. Proposals that merely restate the solicitation requirements or state that the requirements will be met with no supporting rationale will be considered ineligible for award. Each proposal will be evaluated in strict accordance with its written content.

(5) For acquisitions of commercial items, the make and model of the item to be delivered by the successful offeror; and

    a. Not applicable. Each offeror proposed its own comprehensive catalog, and as such, complete catalogs of successful offerors cannot be provided to unsuccessful offerors. If your client feels this information is still required, please follow the FOIA procedures to obtain contract-specific information.

(6) Reasonable responses to relevant questions about whether source selection procedures contained in the solicitation, applicable regulations, and other applicable authorities were followed.

1

a. Appropriate source selection procedures contained in the solicitation, applicable regulations and other applicable authorities were followed.

v/r,

*Vicki Whiteman*

Contracting Officer, Chief, Procurement Division C-1
Strategic Acquisition Center
Office of Procurement, Acquisition, and Logistics
Department of Veterans Affairs
10300 Spotsylvania Avenue, Suite 400
Fredericksburg, VA 22408
Phone: (202) 578-8028
Fax: (540) 479-8500
Email: Vicki.Whiteman@va.gov

*Please print only when necessary.*

*Confidentiality Notice:*

*This email message and any attachments to it, is intended only for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient, but do not wish to receive communications through this medium, please so advise the sender immediately.*

**From:** Joseph Whitcomb [mailto:joe@whitcomblawpc.com]
**Sent:** Thursday, April 05, 2018 11:58 AM
**To:** Whiteman, Vicki L.
**Cc:** Rusty Smith; ralph@teamodg.com
**Subject:** [EXTERNAL] RE: Office Design Group Notification for Solicitation VA119-17-R-0260, 0261, 0262, 0263, 0264

Vicki,

Pursuant to FAR part 15.506, (d) At a minimum, the debriefing information shall include—
(1) The Government's evaluation of the significant weaknesses or deficiencies in the offeror's proposal, if applicable;
Your office's unsuccessful offeror letter is not meaningfully different from the information ODG successfully protested in the last iteration of this procurement. As stated in that protest, Attachment 15 was not a governing document and per your office's instructions, was informational only. Also, each of your evaluation issues was addressed in ODG's December protest. Your April 4, 2018, document does not address ODG's assertions in that protest.
(2) The overall evaluated cost or price (including unit prices), and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror;
This is completely missing from the April 4, 2018 letters.
(3) The overall ranking of all offerors, when any ranking was developed by the agency during the source selection;
This is completely missing from the April 4, 2018 letters.
(4) A summary of the rationale for award;
This is only given as to the basis for rejecting ODG's proposal, not for the basis of award.
(5) For acquisitions of commercial items, the make and model of the item to be delivered by the successful offeror; and
This is missing from the April 4 letters.

2

(6) Reasonable responses to relevant questions about whether source selection procedures contained in the solicitation, applicable regulations, and other applicable authorities were followed.
ODG would appreciate an opportunity to submit questions, starting with responses to the items listed 1-5 above. Please also review ODG's attached GAO protest submitted in December 2017, which addresses the issues listed in your newest "unsuccessful offeror" letter.

Vicki, this is the third time ODG will have protested the same procurement and the second time your office has dug in its heals on a meaningful debriefing.  This is an IDIQ and task orders must still be competed.  Your office's interpretation of the solicitation essentially invites offerors to embellish and make up anything they want since the actual requirements of the task orders aren't released yet.  Your office gave ODG high marks on its submission regarding a hypothetical task order in its most recent submission.  This demonstrates that ODG is fully capable to perform this contract and is representative of how things would go in reality.  Please revisit with your team, so ODG can forgo the time and expense of another bid protest.  No one is injured by having another qualified offeror on a BPA.

If I have not heard back from you by tomorrow morning, I will assume your April 4, 2018, unsuccessful offeror letters are the last word from your office and will consult my client accordingly.

Respectfully yours,

Joseph A. Whitcomb, Esq.
Whitcomb, Selinsky, McAuliffe, PC
2000 S. Colorado Blvd. Tower One
Suite 9500
Denver, CO 80222
www.whitcomblawpc.com
(303)534-1958 office (303)573-5461 direct
(303)534-1949 fax  (303)350-9183 cell
Schedule a Meeting

---

**From:** Whiteman, Vicki L. [mailto:Vicki.Whiteman@va.gov]
**Sent:** Thursday, April 5, 2018 7:17 AM
**To:** Joseph Whitcomb <joe@whitcomblawpc.com>
**Cc:** Rusty Smith <rusty@teamodg.com>; ralph@teamodg.com
**Subject:** RE: Office Design Group Notification for Solicitation VA119-17-R-0260, 0261, 0262, 0263, 0264

Mr. Whitcomb,

Please provide a list of any details that are missing which your client is entitled to under FAR Part 15.

v/r,

**Vicki Whiteman**
Contracting Officer, Chief, Procurement Division C-1
Strategic Acquisition Center
Office of Procurement, Acquisition, and Logistics
Department of Veterans Affairs
10300 Spotsylvania Avenue, Suite 400
Fredericksburg, VA 22408
Phone: (202) 578-8028
Fax: (540) 479-8500

Email: Vicki.Whiteman@va.gov

*Please print only when necessary.*

*Confidentiality Notice:*

*This email message and any attachments to it, is intended only for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient, but do not wish to receive communications through this medium, please so advise the sender immediately.*

**From:** Joseph Whitcomb [mailto:joe@whitcomblawpc.com]
**Sent:** Thursday, April 05, 2018 8:33 AM
**To:** Whiteman, Vicki L.
**Cc:** Rusty Smith; ralph@teamodg.com
**Subject:** [EXTERNAL] RE: Office Design Group Notification for Solicitation VA119-17-R-0260, 0261, 0262, 0263, 0264

That is inaccurate. The FAR allows for the submission of questions and I believe there are details missing that OGC is entitled to under FAR part 15.

Respectfully yours,

Joseph A. Whitcomb, Esq.
Whitcomb, Selinsky, McAuliffe, PC
2000 S. Colorado Blvd. Tower One
Suite 9500
Denver, CO 80222
www.whitcomblawpc.com
(303)534-1958 off. (303)573-5461 direct (303)534-1949 fax (303)350-9183 cell

**From:** Whiteman, Vicki L. <Vicki.Whiteman@va.gov>
**Sent:** Thursday, April 5, 2018 6:27:25 AM
**To:** Joseph Whitcomb
**Cc:** Rusty Smith; ralph@teamodg.com
**Subject:** RE: Office Design Group Notification for Solicitation VA119-17-R-0260, 0261, 0262, 0263, 0264

Mr. Whitcomb,

Per the notification submitted to Office Design Group on 3 April 2018, the correspondence included a detailed evaluation summary of Office Design Group's proposal. As stated in the notification, the detailed evaluation summary (letters attached to the email correspondence) satisfies the post award debrief requirements for the referenced solicitation(s) in accordance with FAR 15.

v/r,

**Vicki Whiteman**

4

**Appx175**

Contracting Officer, Chief, Procurement Division C-1
Strategic Acquisition Center
Office of Procurement, Acquisition, and Logistics
Department of Veterans Affairs
10300 Spotsylvania Avenue, Suite 400
Fredericksburg, VA 22408
Phone: (202) 578-8028
Fax: (540) 479-8500
Email: Vicki.Whiteman@va.gov

*Please print only when necessary.*

*Confidentiality Notice:*

*This email message and any attachments to it, is intended only for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient, but do not wish to receive communications through this medium, please so advise the sender immediately.*

**From:** Joseph Whitcomb [mailto:joe@whitcomblawpc.com]
**Sent:** Wednesday, April 04, 2018 4:28 PM
**To:** Whiteman, Vicki L.
**Cc:** Rusty Smith
**Subject:** [EXTERNAL] Office Design Group Notification for Solicitation VA119-17-R-0260, 0261, 0262, 0263, 0264

Ms. Whiteman,

On behalf of my client, Office Design Group, we request a formal debriefing on the above styled solicitation pursuant to FAR Part 15.

Respectfully yours,

Joseph A. Whitcomb, Esq.
Whitcomb, Selinsky, McAuliffe, PC
2000 S. Colorado Blvd. Tower One
Suite 9500
Denver, CO 80222
www.whitcomblawpc.com
(303)534-1958 office (303)573-5461 direct
(303)534-1949 fax  (303)350-9183 cell
Schedule a Meeting

April 10, 2018

General Counsel
Government Accountability Office
**protests@gao.gov**
Attn: Procurement Law Control
Group
441 G St NW
Washington DC 20548

Ms. Vicki Whiteman
Contracting Officer 36C10G
Strategic Acquisition Center-Fredericksburg
U.S. Department of Veterans Affairs
10300 Spotsylvania Ave., STE 400
Fredericksburg, VA 22408
vicki.whiteman@va.gov

On Behalf of:
Office Design Group
c/o Rusty Smith
9963 Muirlands Blvd.
Irvine, CA  92618

Mr. Robert Wilson
Contracting Specialist 36C10G
Strategic Acquisition Center - Fredericksburg
U.S. Department of Veterans Affairs
10300 Spotsylvania Ave., STE 400
Fredericksburg, VA 22408
robert.wilson11@va.gov

**THIS DOCUMENT CONTAINS PROTECTED MATERIAL AND SHOULD ONLY BE RELEASED UNDER A PROTECTIVE ORDER.**

**SUBJECT:  Post Award Protest, Solicitation VA119-17-R-0260, 0261, 0262, 0263, 0264**

Office Design Group ("ODG" or "Protestor") through its undersigned counsel submits this Protest regarding the subject procurement to the U.S. Government Accountability Office (GAO) for action as set forth below.

<u>**Timeliness**</u>

On May 5, 2017, the VA issued the subject solicitation for healthcare Furniture Requirement(s) (Enclosure 1).  The VA sent its notice of intent to award on December 14, 2017 (Enclosure 2).  The Protestor requested a debriefing on December 15, 2017. The VA conducted its formal, telephonic debriefing on December 19, 2017.  On December 26, 2017, OGC timely filed a GAO bid protest. (See GAO File B-415853-57).  The VA issued its notice of intent to conduct corrective action.  (See Exhibit A).  In that Notice of Corrective Action, the VA stated

that it would reevaluate proposals and make new award decisions.  (Id.)  The GAO dismissed ODG's protest as academic the same day.

Until April 3, 2018, the VA took no new action on the procurement.  However, on April 3, 2018, the VA issued new Unsuccessful Offeror letters essentially repeating verbatim its basis for finding ODG technically unacceptable from December 2017.  (See Exhibits B-F).  ODG requested a formal debriefing under FAR Part 15 on April 4, 2018. (See Exhibit G, page 5).  The Agency responded to that request on April 5, 2019.  (Id.)

Pursuant to 4 C.F.R.(a)(2), GAO bid protests on any subject not apparent before the debriefing are due to the GAO within 10 days of the debriefing.  Accordingly, the Protest is timely.

**CICA Stay**:

ODG requests that the VA stay the performance of this contract until the GAO decides the merits of this protest. ODG submits this bid protest within the later of 10 days after the date of the contract award; or the date that is 5 days after the debriefing date offered to an unsuccessful offeror for any debriefing that is requested and, when requested, is required.  31 U.S.C.A. § 3553 (West)

**Interested Party**

Pursuant to 4 C.F.R. § 21.0, an "interested party means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of a contract or by the failure to award a contract."  4 C.F.R. § 21.0.  ODG is an interested party, because it is an eligible Service-Disabled Veteran-Owned Small Business ("SDVOSB") and submitted an offer in response to the subject solicitation ("RFP").  Therefore, it has a direct economic interest in the outcome of this protest.

**Basis for Protest**

ODG brings this post award bid protest on the following grounds:

1.      The SSA did not evaluate ODG's proposal pursuant to the Evaluation Criteria listed in

the solicitation. This failure was prejudicial to ODG and was arbitrary, capricious, and violative

of the FAR.

2.      The SSA disparately evaluated ODG's proposal.  ODG avers that because the

procurement is an IDIQ, which necessarily means that the specific VA requirements are still

forthcoming, the VA must have held the potential awardee's procurement to a different standard

than it did ODG's.  No offeror could have provided, as an example, a detailed staffing plan (one

of ODG's alleged deficiencies) when the precise requirements for five different regions are still

unannounced.  Also, when the VA attempted to compete this procurement in 2016, the record

showed (after much effort on ODG's part to secure the administrative record) that the VA had

disparately evaluated the proposals, finding fault in ODG's submission where it had winked at

the same shortcomings in the awardee's proposals.

3.      The SSA engaged in unequal and prejudicial discussions with the awardees.  ODG makes

this allegation on two grounds. Firstly, this is the second time the VA has competed this

requirement.  The last time was in 2016.  ODG learned during that protest that the VA had

engaged in unequal and prejudicial discussions with other offerors.  Secondly, ODG believes that

since all five regions for this procurement were awarded to the same six offerors and given the

vagueness of the SOW, the record will demonstrate that the VA engaged in unequal discussions

with the awardees and that ODG was prejudiced by those discussions.  Any presumption of

regularity the VA would normally enjoy is overcome by the fact that the VA already

demonstrated a propensity to engage in unequal discussions when trying to compete this contract

in 2016.

## Statement of the Case

**Basis of Award and Grounds for Protest**

In its Notice of Intent to Award and debriefing, the VA related that ODG's proposal was

technically unacceptable, because, under Subfactor 3:

"Subfactor 3 Attachment 15: Service Requirement of SOW: **Unacceptable**

The Offeror's response to the service technical requirements missed the majority of the requirements under SV1- SV4. (See narrative below). The consensus score for this section is 12 out of 66 points (UNACCEPTABLE)."  (Exhibits B-F. page 2.)

The Notice then details each of the ways ODG's proposal did not satisfy the criteria in Attachment 15.  (Id., pages 2-3).

As ODG argued in its December 2017 protest, the Evaluation Factors and Sub-factors in the Solicitation do no mention Attachment 15 and do not state that a failure to answer the questions in that attachment will result in a determination that the proposal is technically unacceptable.  Moreover, the words "attachment 15" only appear in the Solicitation once, in the Table of Contents. The Q&A provided during the procurement process states that Attachments 8 and 15 are informational only, and will be used to evaluate proposals.  (Exhibit G, page 2, Answer 14).

The words "complete details" also do not appear anywhere in the solicitation.  However, ODG's alleged failure to provide "complete details" in response to questions that were not a part of the evaluation criteria were the VA's sole reason for rejecting the Company's technical proposal in December 2017.  Now, after reevaluating proposals, the VA has offered the same reasoning, however differently packaged.

The difficulty for the VA is that it never announced, as it must, that it planned to use responses to Attachment 15 as the rubric against which proposals were evaluated.  As ODG will argue below, the VA's actions violate the FAR, GAO case precedent and are arbitrary, capricious, contrary to law, and unsupported by the facts.

**Evaluation Criteria and ODG's Responses**

Section (3) of the Evaluation Criteria, the Solicitation reads:

The Government will evaluate the contractor's Service Narrative to be able to meet all services as defined in the Statement of Work. This must cover all services required under SV1 Furniture, Design, and Installation Support Services; SV2 Installation and Reconfiguration Services; SV3 Industrial Design Services; SV4 Advanced Project Management Turn-key Services with Furniture. (Attachment H, Solicitation, pages 33-34, of 59).

Section 3 (referred to in the Notice as Subfactor 3) of the Solicitation states "Key elements are listed below:" (Id., page 33).  Under each "Key element" listed below is ODG's corresponding submission.  While ODG does not stipulate that a failure to provide a response to each "Key element" should result in a finding that it's proposal was technical unacceptable, the evidence demonstrates that ODG did provide a written narrative sufficient to satisfy the technical requirements of the solicitation.

a.      *Provide a staffing plan to include qualifications and experience working in a healthcare environment for key personnel (Project Manager/lead installer and Interior Designer(s).*

*(Exhibit H, Solicitation, pages 33)*

**Response**:

Qualified Staff **-** Assigns dedication & qualified staff to all VA Projects

**-** Project Managers have at least 10 years of experience

**-** Interior Designer has at least 10 years of experience

**-** Installation Supervisors have at least 5 years of experience

Training **-** Ensure that all staff is trained on the most current technology and manufacturer offerings within the industry for proper design and installation completion

**-** Installers are trained on specific manufacturer installations procedures

Assignment of **-** Each VA Project is assigned a dedicated Project Manager that works Personnel with VA representatives during all aspects of a project from kick-off through completion ensuring that data is captured through one source eliminating potential missed information when through multiple POC's

**-** The dedicated Project Manager coordinates efforts of all personnel to include installers, movers, designers, and the back office procurement team ensuring that all requirements on the project are addressed and completed.  (Exhibit I, page 005)

*b.        Describe the process of inventory, cataloging, protecting existing VA furniture and providing temporary storage for existing furniture. Include any materials that will be used to protect the furniture from any damage while in contractor's possession. (Exhibit H, Solicitation, pages 33)*

**Response**:

The only mention of existing furnishing in the SOW is as follows, "Contractor may be required to remove and/or relocate existing VA furnishings in coordination with VA Logistic Management Service and Interior Designer per the task order SOW."  (Exhibit J, SOW, page 3).  Therefore, ODG was prepared to provide a plan for protecting the equipment once a TO was issued.  Any plan ODG provided prior to that would have been necessarily general at best.

*c.        Describe the process of protecting VA property (building) during installation. Include any materials that will be used to protect the building, architectural elements, and finishes or previously installed furniture. (Exhibit H, Solicitation, pages 33)*

**Response**:

Project Manager and Installation Supervisor ensure that all personnel working the job site adhere to the rules outlined for each particular installation site including the placement of all proper

building protection prior to furniture delivery, proper removal of all trash, and proper cleaning of space upon completion. (Exhibit I, page 006)

d.      *Describe process for making corrections during final walkthrough and documenting punchlist items with COR. (Exhibit H, Solicitation, pages 34)*

**Response**:

Perform *punch* walk with onsite client, if applicable. (Exhibit I, page 008)

Punch item lead times (Exhibit I, page 009)

Coordinate a post installation walk through A *Punch List Report* that identifies

with Project Manager and Installation outstanding deficiencies

Supervisor to identify outstanding issues A *Plan for Resolution* to include target

dates of completion A written *Confirmation of Completion* (Exhibit E, page 004)

e.      *Describe the process used for warranty repairs. (Exhibit H, Solicitation, pages 34)*

**Response**:

Installation - A final walkthrough of the space is conducted to ensure that all

Completion product was delivered/installed per the approved installation drawings

Checks & - Products are inspected to ensure proper working condition of all

Walkthrough componentry- Product deficiencies are documented during the final walk thru and

resolutions and timelines for replacements are discussed with VA

representatives immediately following walkthrough (Exhibit I, page 006)

Further, the SOW states, "The Contractor agrees to furnish, without cost to the Government,

replacement of all parts and material which are found to be defective during the warranty period.

The cost of installation and travel of replacement material and parts shall be borne by the

Contractor." (Exhibit J, SOW, page 6)

*f.      Describe Interior Designer's experience and qualifications working on healthcare facilities and what hardware and software that will be used to produce digital and hard copy drawings of design work and prepared installation drawings. (Exhibit H, Solicitation, pages 34)*

**Response**:

We have been in business for over 18 years with a talented staff that has over 100 years of experience in product procurement, design, project management, dispute resolution and installation. (Exhibit I, page 008)

We will have a team dedicated to handling all projects from design through installation. (Id.) They will be responsible for reviewing each order and familiarizing themselves with your expectations. (Id.)

Our Design Manager will be point of all design meetings and deliverables. She has over 18 years of design experience and specializes in the Healthcare area. (Exhibit I, page 009)

**Evidence Based Design.** Patient centered design is transforming our industry, with healthcare spaces being designed to support the health and recovery process of patients, and to improve them working lives of caregivers, staff and patient families. Our entire team understands the importance of creating a warm and welcoming environment from the patient room, through the waiting and cafeteria areas all the way to the doctors' offices and nurses' stations. Navigating through a hospital has the potential to be a safe experience, with areas that support multiple functions and interactions, and with furniture and finishes that invite patients and families to stay for treatment, or for longer periods of recovery.

We carry leading healthcare product lines that are outstanding not only for their aesthetic and functional characteristics, but because they cater to the needs of a multifunctional, and clean environment. (Exhibit I, page 001-002)

Interior Designer has at least 10 years of experience. (Exhibit I, page 005)

g.      *Describe technical capabilities of staff producing AutoCAD/and or PDF drawings of the as-built furniture installation. (Exhibit H, Solicitation, pages 34)*

**Response:**

Generate a design solution for the new Test-Fit Plans with verified critical furniture layout and verify critical dimensions, data, and outlet locations to ensure that the furniture will fit in the space Installation *Drawing Package* in hardcopy allotted and electronic format that includes critical hold-to dimensions as needed. (Exhibit E, page 004)

Follow-up with End Users to identify any user A set of *As-Built Drawings* that highlights adjustments or design changes post-install changes to the space after initial installation. (Id.)

Installation Supervision - A qualified Installation Supervisor is assigned to every installation project for overseeing moving crews, installation crews, proper delivery of all products and ensuring that product is delivered and installed per the approved installation drawings. (Id., page 006)

We carry leading healthcare product lines that are outstanding not only for their aesthetic and functional characteristics, but because they cater to the needs of a multifunctional, and clean environment.  (Id., page 002)

installed per the approved installation *drawings*. (Id., page 006)

h.      *Describe the experience of the installation staff and Interior Design staff regarding work in a federal facility and healthcare facility.  Address their knowledge regarding life safety codes, infection control standards and patient privacy standards. (Exhibit H, Solicitation, pages 34)*

**Response**: Our Design Manager will be point of all design meetings and deliverables. She has over 18 years of design experience and specializes in the Healthcare area. (Exhibit E, page 009)

Our projects have enabled us to outfit spaces in many markets including education, healthcare, hospitality and corporate offices. (Exhibit I, page 001)

Patient centered design is transforming our industry, with *healthcare* spaces being designed to support the health and recovery process of patients, and to improve the working lives of caregivers, staff and patient families. Our entire team understands the importance of creating a warm and welcoming environment from the patient room, through the waiting and cafeteria areas all the way to the doctors' offices and nurses' stations. Navigating through a hospital has the potential to be a *safe* experience, with areas that support multiple functions and interactions, and with furniture and finishes that invite patients and families to stay for treatment, or for longer periods of recovery. (Exhibit I, pages 001-002)

The VA will have access to manufacturers who offer options for ergonomic, secure, *safe*, sustainable and LEED credit- generating products. (Id., page 001)

Healthy Interior Environments — another area of increased interest in *healthcare design* is *infection* control. Our manufacturing partners provides a number of durable antimicrobial fabrics and furniture finishes which can help to improve hospital *infection control*. We also carry lines of furniture which comply with low emissions, helping to create a healthier indoor environment. (Id., page 002).

## ARGUMENTS

## I. THE VA FAILED TO EVALUATE ODG'S PROPOSAL CONSISTENT WITH THE EVALUATION FACTORS IN THE SOLICITATION.

The GAO has announced in its cases, "our Office has long held that once offerors are informed of the criteria against which proposals will be evaluated, the agency will be required to adhere to them. Grey Advert., Inc., 55 Comp. Gen. 1111 (May 14, 1976)." Bendix Field Eng'g

Corp., B-219406 (Oct. 31, 1985).  In the present case, offerors were informed that their proposals would be evaluated based on their offer's "Service Narrative to be able to meet all services as defined in the Statement of Work."  (Exhibit H, Solicitation, page 33).  ODG's proposal narrative clearly demonstrates, as illustrated above, the Company's ability to meet all the services as defined by the Statement of Work.  While the Solicitation lists some "Key Elements," offerors are not warned that a failure to provide "complete details" in response to Attachment 15 would result in a finding that their proposals were technically unacceptable.  This is especially salient given the fact that ODG's response to the Sample Project was rated "Outstanding." (Exhibits B-F, page 4, Sub-factor 4).  This portion of ODG's response, along with its Satisfactory past performance, should have provided sufficient evidence that ODG could satisfy all the requirements of the SOW.  ODG avers that it was held to an impossible standard given the fact that the procurement is for an IDIQ, which will result in further competition for Task Orders with their own individual and specific requirements.

In *Matter of: Gen. Revenue Corporation*, another IDIQ procurement where the protestor alleged an Agency's failure to adhere to announced evaluation criteria, the GAO stated, "An agency is required to evaluate proposals in a manner that is consistent with the terms of the solicitation, and to evaluate offers on a common basis. Where the agency's evaluation does not adhere to the solicitation's evaluation criteria, or where proposals are evaluated disparately, our Office will sustain the protest." Matter of: Gen. Revenue Corporation; Account Control Tech., Inc, et al, B-414220.2 (Mar. 27, 2017) (internal citations omitted).  As discussed below, ODG also believes that the VA disparately evaluated its proposal and requests the GAO recommend corrective action accordingly.

## II.    THE VA DISPARATELY EVALUATED ODG'S PROPOSAL.

As stated above, "Where the agency's evaluation does not adhere to the solicitation's evaluation criteria, or where proposals are evaluated disparately, our Office will sustain the protest." Matter of: Gen. Revenue Corporation; Account Control Tech., Inc, et al, B-414220.2 (Mar. 27, 2017).  Further, the GAO has found that when an Agency's evaluation process is apparently arbitrary and disparate, it will sustain the protest.  Cuernilargo Elec. Supply, B-229942 (May 10, 1988) (sustaining protest due to uncertainty and disparate treatment in the bid evaluation process).  "Further, where an agency treats offerors unequally by, for example, reading some offerors' proposals in an expansive manner and resolving doubt in favor of the offeror, while reading other offerors' proposals narrowly and applying a more exacting standard that requires affirmative representations within the four corners of the proposal, we have found such evaluations to involve disparate treatment. Lockheed Martin Info. Sys., B-292836 (Dec. 18, 2003). Matter of: Arctic Slope Mission Servs., LLC, B-410992.5 (Jan. 8, 2016).  ODG believes that the administrative record will demonstrate that this is exactly what happened in the present solicitation.

Given the lack of specificity in the IDIQ requirements and the fact that ODG provided a narrative addressing all of the requirements in the SOW, the only explanation remaining is that ODG was held to a different standard than the announced awardees.  Accordingly, ODG asks that the GAO sustain its protest and recommend corrective action to including adding ODG to the list of awardees.

## III.    THE VA ENGAGED IN UNEQUAL DISCUSSIONS WITH AWARDEES.

As discussed above, this is the second time since 2016 that the VA has competed this requirement.  In its 2016 protest, ODG alleged unequal discussions, which the VA adamantly

denied.  The VA then refused to submit much of the Agency Record that ODG requested arguing

that it was irrelevant.  Once ODG finally received the Agency Record it learned that the VA did

it fact engage in unequal discussions, which the VA then qualified as administrative in nature

and not prejudicial to ODG.  (See GAO file B-413166.1-4).  ODG avers that the VA has engaged

in the same practice in the course of this procurement.  ODG believes that this is the only way

the prospective awardees could have provided detailed responses to requirements that are still

unannounced.  This is true, because the procurement is an IDIQ with unreleased Task Orders.

     If ODG is correct and the VA did engage in unequal discussions with even one of the

awardees, those discussion would necessarily be prejudicial and grounds to sustain the protest.

Matter of: Ywca of Greater Los Angeles, B-414596 (July 24, 2017).  Therefore, ODG asks that

the GAO sustain its protest and recommend corrective action to remedy the VA's defective

procurement practices.

## REQUEST FOR DOCUMENTS.

     Pursuant to 4 C.F.R. § 21.1(d) (2), ODG requests that the VA provide it with documents

relevant to this protest and debriefing including:

   a.  The Contracting Officer's statement of the relevant facts;

   b.  The bid or proposal of firms considered for award;

   c.  All Source Selection and Evaluation Documents;

   d.  A pricing Abstract of all offers;

e. Related correspondence, email, and telephone records between the VA and all offerors from May 2017 through the date of award, April 3, 2018.;

f. A list of other offerors that were rejected;

g. A list of offerors excluded for other reasons;

h. A list of "bridge" or "extension" contracts in place;

i. A copy of existing and previous contracts between the VA for these services.

## REQUEST FOR A STAY AND A HEARING

ODG requests that the VA stay and suspend further action and performance on a potential to the contract until this Protest is resolved. ODG respectfully requests that the GAO conduct a hearing. A hearing is necessary because the factual and legal questions are of such a magnitude and complexity to warrant a hearing.

## REQUEST FOR A PROTECTIVE ORDER.

Pursuant to 4 C.F.R. § 21.4, ODG respectfully requests that GAO issue a protective order in this protest. Its offer, an attachment to this protest, contains proprietary information.

## CONCLUSION AND REQUEST FOR RELIEF

ODG respectfully requests:

a. That the GAO/Comptroller General sustain its protest;

b. That the VA stay the procurement;

c. That the GAO/Comptroller General recommend corrective action including that the VA include ODG in the list of awardees for all five regions;

d. That the GAO recommend such corrective action as the GAO determines necessary to promote compliance with statutory and regulatory requirements applicable to the procurement.

**ATTACHMENTS**                                  Respectfully submitted,

Exhibit A, VA Notice of Corrective Action
Exhibit B, Unsuccessful Offeror Letter Region 1
Exhibit C, Unsuccessful Offeror Letter Region 1
Exhibit D, Unsuccessful Offeror Letter Region 1
Exhibit E, Unsuccessful Offeror Letter Region 1
Exhibit F, Unsuccessful Offeror Letter Region 1
Exhibit G, Email from CO
Exhibit H Solicitation
Exhibit I ODG Submission
Exhibit J SOW
Exhibit K Attachment 15

*Joseph A. Whitcomb, Esq.*
Attorney for Office Design Group
Whitcomb, Selinksy, McAuliffe, PC
2000 S. Colorado Blvd. Tower One
Suite 9500
Denver, CO 80222
(303)534-1958 office (303)573-5461
direct
(303)534-1949 fax  (303)350-9183 cell

# Decision

**NOT FOR PUBLIC DISTRIBUTION**

**THIS DOCUMENT CONTAINS PROTECTED MATERIAL AND IS SUBJECT TO THE TERMS OF A GAO PROTECTIVE ORDER.**

**Matter of:**   Office Design Group

**File:**   B-415853.3; B-415853.4; B-415854.3; B-415854.4; B-415855.3; B-415855.4; B-415856.3; B-415856.4; B-415857.3; B-415857.4

**Date:**   July 16, 2018

Joseph A. Whitcomb, Esq., Whitcomb, Selinsky, McAuliffe PC, for the protester.
Tyler P. Whisnant for SDV Office Systems, LLC; Holly L. Gack for A. Pomerantz & Company; Fred Danforth for JohnsonDanforth, Inc.; George R. Nelson, for The Russell Group United, LLC, the intervenors.
Aleia Barlow, Esq., Department of Veterans Affairs, for the agency.
Paula A. Williams, Esq., and Edward Goldstein, Esq., Office of the General Counsel, GAO, participated in the preparation of the decision.

## DIGEST

Protest challenging the award of multiple indefinite-delivery, indefinite-quantity contracts is denied where the record shows that, after taking corrective action in response to the protester's prior protests, the agency reevaluated proposals and the record shows that the reevaluation was reasonable and consistent with the stated evaluation factors.

## DECISION

Office Design Group, a service-disabled veteran-owned small business (SDVOSB) located in Irvine, California, protests the award of multiple indefinite-delivery, indefinite-quantity (IDIQ) contracts by the Department of Veterans Affairs (VA), Strategic Acquisition Center, under request for proposals (RFP) Nos. VA119-17-R-0260, VA119-17-R-0261, VA119-17-R-0262, VA119-17-R-0263, and VA119-17-R-0264, for healthcare furniture and related services.[1]   Office Design primarily alleges that the

---

[1] Each solicitation was for a different region, five regions in total (Region 1, Northeast, Region 2, Southeast, Region 3, Midwest, Region 4, Southwest, and Region 5, West Coast).  The agency selected the same nine firms for award for each region:  A. Pomerantz & Company, of Philadelphia, Pennsylvania; GovSolutions LLC, of Virginia Beach, Virginia; JohnsonDanforth & Associates, of Little Rock, Arkansas; JPL & Associates, of Sarasota, Florida; The Russell Group, of Columbus, Ohio; Veteran Office Design, of Charlotte, North Carolina; SDV Office Systems, LLC, of Asheville, North

agency unreasonably and unequally evaluated its own and the awardees' technical proposals, and that the agency did not reasonably investigate what it alleges were unmitigable unequal access to information organizational conflicts of interest (OCI) which should have disqualified four of the nine awardees.

We deny the protests.[2]

BACKGROUND

The healthcare furniture procurement was designed by the VA to establish multiple regional IDIQ contracts under which fixed-price task/delivery orders would be issued for a broad range of healthcare grade furniture, design, project management, furniture removal, professional installation and maintenance/warranty services to meet the needs of various VA facilities within the continental United States and outside the continental United States. RFP at 17, 27. The selected contractors will provide all labor, materials, equipment, transportation, and supervision necessary to satisfy the needs of each ordering activity. RFP Statement of Work (SOW) at 1.

The VA issued all five solicitations on May 5, 2017, with all being set-aside for SDVOSB concerns. Other than the geographic variance, all five solicitations were essentially identical. They all provided for the award of multiple fixed-price IDIQ contracts, each with a 5-year base ordering period, and one 5-year option.[3] RFP at 28. The estimated ceiling value for each contract is $499 million. Contracting Officer's Statement at 1 (May 11, 2018).

The RFP established that awards would be made using a best-value tradeoff selection process considering three factors: technical capability, past performance, and price. RFP at 28-33. Proposals had to demonstrate the offeror's ability to successfully satisfy the stated solicitation requirements and offerors were instructed to include sufficient

---

Carolina; Cuna Supply, LLC, of Bellaire, Texas; and Coronado Distribution Company, Inc., of San Diego, California. Contracting Officer's Statement at 8 (May 11, 2018).

[2] The protester also alleged that the agency engaged in unequal and prejudicial discussions with the awardees. Protest at 3 (April 10, 2018). We dismiss this allegation for failing to state factual and legally sufficient grounds of protest. 4 C.F.R. §§ 21.1(c)(4), (f). The agency reports, and the contemporaneous evaluation record confirms, that the VA did not conduct discussions with any offeror. Contracting Officer's Statement at 5 (May 11, 2018).

[3] Unless otherwise indicated, all citations to the RFP refer to the version provided in exhibit 6(a) of the agency report as RFP No. VA119-17-R-0261, which covers Region 2. This RFP includes all relevant amendments and the agency reports that this RFP represents the solicitation for all five regions. Contracting Officer's Statement at 6 (May 11, 2018).

details in their proposals "to permit a complete and accurate evaluation of each proposal." Id. at 30. The technical capability factor was stated to be more important than the past performance factor and, when combined, the technical capability and past performance factors were stated to be significantly more important than price. Id. at 33.

As is relevant here, the technical capability factor was comprised of the following subfactors: (1) a cross-referenced copy of product literature for all of the items listed in the detailed item review minimum technical requirements (MTRs) list; (2) offeror's self-certification under the MTRs; (3) offeror's service narrative that discusses its ability to meet all services listed in the SOW (hereinafter, SOW service narrative); and (4) offeror's project sample. Id. at 33-34. In this regard, the SOW established four line items, with contract tasks and requirements specified for each. The four delineated line items were: (1) furniture, design, and installation support services; (2) installation and reconfiguration services; (3) industrial design services; and (4) project management turnkey services with furniture. Id. at 3-19.

With respect to the SOW service narrative subfactor specifically, the RFP informed offerors that the SOW service narrative should include the following key elements:

- provide a staffing plan that includes the qualifications and experience of key personnel (project manager/lead installer and interior designer) working in a healthcare environment.

- describe the process of inventory, cataloging, protecting existing VA furniture and providing temporary storage for existing furniture; describe any materials to be used to protect furniture from damage.

- describe the process of protecting VA building during installation. Describe any materials to be used to protect the building and finishes of previously installed furniture.

- describe the process for making corrections during final walkthrough.

- describe the process used for warranty repairs.

- describe interior designer's experience and qualifications working in healthcare facilities and the hardware and software that will be used to produce digital and hard copy drawings of design work and prepared installation drawings.

- describe the technical capabilities of staff producing AutoCad and or PDF drawings of the as-built furniture installation.

- describe the experience of the installation staff and interior design staff regarding work in federal and healthcare facilities. Address their knowledge regarding life safety codes, infection control standards and patient privacy standards.

RFP at 34.

Additionally, the RFP included various attachments, including attachment 15, entitled "Service Technical Evaluation Questions." RFP at 24. This attachment contained the service requirements set forth in the SOW corresponding to the four line item requirements--(1) furniture, design, and installation support services; (2) installation and reconfiguration services; (3) industrial design services; and (4) project management turnkey services with furniture. RFP attach. 15 at 1-2. Under each line item, the RFP included a series of questions applicable to the particular tasks/services thereunder. Id. For example, under Industrial Design Services, the questions asked, among others, "Did the Contractor provide a staffing plan?"; "Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards?" Id. at 1. In response to a question regarding the solicitation, the agency clarified that attachment 15 is the "checklist[s] that will be used to evaluate the technical proposals." RFP amend. 1, Questions & Answers at 2 (No. 14).

Proposals were due July 5, 2017. The VA received proposals from 19 offerors in response to each of the solicitations for Regions 1-4, and proposals from 20 offerors for Region 5. Contracting Officer Statement at 2 (May 11, 2018). Office Design submitted a proposal for all five regions, as did the awardees. The VA's source selection evaluation team evaluated proposals and prepared a consensus report detailing its evaluation findings, which included the assignment of adjectival ratings. Agency Report (AR) exh. 5b(ii), Source Selection Decision Documents at 11-60.[4]

On December 14, 2017, the VA notified Office Design that its proposal was not selected for award because its technical proposal was evaluated as unacceptable. B-415853 et al. Protest exh. A, Letter to Unsuccessful Offeror at 1 (Dec. 14, 2017).[5] The unsuccessful letter informed the protester that awards had been made to six offerors: A. Pomerantz, GovSolutions, JohnsonDanforth, JPL & Associates, The Russell Group, and Veteran Office Design. Id. at 2.

---

[4] All citations to the source selection decision documents refer to the version provided in exhibit 5b(ii) of the agency report, which pertains to the evaluation of proposals submitted in response to the RFP for Region 2. We note, however, that the agency report includes separate source selection decision documents for all five regions.

[5] Citations to documents provided during the previous protests filed by Office Design are identified by their GAO docket numbers as B-415853 et al. (B-415853; B-415854; B-415855; B-415856; B-415857).

After receiving a debriefing, Office Design filed timely protests with our Office challenging the agency's evaluation of proposals and the resulting contract awards. B-415853 et al. Protest (Dec. 26, 2017). In response to these protests, the VA filed a notice of corrective action indicating that it intended to reevaluate proposals and make new award decisions, if necessary. Our Office dismissed the protests as academic on January 25, 2018. Office Design Grp., B-415853 et al., Jan. 25, 2018 (unpublished decision).

The VA's corrective action consisted of reevaluating proposals for all five regions; the agency did not permit offerors to revise their proposals. The evaluators prepared consensus source selection decision documents detailing their evaluation findings. AR exh. 5b(ii), Source Selection Decision Documents. At the conclusion of the reevaluation, the agency again concluded that Office Design's technical proposal was unacceptable. The evaluators found that Office Design's SOW service narrative was lacking significant details and contained vague or insufficient information. Id. exh. 5e(x), Office Design, Technical Evaluation Consensus Forms at 2, 6; exh. 5c(x), Office Design, Attachment 15 Evaluation Forms at 1-2. For example, among many other things, the VA evaluators found that Office Design failed to provide a staffing plan; failed to include any information regarding its process of inventory, cataloging, and protecting VA property at the contractor's storage facility; failed to include any information regarding a process for warranty repair; and failed to address the qualifications or experience of its staff regarding life safety code, infection control standards, and patient privacy standards. Id. exh. 5c(x), Office Design, Attachment 15 Evaluation Forms at 1-2. The source selection authority confirmed the prior IDIQ awards, and made new awards to three additional offerors: SDV Office Systems, Cuna Supply, and Coronado Distribution Company. Id. exh. 5b(ii), Source Selection Decision Documents at 60-63; Contracting Officer's Statement at 8 (May 11, 2018).

Upon learning the results of the agency's reevaluation, Office Design filed these protests.

DISCUSSION

Office Design challenges the VA's reevaluation of proposals under the technical capability factor and related subfactors. In this regard, the protester asserts that the agency's reevaluation of its proposal under the SOW service narrative subfactor, was not only inconsistent with the terms of the solicitation, but also was unequal as compared to the agency's evaluation of the awardees' proposals. Office Design also challenges the award decisions, alleging that four awardees had a disqualifying OCI. We have fully considered all of the protester's issues and arguments, which include arguments that are in addition to, or variations of, those specifically discussed herein. Although we do not specifically address them all, we find that none provides a basis to sustain the protests.

It is well settled that the evaluation of proposals is a matter within the discretion of the contracting agency and we will not substitute our judgment for that of the agency. Rather, we will examine the agency's evaluation to ensure that it was reasonable and consistent with the solicitation's stated evaluation criteria and with applicable procurement statutes and regulations. MicroTechnologies, LLC, B-413091, B-413091.2, Aug. 11, 2016, 2016 CPD ¶ 219 at 4-5; Serco Inc., B-406061, B-406061.2, Feb. 1, 2012, 2012 CPD ¶ 61 at 9. A protester's disagreement with the agency's judgment, without more, is not sufficient to establish that an agency acted unreasonably. Id.

Evaluation of Technical Proposals

Office Design contends that the agency's reevaluation of its technical proposal as unacceptable was improper. Office Design asserts that the VA "never announced, as it must, that it planned to use responses to Attachment 15 as the rubric against which proposals were evaluated." Protest at 4; Protester's Comments & Supp. Protest at 1 (May 21, 2018). According to the protester, while the solicitation lists some "Key Elements" that should be discussed in the SOW service narrative, offerors were "not warned" that a failure to provide "complete details" in response to Attachment 15 "would result in a finding that their proposals were technically unacceptable." Protest at 11. Office Design is mistaken.

Agencies are required to evaluate proposals in accordance with a solicitation's stated requirements and evaluation criteria. The Boeing Co., B-311344 et al., June 18, 2008, 2008 CPD ¶ 114 at 38. Where a dispute exists as to the actual requirements of a solicitation, we will first examine the plain language of the solicitation. Point Blank Enters., Inc., B-411839, B-411839.2, Nov. 4, 2015, 2015 CPD ¶ 345 at 3; see also, Carthage Area Hosp., Inc., B-402345, Mar. 16, 2010, 2010 CPD ¶ 90 at 5 n.7; W. Gohman Constr. Co., B-401877, Dec. 2, 2009, 2010 CPD ¶ 11 at 3-4.

As noted above, the solicitation admonished offerors to include sufficient detail in their proposals to allow for a complete and accurate evaluation and informed offerors that the agency would evaluate SOW service narratives to determine if the offeror could meet all the delineated solicitation requirements. RFP at 34. Moreover, the solicitation explicitly described key elements that should be discussed in the offeror's SOW service narrative, such as, a staffing plan, the process for cataloging furniture, and the qualifications and experience of the offeror's proposed key personnel. Id. at 34. Moreover, the RFP included attachment 15, which the agency indicated would be used to evaluate proposals. RFP amend. 1 at 2.

On the record here, we find no merit in the protester's assertion that the agency's use of attachment 15 to evaluate SOW service narratives was inconsistent with the terms of the solicitation or otherwise improper. To the contrary, upon review of the solicitation provisions discussed above--including the specific agency response to a potential offeror's question regarding attachment 15--it is difficult to imagine how Office Design's obligation to submit a detailed SOW service narrative in response to questions set forth

in attachment 15 could have been more clear. Accordingly, the protester's claim that the agency acted improperly when it used attachment 15 as the basis to evaluate proposals under the SOW service narrative subfactor is without merit.

Next, Office Design challenges the agency's assessments regarding its response to the SOW service narrative requirements. Generally, Office Design's weaknesses were assigned for failing to provide adequate details or failing to address a majority of the requirements for subfactor 3, SOW service narrative. Protest exh. C, Letter to Unsuccessful Offeror at 2-3 (Apr. 3, 2018). For example, as noted above, the agency found that under three SOW requirements: (1) installation and reconfiguration services; (2) industrial design services; and (3) project management turnkey services with furniture, Office Design did not address the experience of staff regarding life safety codes, infection control standards, and patient privacy standards as required by attachment 15, questions 17, 24, and 33, respectively. Id. at 2.

The protester argues that it fully responded to this solicitation requirement, alleging that it provided information in its proposal regarding its design manager who "has over 18 years of design experience and specializes in the Healthcare area." Protest at 9. The protester also alleges that it provided information regarding its manufacturing partners who will help improve hospital infection prevention. Id. at 9-10; Protester's Supp. Comments at 3 (June 5, 2018). In response, the agency explains that the evaluators could not verify that the protester's proposed staff has actual experience with, or understanding of, life safety codes, infection control standards, or patient privacy standards because Office Design did not provide that level of detail in its proposal. AR exh. 5e(x), Technical Evaluation Consensus Forms at 6; Supp. Contracting Officer's Statement at 3 (May 29, 2018); Supp. Memorandum of Law at 10-11 (May 29, 2018).

After reviewing the record before us, we find no basis to question the agency's evaluative judgments as unreasonable given the general nature of the information contained in Office Design's proposal. With regard to the question of the experience of Office Design's staff regarding life safety code, infection control standards, and patient privacy standards, Office Design's proposal does not mention or otherwise provide any reference to life safety codes or patient privacy standards, let alone explain how its staff has experience with these standards. It is an offeror's responsibility to submit a well-written proposal, with adequately detailed information which clearly demonstrates compliance with the solicitation requirements and allows a meaningful review by the procuring agency. Affolter Contracting Co., Inc., B-410878, B-410878.2, Mar. 4, 2015, 2015 CPD ¶ 101 at 7; Mike Kesler Enters., B-401633, Oct. 23, 2009, 2009 CPD ¶ 205 at 2-3. An offeror runs the risk that a contracting agency will evaluate its proposal unfavorably where, as here, it fails to do so. ACC Constr.-McKnight JV, LLC, B-411073, Apr. 30, 2015, 2015 CPD ¶ 147 at 5. This example is illustrative of the general failure of the protester's proposal to address many of the technical evaluation criteria set forth in the solicitation. Accordingly, the agency had a reasonable basis for evaluating the protester's proposal as unacceptable under the technical capability factor.

Office Design also argues that the agency's assignment of an unacceptable rating under subfactor 3, SOW service narrative, reflects unequal treatment in the evaluation of proposals.  According to the protester, each awardee's proposal suffered from some of the same defects identified in Office Design's proposal, but they were not assigned corresponding weaknesses.  Protester's Comments & Supp. Protest at 6 (May 21, 2018).  Where a protester alleges unequal treatment in a technical evaluation, it must show that the differences in ratings did not stem from actual differences between the offerors' proposals.  See Beretta USA Corp., B-406376.2, B-406376.3, July 12, 2013, 2013 CPD ¶ 186 at 6; Northrop Grumman Sys., Corp., B-406411, B-406411.2, May 25, 2012, 2012 CPD ¶ 164 at 8.  Office Design has not made this showing.

For example, the protester asserts that one of the awardees, A. Pomerantz, also failed to describe the experience of its proposed staff regarding life safety codes, infection control standards, and patient privacy standards as required by attachment 15, question 17, for installation and reconfiguration services.  Protester's Comments & Supp. Protest at 6 (May 21, 2018).  The VA reports that the evaluators found that A. Pomerantz provided detailed information that clearly demonstrated that its proposed staff had the requisite experience in the specific areas delineated in subfactor 3, SOW service narrative, therefore, Pomerantz's proposal was assigned a higher rating.  Supp. Contracting Officer's Statement at 7 (May 29, 2018); Supp. Memorandum of Law at 5 (May 29, 2018).

Based on our review of the record, we have no basis to question the agency's judgments in performing the evaluation.  Specifically, the record indicates that the awardees submitted comparatively more detailed and complete proposals as compared to Office Design, accordingly, the agency had no obligation to assess comparable weaknesses.  See Paragon Sys., Inc.; SecTek, Inc., B-409066.2, B-409066.3, June 4, 2014, 2014 CPD ¶ 169 at 8-9.  For example, regarding the evaluation of A. Pomerantz's proposal, unlike Office Design, A. Pomerantz expressly addressed its experience with life and safety requirements, infection control and patient privacy issues, and provided detailed examples of how it has addressed these requirements in performance of prior projects.  AR exh. 2a, A. Pomerantz's Contractor Service Narrative, at 3, 6-7.  While Office Design may disagree with the agency's conclusions, Office Design's disagreement with those conclusions is insufficient to establish that the agency acted unreasonably.  Ball Aerospace & Techs. Corp., B-411359, B-411359.2, July 16, 2015, 2015 CPD ¶ 219 at 7.  Thus, these protest grounds are denied.

Other Issues

Office Design argues that the awards to SDV Office Design, JohnsonDanforth, Cuna Supply, and Coronado were tainted by unequal access to information OCI.  As support, Office Design relies on a statement in each of these awardees' proposals indicating that their "systems are already in place and functioning with the same level of service

required by this contract."[6]  Protester's Comments & Supp. Protest at 3 (May 21, 2018).
Office Design also asserts that the evaluation was flawed because company
identification information was disclosed in proposals submitted by JPL and
GovSolutions despite the RFP requirement for proposal anonymity.  Protester's
Comments & Supp. Protest at 2-3 (May 21, 2018).  According to the protester, company
identification was found in the metadata of JPL's technical proposal.  Id.  As to
GovSolutions, the following language appears in that firm's proposal:  "GovSolutions
wants everyone to go home safely.  Every worker.  Every night."  Protester's Comments
& Supp. Protest at 3 (May 21, 2018).

While we have reviewed the record and conclude that these issues provide no basis to
sustain Office Design's protest, we need not address them since the protester is not an
interested party to challenge the awards to these firms.  Under the bid protest provisions
of the Competition in Contracting Act of 1984, 31 U.S.C. §§ 3551-3556, only an
"interested party" may protest a federal procurement.  That is, a protester must be an
actual or prospective bidder or offeror whose direct economic interest would be affected
by the award of a contract or the failure to award a contract.  Bid Protest Regulations,
4 C.F.R. § 21.0(a)(1).  Determining whether a party is interested involves consideration
of a variety of factors, including the nature of issues raised, the benefit or relief sought
by the protester, and the party's status in relation to the procurement.  RELM Wireless
Corp., B-405358, Oct. 7, 2011, 2011 CPD ¶ 211 at 2.  A protester is not an interested
party where it would not be in line for contract award were its protest to be sustained.
Id.  As explained above, we find no fault with the agency's evaluation of Office Design's
proposal as unacceptable under the technical capability factor.  With an unacceptable
rating under the most important evaluation factor, Office Design would not be in line for
an award even if we were to sustain its protest with respect to these allegations.
Accordingly, the above allegations are dismissed.

The protests are denied.

Thomas H. Armstrong
General Counsel

---

[6] The protester also alleges that there appears to be evidence of collusion between the
same four awardees as reflected by their use of similar, and in some instances, identical
language in their proposals.  Supp. Protest at 3 (May 21, 2018).  Aside from the fact that
the protester is not an interested party to challenge the awardees in this regard, whether
or not these firms engaged in collusive bidding, as alleged by the protester, is not within
the purview of our Office.  The allegation concerns potential violations of antitrust laws,
which are primarily matters for the contracting agency and the Department of Justice.
The agency has represented that it is currently reviewing the matter.  Supp. Contracting
Officer Statement at 5 (May 29, 2018).  We therefore dismiss this allegation.  See
Thermex Energy Corp., B-227034.2, Aug. 17, 1987, 87-2 CPD ¶ 164 at 4.

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



# PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



A claim is filed and either repair parts or a replacement are ordered immediately.

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

Case 19-1397    Document 48    Page 219    Filed 06/18/2019

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



Appx218

PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



Case 1:19-cv-00037-EDK Document 48 Filed 06/08/20 Page 228 of 258

PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



Case 1:07-cv-00848-ABJ Document 48 Filed 06/08/2009 Page 237 of 258

## PROTECTIVE ORDER

PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROTECTED INFORMATION**
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**



THIS PAGE CONTAINS REDACTED MATERIAL SUBJECT TO
PROTECTIVE ORDER

**PROTECTED INFORMATION**
**To Be Disclosed Only In Accordance With**
**U.S. Court of Federal Claims Protective Order**

**PROTECTED INFORMATION**
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order

**Vendor: _R1 Calla ALL REGIONS__   RFP: VA119-17-R-_ALL____**

| SV1 – Furniture, Design and Installation Support | Score |
|---|---|
| 1.  Did the Contractor provide a staffing plan? | 2 |
| 2.  Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 3.  Did the Contractor describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility? | 2 |
| 4.  Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 5.  Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 6.  Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 7.  Did the Contractor describe the process used regarding a warranty repair? | 2 |
| **SV2 – Installation and Reconfiguration Services** | |
| 8.  Did the Contractor provide a staffing plan? | 2 |
| 9.  Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 10. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 11. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 12. Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 13. Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 14. Did the Contractor describe the process used regarding a warranty repair? | 2 |
| 15. Did the contractor describe the technical capability of staff producing AutoCAD / and or PDF drawings of the as-built furniture installation? | 2 |
| 16. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 17. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| **SV3 - Industrial Design Service** | |
| 18. Did the Contractor provide a staffing plan? | 2 |
| 19. Did the Contractor describe the qualifications and experience of the staff that will provide the requested services? | 2 |
| 20. Did the Contractor describe the relevant experience of the staff that will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 21. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 22. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |

PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order

| | |
|---|---|
| 23. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 24. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| *SV4 - Advanced Project Management Turn Key Services with Furniture* | |
| 25. Did the Contractor provide a staffing plan? | 2 |
| 26. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 27. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 28. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 29. Did the Contractor describe the experience of the people who will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 30. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 31. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |
| 32. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 33. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |

**TOTAL SCORE**      66

Appx247

**PROTECTED INFORMATION**
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order

**Vendor:  __R1 Lilac_____          RFP:  VA119-17-R-_____**

| SV1 – Furniture, Design and Installation Support | Score |
|---|---|
| 1.   Did the Contractor provide a staffing plan? | 2 |
| 2.   Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 3.   Did the Contractor describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility? | 2 |
| 4.   Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 5.   Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 6.   Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 7.   Did the Contractor describe the process used regarding a warranty repair? | 2 |
| SV2 – Installation and Reconfiguration Services | |
| 8.   Did the Contractor provide a staffing plan? | 2 |
| 9.   Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 10. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 11. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 12. Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 13. Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 14. Did the Contractor describe the process used regarding a warranty repair? | 2 |
| 15. Did the contractor describe the technical capability of staff producing AutoCAD / and or PDF drawings of the as-built furniture installation? | 2 |
| 16. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 17. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| SV3 - Industrial Design Service | |
| 18. Did the Contractor provide a staffing plan? | 2 |
| 19. Did the Contractor describe the qualifications and experience of the staff that will provide the requested services? | 2 |
| 20. Did the Contractor describe the relevant experience of the staff that will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 21. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |

Appx248

PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order

| | |
|---|---|
| 22. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |
| 23. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 24. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| *SV4 - Advanced Project Management Turn Key Services with Furniture* | |
| 25. Did the Contractor provide a staffing plan? | 2 |
| 26. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 27. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 28. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 29. Did the Contractor experience do the people who will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 30. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 31. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |
| 32. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 33. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |

**TOTAL SCORE**      **66**

PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order

**Vendor: _R1 Morning Glory ALL REGIONS__  RFP: VA119-17-R-_ALL____**

| SV1 – Furniture, Design and Installation Support | Score |
|---|---|
| 1.  Did the Contractor provide a staffing plan? | 2 |
| 2.  Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 3.  Did the Contractor describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility? | 2 |
| 4.  Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 5.  Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 6.  Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 7.  Did the Contractor describe the process used regarding a warranty repair? | 2 |
| **SV2 – Installation and Reconfiguration Services** | |
| 8.  Did the Contractor provide a staffing plan? | 2 |
| 9.  Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 10. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 11. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 12. Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 13. Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 14. Did the Contractor describe the process used regarding a warranty repair? | 2 |
| 15. Did the contractor describe the technical capability of staff producing AutoCAD / and or PDF drawings of the as-built furniture installation? | 2 |
| 16. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 17. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| **SV3 - Industrial Design Service** | |
| 18. Did the Contractor provide a staffing plan? | 2 |
| 19. Did the Contractor describe the qualifications and experience of the staff that will provide the requested services? | 2 |
| 20. Did the Contractor describe the relevant experience of the staff that will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 21. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 22. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |

**PROTECTED INFORMATION**
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order

| | |
|---|:---:|
| 23. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 24. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| *SV4 - Advanced Project Management Turn Key Services with Furniture* | |
| 25. Did the Contractor provide a staffing plan? | 2 |
| 26. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 27. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 28. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 29. Did the Contractor experience do the people who will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 30. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 31. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |
| 32. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 33. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |

**TOTAL SCORE**  66

Appx251

PROTECTED INFORMATION
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order

**Vendor:** __R1 Orchid_____    **RFP:** VA119-17-R-_____

| SV1 – Furniture, Design and Installation Support | Score |
|---|---|
| 1.  Did the Contractor provide a staffing plan? | 2 |
| 2.  Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 3.  Did the Contractor describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility? | 2 |
| 4.  Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 5.  Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 6.  Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 7.  Did the Contractor describe the process used regarding a warranty repair? | 2 |
| **SV2 – Installation and Reconfiguration Services** | |
| 8.  Did the Contractor provide a staffing plan? | 2 |
| 9.  Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 10. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 11. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 12. Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? | 2 |
| 13. Did the Contractor describe the process used to perform a walkthrough and document punch list items? | 2 |
| 14. Did the Contractor describe the process used regarding a warranty repair? | 2 |
| 15. Did the contractor describe the technical capability of staff producing AutoCAD / and or PDF drawings of the as-built furniture installation? | 2 |
| 16. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 17. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| **SV3 - Industrial Design Service** | |
| 18. Did the Contractor provide a staffing plan? | 2 |
| 19. Did the Contractor describe the qualifications and experience of the staff that will provide the requested services? | 2 |
| 20. Did the Contractor describe the relevant experience of the staff that will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 21. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 22. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |

**PROTECTED INFORMATION**
To Be Disclosed Only In Accordance With
U.S. Court of Federal Claims Protective Order

| | |
|---|---|
| 23. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 24. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |
| *SV4 - Advanced Project Management Turn Key Services with Furniture* | |
| 25. Did the Contractor provide a staffing plan? | 2 |
| 26. Did the Contractor describe the qualifications and experience of the people who will provide the requested services? | 2 |
| 27. Did the Contractor describe the process of inventory, cataloging and protecting VA property at your storage facility? | 2 |
| 28. Did the Contractor describe the measures in place to protect from damage and against loss? | 2 |
| 29. Did the Contractor experience do the people who will provide the requested service have with space planning for federal facilities and healthcare facilities, VA programming guides and design guides? | 2 |
| 30. Did the Contractor describe how the designer meets the qualification requirements established in the SOW? | 2 |
| 31. Did the Contractor describe the Hardware and Software used to produce digital and physical hard copy drawings of design work and prepare installation drawings? | 2 |
| 32. Did the Contractor describe the experience of the people who are providing services regarding previous work in a federal facility and/or healthcare facility? | 2 |
| 33. Did the Contractor describe the experience of the staff regarding life safety code, infection control standards, and patient privacy standards? | 2 |

**TOTAL SCORE**     66

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 18, 2019, I served a copy of the foregoing electronically with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

J. Bradley Reaves,: brad.reaves@reavescoley.com
Tanya Koenig: tanya.b.koenig@usdoj.gov, natcourts.dockets@usdoj.gov
Matthew Thomas Schoonover, Attorney: mschoonover@koprince.com,